**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **ESTATE OF CHRISTOPHER BROOK FISHBECK, et al.,** | ) ) ) | |
| **Plaintiffs,** | ) ) | **Civil Action No. 1:18-cv-02248-CRC** |
| **v.** | ) ) | |
| **THE ISLAMIC REPUBLIC OF IRAN, et al.,** | ) ) | |
| **Defendants** | ) ) ) | |

**PLAINTIFFS' MOTION AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ORDER
FINDING EFFECTIVE SERVICE OF PROCESS
PURSUANT TO 28 U.S.C. § 1608**

## <u>TABLE OF CONTENTS</u>

A.    Service of Process Pursuant to FSIA. ................................................................. 1

    1.    Serving a Foreign State and its Political Subdivisions under §1608(a). ................... 1

    2.    Serving Agencies and Instrumentalities of a Foreign State under §1608(b). ............ 3

B.    Defendants' Status as Sovereign Entities under FSIA. ....................................... 4

    1.    The Islamic Republic of Iran, Islamic Revolutionary Guard Corps, and Iranian Ministry of Intelligence and Security. ................................................................. 4

    2.    Bank Markazi, Bank Melli Iran, and National Iranian Oil Company. ....................... 6

C.    Plaintiffs' Efforts to Serve Each Defendant ....................................................... 10

    1.    Service of Process on Defendant Iran ............................................................... 12

    2.    Service of Process on Defendant IRGC .............................................................. 14

    3.    Service of Process on Defendant MOIS .............................................................. 16

    4.    Service of Process on Defendant Bank Markazi .................................................... 18

    5.    Service of Process on Defendant Bank Melli Iran ................................................. 19

    6.    Service of Process on Defendant NIOC ............................................................... 20

D.    Plaintiffs have Sufficiently Effected Service under 28 U.S.C §1608 *et seq.* ..................... 21

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Akins v. Islamic Republic of Iran,*
  332 F. Supp.3d 1 (D.D.C. 2018) ................................................................. 4

*Argentine Republic v. Ameranda Hess Shipping Corp.,*
  488 U.S. 428 (1989) ................................................................................. 1

*Azadeh v. Gov't of Islamic Republic of Iran,*
  318 F. Supp. 3d 90 (D.D.C. 2018) ............................................................ 3

*Barot v. Embassy of Zambia,*
  785 F.3d 26 (D.C. Cir. 2015) .................................................................... 2

*Bennett v. Islamic Republic of Iran,*
  927 F. Supp. 2d 833 (N.D. Cal. 2013) ...................................................... 8

*Bennett v. Islamic Republic of Iran,*
  799 F.3d 1281 (9th Cir. 2015) .................................................................. 8

*Blais v. Islamic Republic of Iran,*
  459 F. Supp. 2d 40 (D.D.C. 2006) ............................................................ 5

*Bluth v. Islamic Republic of Iran,*
  203 F. Supp. 3d 1, fn. 15 (D.D.C. 2016) .............................................. 5, 11

*Calderon–Cardona v. Dem. People's Rep. of Korea,*
  723 F. Supp. 2d 441 (D.P.R. 2010) .......................................................... 8

*Cohen v. Islamic Republic of Iran,*
  238 F. Supp. 3d 71 (D.D.C 2017) ............................................................. 6

*Dibenedetto v. Iranian Ministry of Info. & Sec.,*
  2019 U.S. Dist. LEXIS 169169 (D.D.C. Sept. 30, 2019) .......................... 6

*Doe I v. State of Israel,*
  400 F. Supp. 2d 86 (D.D.C. 2005) ............................................................ 4

*Dole Food Co. v. Patrickson,*
  538 U.S. 468 (2003) ................................................................................. 8

*Estate of Heiser v. Islamic Republic of Iran,*
  885 F. Supp. 2d 429 (D.D.C. 2012) .......................................................... 8

*Foley v. Syrian Arab Republic,*
  249 F. Supp. 3d 186 (D.D.C. 2017) ..................................................... 2, 11

*Fritz v. Islamic Republic of Iran,*
  320 F. Supp. 3d 48 (D.D.C. 2018) ............................................................ 5

*Gates v. Syrian Arab Republic,*
  646 F. Supp. 2d 79 (D.D.C. 2009) ....................................................... 1, 11

*Gates v. Syrian Arab Republic,*
  646 F.3d 1 (D.C. Cir. 2011) ...................................................................... 2

*Estate of Hirshfeld v. Islamic Republic of Iran,*
  2017 WL 361062 (D.D.C. Jan. 25, 2017) ................................................. 3

*In re Islamic Republic of Iran Terrorism Litig.,*
  659 F. Supp. 2d 31 (D.D.C. 2009) ............................................................ 7

*Kaplan v. Cent. Bank of Islamic Republic of Iran,*
  961 F. Supp. 2d 185 (D.D.C. 2013) .......................................................... 8

*Karcher v. Islamic Republic of Iran*,
   249 F. Supp. 3d 557 (D.D.C. 2017) ............................................................... 1, 2
*Kirschenbaum v. 650 Fifth Ave. & Related Properties*,
   830 F.3d 107 (2d Cir. 2016) ......................................................................... 9, 10
*Kirschenbaum v. 650 Fifth Ave.*,
   257 F. Supp. 3d 463 (S.D.N.Y. 2017) ............................................................ 10
*Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*,
   526 U.S. 344, (1999) ........................................................................................ 1
*Richardson v. Ag of the British V.I.*,
   2013 U.S. Dist. LEXIS 117763 (D.V.I. August 20, 2013) ............................... 7
*Roeder v. Islamic Republic of Iran*,
   333 F. 3d 228 (D.D.C. 2003) ............................................................................ 7
*S & S Mach. Co. v. Masinexportimport*,
   706 F.2d 411 (2nd Cir. 1983) ........................................................................... 9
*Schooley v. Islamic Republic of Iran*,
   2019 U.S. Dist. LEXIS 108011 (D.D.C. June 27, 2019) .................................. 5
*Valencia v. Islamic Republic of Iran*,
   774 F. Supp. 2d 1 (D.D.C. 2010) ...................................................................... 5
*Valore v. Islamic Republic of Iran*,
   700 F. Supp. 2d 52 (D.D.C. 2010) .................................................................. 11
*Vivas v. Boeing Co.*,
   2007 U.S. Dist. LEXIS 61625 (N.D. Ill. August 21, 2007) ............................. 7
*Weininger v. Castro*,
   462 F. Supp. 2d 457 (S.D.N.Y 2006) ............................................................... 9
*Weinstein v. Islamic Republic of Iran*,
   609 F.3d 43 (2d Cir. 2010) ............................................................................. 10
*Wultz v. Islamic Republic of Iran*,
   755 F. Supp. 2d 1 (D.D.C. 2010) ...................................................................... 8

## Statutes

28 U.S.C. § 1332(c) ........................................................................................... 7
28 U.S.C. § 1332(e) ........................................................................................... 7
28 U.S.C. § 1603 ................................................................................................ 7
28 U.S.C. § 1603(b) .................................................................................... 7, 8, 9
28 U.S.C. § 1608 ..................................................................................... 1, 4, 21
28 U.S.C. § 1608(a)(1) ................................................................................. 2, 11
28 U.S.C. § 1608(a)(2) ................................................................................. 2, 11
28 U.S.C. § 1608(a)(3) ............................................................................... Passim
28 U.S.C. § 1608(a)(4) ............................................................................... Passim
28 U.S.C. § 1608(b)(1) ................................................................................. 3, 11
28 U.S.C. § 1608(b)(2) ...................................................................................... 3
28 U.S.C. § 1608(b)(3)(a)-(c) ............................................................................ 4
28 U.S.C. § 1608(b)(3)(B) .......................................................................... Passim
28 U.S.C. § 1608(c) ..................................................................................... 4, 21
50 U.S.C.A. § 2405(j) ........................................................................................ 5

**Rules and Regulations**

FRCP 4(f)(2)(C)(ii) ................................................................................. 13, 15, 17

31 C.F.R. 535.433 ........................................................................................ 9

31 C.F.R. § 560.304 ..................................................................................... 9

**Other Authorities**

Exec. Order No. 12959 ............................................................................ 9, 10

Exec. Order No. 12957 ................................................................................. 9

*Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters.,*
  20 UST 361, T.I.A.S. No. 6638 (Feb. 10, 1969) ....................................... 3

H.R. Rep. No. 1487 ...................................................................................... 7

Plaintiffs move this Court for an Order finding service of process has been made on all Defendants pursuant to the Foreign Sovereign Immunities Act ("FSIA"), and that the Court will exercise personal jurisdiction over each Defendant[1].

As established below, Plaintiffs worked closely with the Clerk of Court, United States Postal Service ("USPS"), and the U.S. Department of State to ensure that all Defendants were properly served pursuant to the FSIA, specifically, according to the provisions of 28 U.S.C. §§ 1608(a)(4) and 1608(b)(3)(B).

These efforts have resulted in sufficient service upon Defendants pursuant to FSIA. Accordingly, Plaintiffs' motion should be granted.

### A.  Service of Process Pursuant to FSIA.

The FSIA "provides the sole basis for obtaining jurisdiction over a foreign state in the courts of this country." *Argentine Republic v. Ameranda Hess Shipping Corp.*, 488 U.S. 428, 443 (1989). It is well established that "[b]efore a court may exercise personal jurisdiction over a defendant, the procedural requirement of service must be satisfied." *Gates v. Syrian Arab Republic*, 646 F. Supp. 2d 79, 84 (D.D.C. 2009), aff'd, 646 F.3d 1 (D.C. Cir. 2011) (citing *Murphy Bros.*, *Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 351, (1999)).

### 1.  Serving a Foreign State and its Political Subdivisions under §1608(a).

28 U.S.C. § 1608(a) sets forth the requirements for service on a foreign state, including Defendant, The Islamic Republic of Iran ("Iran"), and its political subdivisions. The United States Court of Appeals for the District of Columbia Circuit has held that "[w]hen serving a foreign sovereign, strict adherence to the terms of 1608(a) is required." *Karcher v. Islamic*

---

[1] Defendants include: The Islamic Republic of Iran ("Iran"), The Islamic Revolutionary Guard Corps ("IRGC"), Iranian Ministry of Intelligence and Security ("MOIS"), Bank Markazi Jomhouri Islami Iran (a/k/a Central Bank of Iran) ("Bank Markazi"), Bank Melli Iran, and the National Iranian Oil Company ("NIOC").

*Republic of Iran*, 249 F. Supp. 3d 557, 558 (D.D.C. 2017) (*citing Barot v. Embassy of Zambia*, 785 F.3d 26, 27 (D.C. Cir. 2015)). Under that statute, "there are four methods of effecting service, which are set forth in descending order of preference." *Id.*

First, service may be accomplished "by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision." 28 U.S.C. § 1608(a)(1).

Second, if no such special arrangements exist, service may be accomplished "by delivery of a copy of the summons and complaint in accordance with an applicable international convention on service of judicial documents." 28 U.S.C. § 1608(a)(2).

Third, if service cannot be made by the first two methods, service may be accomplished by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned. 28 U.S.C. § 1608(a)(3). International courier service by USPS with delivery accepted by signature of an agent at the foreign ministry constitutes service under 28 U.S.C. § 1608(a)(3). *See Gates v. Syrian Arab Republic*, 646 F.3d 1, 5 (D.C. Cir. 2011); *Karcher*, 249 F. Supp. 3d at 558 (*citing Foley v. Syrian Arab Republic*, Civil Action No. 11–699, Mem. Op. and Order, at 7, ECF No. 51 (Jan. 21, 2016)).

Fourth, if service cannot be made "within 30 days" pursuant to the third method, service can be effected through the U.S. Department of State, which transmits two copies of the summons, the complaint, and a notice of suit to the foreign state via diplomatic channels. 28 U.S.C. § 1608(a)(4). Courts in this district have ruled that service can be attempted under section 1608(a)(4) *only after* plaintiffs attempt and fail to effect service within 30 days under section

1608(a)(3). *See Id.*, *Estate of Hirshfeld v. Islamic Republic of Iran*, No. CV 15-1082 (CKK), 2017 WL 361062, at *2 (D.D.C. Jan. 25, 2017) (*emphasis added*); *Azadeh v. Gov't of Islamic Republic of Iran*, 318 F. Supp. 3d 90 (D.D.C. 2018).

**2.   Serving Agencies and Instrumentalities of a Foreign State under §1608(b).**

Service of process upon a foreign sovereign's agencies or instrumentalities is governed by 28 U.S.C. § 1608(b), which also provides a hierarchy for service.

First, service may be effected "by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the agency or instrumentality." 28 U.S.C § 1608(b)(1).

However, if no "special arrangement" exists, the second method is to serve "by delivery of a copy of the summons and complaint either to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process in the United States; or in accordance with an applicable international convention on service of judicial documents." 28 U.S.C. § 1608(b)(2). In many instances, service under this section is conducted according to the terms of a specific international treaty, such as the *Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters*. 20 UST 361, T.I.A.S. No. 6638 (Feb. 10, 1969).

Finally, if the first and second methods fail or are unavailable, service can be made "if reasonably calculated to give actual notice, by delivery of a copy of the summons and complaint, together with a translation of each into the official language of the foreign state— (A) as directed by an authority of the foreign state or political subdivision in response to a letter rogatory or request or (B) by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the agency or instrumentality to be served, or (C) as directed by order of

the court consistent with the law of the place where service is to be made." 28 U.S.C. § 1608(b)(3)(a)-(c).

"The service requirements of § 1608(b) are less stringent than those of § 1608(a), and can be satisfied by 'technically faulty service' as long as the defendants receive adequate notice of the suit and are not prejudiced." *Doe I v. State of Israel*, 400 F. Supp. 2d 86, 102 (D.D.C. 2005).

Pursuant to the FSIA, service shall be deemed to have been made "(1) in the case of service under subsection (a)(4), as of the date of transmittal indicated in the certified copy of the diplomatic note; and (2) in any other case under this section, as of the date of receipt indicated in the certification, signed and returned postal receipt, or other proof of service applicable to the method of service employed." 28 U.S.C. § 1608(c).

Thus, if litigants strictly adhere to the hierarchy of service of process as outlined in 28 U.S.C. § 1608, and submit proof of such compliance as provided for in 28 U.S.C. § 1608(c), the court shall find service effective. As is demonstrated below, Plaintiffs here have sufficiently effected service on all Defendants and ask the Court to enter an Order affirming service has been achieved.

**B. Defendants' Status as Sovereign Entities under FSIA.**

Plaintiffs have named and served six separate Defendants, including the Islamic Republic of Iran, and several of its various political subdivisions, agents and instrumentalities.

**1.    The Islamic Republic of Iran, Islamic Revolutionary Guard Corps, and Iranian Ministry of Intelligence and Security.**

Defendant The Islamic Republic of Iran ("Iran") is a "foreign state." *Akins v. Islamic Republic of Iran,* 332 F. Supp.3d 1, 11 (D.D.C. 2018) ("Iran is a foreign state and has been designated a state sponsor of terrorism pursuant to section 69(j) of the Export Administration Act

of 1979 (50 U.S.C.A. § 2405(j)) continuously since January 19, 1984.") (quoting *Blais v. Islamic Republic of Iran,* 459 F. Supp. 2d 40, 47 (D.D.C. 2006)).

Under FSIA, Defendants Islamic Revolutionary Guard Corps ("IRGC") and Iranian Ministry of Intelligence and Security ("MOIS") are also considered part of the state of Iran. *See, e.g., Schooley v. Islamic Republic of Iran,* 2019 U.S. Dist. LEXIS 108011 at *283 (D.D.C. June 27, 2019) (Howell, C.J.) ("The IRGC . . . is included within the FSIA's definition of a 'foreign state' as encompassing 'a political subdivision of a foreign state or an agency or instrumentality' thereof . . . MOIS[] is a political subdivision within the meaning of the FSIA."); *Bluth v. Islamic Republic of Iran*, 203 F. Supp. 3d 1, 19 fn. 15 (D.D.C. 2016) (outlining how IRGC and MOIS should be treated as "foreign states" for purposes of § 1603(a) FSIA litigation in the D.C. District Court).

The IRGC is a branch of the Iranian Armed Forces that operates in and outside of Iran in both military and paramilitary operations. *Fritz v. Islamic Republic of Iran*, 320 F. Supp. 3d 48, 58-59 (D.D.C. 2018) ("The IRGC is a military institution that operates separately from the ordinary Iranian military; instead of defending Iran's borders, the IRGC is charged with preserving the ideals of the Islamic Republic, both in Iran and elsewhere." (citations omitted); *Valencia v. Islamic Republic of Iran*, 774 F. Supp. 2d 1, 7 (D.D.C. 2010) ("Defendant IRGC has been described by expert testimony as 'a non-traditional instrumentality of Iran' that acts as 'the military arm of a kind of shadow government answering directly to the Ayatollah and the mullahs who hold power in Iran.'" (quoting *Blais*, 459 F. Supp. 2d at 47)). In particular, the IRGC-QF is "tasked with extending the IRGC's mission beyond Iran's borders," which includes operations such as "cultivating and supporting pro-Iran proxies in foreign countries and coordinating with these militant groups to conduct terrorist attacks." *Id.* at 59.

MOIS, a non-military government organization that operates inside and outside of Iran, functions as the Iranian Intelligence Service and, in this capacity it is the secret police and primary intelligence agency of the Islamic Republic of Iran. *Cohen v. Islamic Republic of Iran*, 238 F. Supp. 3d 71, 78 (D.D.C 2017) ("… MOIS, Iran's foreign and domestic intelligence service, has been considered a diplomatic pouch for conveyance of weapons and finances for terrorist groups." (citations omitted)). MOIS is the part of the Iranian government's security apparatus responsible for intelligence gathering, infiltrating internal opposition groups, monitoring domestic threats and expatriate dissent, arresting alleged spies and dissidents, exposing conspiracies deemed threatening, and maintaining liaison with other foreign intelligence agencies as well as with organizations that protect the Iran's interests around the world. *See, e.g., Cohen*, 238 F. Supp. 3d at 78; and *Dibenedetto v. Iranian Ministry of Info. & Sec.*, 2019 U.S. Dist. LEXIS 169169 at *9 (D.D.C. Sept. 30, 2019) (briefly outlining MOIS' involvement in funding a terrorist group and directing the same group in an attack on American servicemen in Lebanon).

Because Iran is the foreign state subject to suit in this matter, and because MOIS and IRGC are political subdivisions of Iran, service of process on these three specific Defendants is governed by 28 U.S.C. § 1608(a).

### 2.    Bank Markazi, Bank Melli Iran, and National Iranian Oil Company.

Defendants, Bank Markazi Jomhouri Islami Iran (a/k/a Central Bank of Iran) ("Bank Markazi"), Bank Melli Iran, and the National Iranian Oil Company ("NIOC"), are all agencies and instrumentalities of Iran. Therefore, service of process on these defendants is governed by 28 U.S.C. 1608(b).

The FSIA defines an "agency or instrumentality" of a foreign state as any entity:

(1) which is a separate legal person, corporate or otherwise, and

>(2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and (3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (e) of this title, nor created under the laws of any third country.[2]

28 USC § 1603(b).

When enacting the FSIA, Congress expressly defined "a central bank" as an "agency or instrumentality of a foreign state… which acts and is suable in its own name." H.R. Rep. No. 1487, 94th Cong., 2d Sess. 15, reprinted in 1976 U.S. Code Cong. & Ad. News 6604, 6614. *See Richardson v. Ag of the British V.I.*, 2013 U.S. Dist. LEXIS 117763, *25-26 (D.V.I. August 20, 2013) (""[w]hile the statutory definition of 'agency or instrumentality' is fairly helpful, legislative history provides more guidance as to what Congress meant in using that term."); and *Vivas v. Boeing Co.,* 2007 U.S. Dist. LEXIS 61625, *16 (N.D. Ill. August 21, 2007) (court holding that the determination as to "agency or instrumentality" status under § 1603 as a "flexible approach [that] is supported by the legislative history of the FSIA."

To determine whether a specific entity is an "agency or instrumentality" or a "political subdivision" of a foreign sovereign state, courts in this district employ a "categorical approach." *See In re Islamic Republic of Iran Terrorism Litig.*, 659 F. Supp. 2d 31, 48 n. 10 (D.D.C. 2009) (quoting *Roeder v. Islamic Republic of Iran*, 333 F. 3d 228, 234 (D.D.C. 2003)). Under that approach, the court evaluates whether the core functions of the specific entity are predominantly "governmental" or "commercial." *Id*. If the core functions are governmental, then the entity is considered to be the foreign state itself. If the core functions are commercial, then the entity may

---

[2]28 USC 1332(c) states "(1) a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business…"; and 28 U.S.C. § 1332(e) states, "States", as used in this section, includes the Territories, the District of Columbia, and the Commonwealth of Puerto Rico."

be an agency or instrumentality; however, if the entity is a corporation, then the court must consider the degree of ownership that the foreign state has in that corporation before concluding that the corporation is an agency and instrumentality under the FSIA. *Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1, 29 (D.D.C. 2010) ("[A] foreign state must itself own a majority of the shares of a corporation if the corporation is to be deemed an instrumentality of the state under the provisions of the FSIA."); *Dole Food Co. v. Patrickson*, 538 U.S. 468, 480 (2003) (superseded by statute as discussed in *Estate of Heiser v. Islamic Republic of Iran*), 885 F. Supp. 2d 429, 442 (D.D.C. 2012), *aff'd sub nom. Heiser v. Islamic Republic of Iran,* 735 F.3d 934 (D.C. Cir. 2013) (*citing Calderon–Cardona v. Dem. People's Rep. of Korea*, 723 F. Supp. 2d 441, 458 (D.P.R. 2010). Therefore, when analyzing an entity's status under 28 U.S.C. § 1603(b), "a subsidiary of an instrumentality is not itself entitled to instrumentality status," regardless of the degree of control the foreign state exercises over that subsidiary, absent a showing of the requisite degree of foreign state ownership of the subsidiary. *Id*. at 473, 477; *see Bennett v. Islamic Republic of Iran,* 927 F. Supp. 2d 833, 835 (N.D. Cal. 2013) (finding that Defendant Bank Melli Iran was an agent and instrumentality of Iran), *aff'd,* 799 F.3d 1281 (9th Cir. 2015), *opinion withdrawn and superseded,* 817 F.3d 1131 (9th Cir. 2016), *and aff'd,* 817 F.3d 1131 (9th Cir. 2016), *and aff'd, 825 F.3d 949 (9th Cir. 2016); see also Kaplan v. Cent. Bank of Islamic Republic of Iran*, 961 F. Supp. 2d 185, 198 (D.D.C. 2013), *aff'd in part, vacated in part, remanded sub nom. Kaplan v. Cent. Bank of the Islamic Republic of Iran*, 896 F.3d 501 (D.C. Cir. 2018) (finding that Bank Saderat Iran ("BSI") was not an agent and instrumentality of Iran because a majority of the bank's shares were not owned by Iran at the time of the filing of the complaint).

Defendant Bank Markazi is the central bank of Iran and is, and was at the time Plaintiffs filed their First Amended Complaint ("FAC"), wholly-owned by the government of Iran. Bank

Markazi is a corporation formed under the laws of Iran with its principal place of business in Iran. Bank Markazi predominantly serves commercial purposes in Iran. *See* Aff. G. Kleiman, § C, *see also* 31 C.F.R. § 560.304. The Code of Federal Regulations, under OFAC regulations concerning Iranian assets control, and specifically, the regulations relating to transfers between dollar accounts held for foreign banks, also provides that "[t]he Central Bank of Iran (Bank Markazi Iran) *is an agency, instrumentality and controlled entity of the Government of Iran* for all purposes under this part." *See* 31 C.F.R. 535.433 (emphasis added). As such, Bank Markazi falls under the definition of the "agency or instrumentality of a foreign state" under 28 U.S.C. § 1603(b). *See Weininger v. Castro*, 462 F. Supp. 2d 457, 498 (S.D.N.Y 2006) citing *S & S Mach. Co. v. Masinexportimport*, 706 F.2d 411, 414 (2nd Cir. 1983), *cert. denied*, 464 U.S. 850 (1983) (finding that state-owned central banks "indisputably are included in the section 1603(b) definition of 'agency or instrumentality.'").

Defendant Bank Melli Iran is, and was at the time Plaintiffs filed their FAC, a corporation wholly-owned by the government of Iran, formed under the laws of Iran, with its principal place of business in Iran. Bank Melli Iran predominantly serves commercial purposes in Iran. It is, therefore, an agency and instrumentality of Iran. *See* Aff. G. Kleiman, § D. The U.S. government routinely concluded that Bank Melli Iran was owned by Iran. In March 1995, President Clinton issued Executive Orders ("EO") declaring the "actions and policies of the Government of Iran" a threat to U.S. national security and imposing financial sanctions on U.S. persons for various transactions and commerce with the Government of Iran. Exec. Order No. 12957, 60 Fed. Reg. 14, 615 (Mar. 15, 1995); Exec. Order No. 12959, 60 Fed. Reg. 24, 757 (May 6, 1995); *see also Kirschenbaum v. 650 Fifth Ave. & Related Properties*, 830 F.3d 107, 118 (2d Cir. 2016), *cert. denied sub nom. Alavi Found. v. Kirschenbaum*, 137 S. Ct. 1332, 197 L.

Ed. 2d 518 (2017), and *abrogated by Rubin v. Islamic Republic of Iran*, 138 S. Ct. 816 (2018).

Pursuant to the authority provided under the EOs, the U.S. Treasury Department's Office of

Foreign Asset Control ("OFAC") determined that Bank Melli was owned or controlled by the

Government of Iran, and thus "subjected it to, among other things, limitations on the receipt of

services from U.S. financial institutions beginning June 6, 1995, except as authorized by an

OFAC license." *Kirschenbaum*, 830 F.3d at 119 (citing Implementation of Executive Order No.

12959 With Respect to Iran, 60 Fed. Reg. 40, 881–02 (Aug. 10, 1995)). In other FSIA cases in

which Bank Melli Iran has chosen to appear, it has conceded it is an agency and instrumentality.

*See Kirschenbaum v. 650 Fifth Ave*., 257 F. Supp. 3d 463, 519 (S.D.N.Y. 2017); *Weinstein v.*

*Islamic Republic of Iran*, 609 F.3d 43, 48 (2d Cir. 2010) ("Finally, Bank Melli concedes that it is

an instrumentality of Iran.").

Defendant NIOC is, and was at the time Plaintiffs filed their FAC, a corporation wholly-

owned by the government of Iran. It was formed under the laws of Iran and its principal place of

business is in Iran. As the corporate entity responsible for overseeing Iran's oil exploration,

refinement, sales and distribution, it predominantly serves commercial purposes in Iran. It is

accordingly an agency and instrumentality of Iran. *See* Dec. of P. Clawson at 4-9; and Aff. of G.

Kleiman, § E.

As agencies and instrumentalities of Iran on the date Plaintiffs filed their FAC, service of

process involving these three specific Defendants is governed by 28 U.S.C. 1608(b).

**C. Plaintiffs' Efforts to Serve Each Defendant.**

Plaintiffs filed their FAC on January 2, 2019, and shortly thereafter retained a certified

translation service to translate the FAC into Farsi, the native and official language of Iran and all

Defendants.

Plaintiffs retained Aaron Lukken, Esq., of Viking Advocates, LLC, an expert on extraterritorial service of process with experience serving Iranian defendants located outside of the United States pursuant to FSIA. On April 25, 2019, after receiving the translated version of the FAC, and under the guidance of Mr. Lukken, Plaintiffs began their efforts to serve the Defendants.[3]

Mr. Lukken first assisted Plaintiffs in confirming that no special arrangement existed between Plaintiffs and Iran related to service of process and that Iran was not a party to any applicable international convention on service of judicial documents. *See* 28 U.S.C §§ 1608(a)(1)-(2); *and* 1608(b)(1). Mr. Lukken also assisted Plaintiffs by conducting a search for "an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process in the United States." *See* § 1608(b)(1). After these searches, it was determined that no special arrangements exists, Iran is not party to any applicable treaties, and there are no officers or general agents of the Defendants authorized to accept service of process in the United States. *See* Aff. A. Lukken at ¶¶ 5-11.

Because "[no] special arrangements for service exist between Iran and the plaintiffs, nor is Iran a party to any applicable international convention on service of judicial documents," Plaintiffs' attempts to serve Defendants began along the service hierarchy immediately following the requisite step permitted when special arrangements do exist. *See Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 70 (D.D.C. 2010); *Bluth v. Islamic Republic of Iran*, 203 F. Supp. 3d

---

[3] Plaintiffs' efforts to serve Defendants occurred at overlapping times, but Plaintiffs have detailed their efforts with each specific Defendant below to assist in the Court's consideration of their efforts to serve each Defendant. Plaintiffs further discuss their efforts in detail to eliminate concerns borne out of cases such as *Gates v. Syrian Arab Republic*, 646 F. Supp. 2d 79, 85-86 (D.D.C. 2009), and *Foley v. Syrian Arab Republic,* 249 F. Supp. 3d 186, 189 (D.D.C. 2017), in which service of process was challenged long after it had been attempted.

1, 18 (D.D.C. 2016). If and when the Plaintiffs' efforts failed, the next sequential method was attempted until service was made. These efforts are detailed below:

### 1. Service of Process on Defendant Iran

On April 25, 2019, Plaintiffs, by letter to the Clerk of Court (*see* Dkt. Nos. 18 & 18-1), requested that the Clerk ship a service package to Defendant Iran pursuant to 28 U.S.C. § 1608(a)(3). Included with the letter was a box containing a prepared and ready-to-ship package for service addressed to Iran, including two copies each of Plaintiffs' First Amended Complaint, the Summons, the Notice of Suit, and the FSIA. Also in the package were two copies of the same documents, translated into Farsi. This service box was provided to the Clerk unsealed and included a corresponding USPS Registered Return Receipt Tracking Number. The USPS Registered Return Receipt for Iran was addressed specifically to Mohammad Javad Zarif, Ministry of Foreign Affairs located at Imam Khomeini Street, Imam Khomeini Square, Tehran, Iran, 1136914811. The USPS Registered Return Receipt First Class International Mail tracking number was RH001612905US. *See* Dkt. No. 22-1; and Exhibit A.[4]

On May 6, 2019, the Clerk of Court filed a Certificate of Mailing. *See* Dkt. No. 20. The USPS tracking data for RH001612905US confirmed that the service package addressed to Defendant Iran left Washington, D.C. on May 4, 2019. The service package for Iran arrived in California and was released from United States Customs on May 22, 2019. The service package arrived at the Imam Khomeini Airport in Tehran, Iran on May 27, 2019. *See* Dkt. 22, 22-1. Additionally, data collected by the National Post Office of the Islamic Republic of Iran a/k/a "IRI Post Company" ("IRI") shows that the service package for Iran arrived at the Iranian Customs office in Tehran, Iran on May 28, 2019. IRI then attempted to deliver the service

---

[4] Exhibit A to this motion contains photographs taken by Counsel on May 2, 2019 and provided to the Clerk of Court on May 3, 2019.

package to the Iranian Minister of Foreign Affairs, Mr. Mohammad Javad Zarif, at the Ministry of Foreign Affairs, located at Imam Khomeini Street, Imam Khomeini Square, Tehran, Iran. The package was refused by the recipient at the time delivery was attempted and IRI's notations indicate that the item was being returned to sender. *See* Dkt. No. 22-1.

On June 11, 2019, Plaintiffs filed Notice of Failed Service under 28 U.S.C. § 1608(a)(3) and supporting documentation regarding failure of service on Defendant Iran. *See* Dkt. No. 22 and 22-1.

On June 12, 2019, more than 30 days after first initiating service, Plaintiffs, via letter addressed to the Clerk of Court, requested foreign service of process through the U.S. Department of State upon Defendant Iran pursuant to 28 U.S.C. § 1608(a)(4) and FRCP 4(f)(2)(C)(ii), and provided the Clerk's office a prepared service box containing two copies of the Notice of Suit, the First Amended Complaint, the Summons, and the Foreign Sovereign Immunities Act. Also in the package were two copies of the same documents, translated into Farsi, and a cashier's check payable to U.S. Embassy Bern for $2,275.00 - the fee charged by the U.S. Department of State to serve documents under 28 U.S.C. § 1608(a)(4). *See* Dkt. No. 23-1.

On June 20, 2019, the Clerk of Court filed a Certificate of Mailing showing the Clerk had shipped the service box to: Director, Consular Services, U.S. Department of State, Consular Affairs, CA/OCS/L, SA-17, 10th Floor, 2201 C Street NW, Washington, D.C. 20522-1710. *See* Dkt. Nos. 28 & 28-1.

On October 8, 2019, the Clerk of Court filed an Affidavit of Service dated October 7, 2019, and executed by Jared N. Hess, Attorney Advisor of the U.S. Department of State Overseas Citizens Services, Office of Legal Affairs, confirming that "the documents were delivered to the Iranian Ministry of Foreign Affairs under cover of diplomatic notes No. 1078-

13

IE; 1079-IE, and 1080-IE, each dated September 2, 2019 and delivered on September 4, 2019. *See* Dkt. No. 36

To date Defendant Iran has not filed any answer or pleading of any kind, nor made any appearance or communicated in any way, directly or through counsel, with any counsel of record in this litigation.

### 2. Service of Process on Defendant IRGC

On April 25, 2019, Plaintiffs, by letter to the Clerk of Court (*see* Dkt. Nos. 18 & 18-1), requested that the Clerk ship a service package to Defendant IRGC pursuant to 28 U.S.C. § 1608(a)(3). Included with the letter was a box containing a prepared and ready-to-ship package for service addressed to the IRGC, including two copies each of Plaintiffs' First Amended Complaint, the summons, the Notice of Suit, and the FSIA. Also in the package were two copies of the same documents, translated into Farsi. This service box was provided to the Clerk unsealed and included a corresponding USPS Registered Return Receipt tracking number. The USPS Registered Return Receipt for the IRGC was addressed specifically to Mohammad Javad Zarif, the Ministry of Foreign Affairs located at Imam Khomeini Street, Imam Khomeini Square Tehran, Iran, 1136914811. The USPS Registered Return Receipt First Class International Mail tracking number was RH001612945US. *See* Dkt. No. 22-2; and Exhibit A.

On May 6, 2019, the Clerk of Court filed a Certificate of Mailing. *See* Dkt. No. 20. USPS Tracking data for RH001612945US confirmed that the service package addressed to Defendant IRGC left Washington, D.C. on May 4, 2019. The service package arrived in California and was released from customs on May 15, 2019. The service package arrived at the Iman Khomeini Airport in Tehran, Iran on May 27, 2019. *See* Dkt. No. 22-2. Additionally, data collected by the National Post Office of the Islamic Republic of Iran a/k/a "IRI Post Company" ("IRI"), shows that the service package for IRGC arrived at the Iranian Customs office in Tehran, Iran on May

28, 2019. IRI attempted to deliver the service package to IRGC by delivering it to the Minister of Foreign Affairs, Mohammad Javad Zarif, at the Ministry of Foreign Affairs at Imam Khomeini Street, Imam Khomeini Square, Tehran, Iran, but the package was refused at the time delivery was attempted by the recipient. *See* Dkt. No. 22-2.

On June 11, 2019, Plaintiffs filed their Notice of Failed Service under 28 U.S.C. § 1608(a)(3) and supporting documentation regarding failure of service on Defendant IRGC. *See* Dkt. Nos. 22 and 22-2.

On June 12, 2019, more than 30 days after first initiating service, Plaintiffs, via letter addressed to the Clerk of Court, requested foreign service of process through the U.S. Department of State upon Defendant IRGC pursuant to 28 U.S.C. § 1608(a)(4) and FRCP 4(f)(2)(C)(ii), and provided the Clerk's office a pre-prepared service box containing two copies each of the Notice of Suit, the First Amended Complaint, the Summons, and the Foreign Sovereign Immunities Act. Also in the package were two copies of the same documents, translated into Farsi, and a cashier's check payable to U.S. Embassy Bern for $2,275.00—the fee charged by the U.S. Department of State to serve documents under 28 U.S.C. § 1608(a)(4). *See* Dkt. No. 23-1.

On June 20, 2019, the Clerk of Court filed a Certificate of Mailing indicating that the Clerk had shipped the service box to: Director, Consular Services, U.S. Department of State, Consular Affairs, CA/OCS/L, SA-17, 10th Floor, 2201 C Street NW, Washington, D.C. 20522-1710. *See* Dkt. Nos. 28 & 28-1.

On October 8, 2019, the Clerk of Court filed an Affidavit of Service dated October 7, 2019, and executed by Jared N. Hess, Attorney Advisor of the U.S. Department of State Overseas Citizens Services, Office of Legal Affairs, confirming that "the documents were

delivered to the Iranian Ministry of Foreign Affairs under cover of diplomatic notes No. 1078-IE; 1079-IE, and 1080-IE, each dated September 2, 2019 and delivered on September 4, 2019. *See* Dkt. No. 36.

To date Defendant IRGC has not filed any answer or pleading of any kind, nor made any appearance or communicated in any way, directly or through counsel, with any counsel of record in this litigation.

### 3. Service of Process on Defendant MOIS

On April 25, 2019, Plaintiffs, by letter to the Clerk of Court (*see* Dkt. Nos. 18 & 18-1), requested that the Clerk ship a service package to Defendant MOIS pursuant to 28 U.S.C. § 1608(a)(3). Included with the letter was a box containing a prepared and ready-to-ship package for service addressed to MOIS, including two copies each of Plaintiffs' First Amended Complaint, the summons, the Notice of Suit, and the FSIA. Also in the package were two copies of the same documents, translated into Farsi.

This service box was provided to the Clerk unsealed and included a corresponding USPS Registered Return Receipt Tracking Number. The USPS Registered Return Receipt for MOIS was addressed specifically to Mohammad Javad Zarif, Ministry of Foreign Affairs located at Imam Khomeini Street, Imam Khomeini Square, Tehran, Iran 1136914811. The USPS Registered Return Receipt First Class International Mail tracking number was RH001612826US. *See* Dkt. No. 22-3; and Exhibit A.

On May 6, 2019, the Clerk of Court filed a Certificate of Mailing. *See* Dkt. No. 20. USPS Tracking data for RH001612826US confirms that the service package addressed to MOIS left Washington, D.C. on May 4, 2019. The service package for MOIS arrived in New York and was released from United States Customs on May 23, 2019. The service package then arrived at the Imam Khomeini Airport, Tehran, Iran on May 27, 2019. *See* Dkt. No. 22-3. Additionally, data

collected by the National Post Office of the Islamic Republic of Iran a/k/a "IRI Post Company" ("IRI") shows the service package for MOIS arrived at the Iranian Customs office in Tehran, Iran on May 28, 2019. The IRI then attempted to deliver the service package to MOIS by delivering it to Mohammad Javad Zarif, the Ministry of Foreign Affairs, Imam Khomeini Street, Imam Khomeini Street, Imam Khomeini Square, Tehran, Iran. The package was refused at the time delivery was attempted by the recipient. *See* Dkt. No. 22-3.

On June 11, 2019, Plaintiffs filed their Notice of Failed Service under 28 U.S.C. § 1608(a)(3) and supporting documentation regarding failure of service on Defendant MOIS. *See* Dkt. Nos. 22 and 22-3.

On June 12, 2019, more than 30 days after first initiating service, Plaintiffs, via letter addressed to the Clerk of Court, requested foreign service of process through the U.S. Department of State upon Defendant MOIS pursuant to 28 U.S.C. § 1608(a)(4) and FRCP 4(f)(2)(C)(ii), and provided the Clerk's office with a prepared service box containing two copies each of the Notice of Suit, the First Amended Complaint, the Summons, and the Foreign Sovereign Immunities Act. Also in the package were two copies of the same documents, translated into Farsi, and a cashier's check payable to U.S. Embassy Bern for $2,275.00—the fee charged by the U.S. Department of State to serve documents under 28 U.S.C. § 1608(a)(4). *See* Dkt. No. 23-1.

On June 20, 2019, the Clerk of Court filed a Certificate of Mailing indicating that the Clerk had shipped the service box to: Director, Consular Services, U.S. Department of State, Consular Affairs, CA/OCS/L, SA-17, 10th Floor, 2201 C Street NW, Washington, D.C. 20522-1710. *See* Dkt. Nos. 28 and 28-1.

On October 8, 2019, the Clerk of Court filed an Affidavit of Service dated October 7, 2019, and executed by Jared N. Hess, Attorney Advisor of the U.S. Department of State Overseas Citizens Services, Office of Legal Affairs, confirming that "the documents were delivered to the Iranian Ministry of Foreign Affairs under cover of diplomatic notes No. 1078-IE; 1079-IE, and 1080-IE, each dated September 2, 2019 and delivered on September 4, 2019. *See* Dkt. No. 36.

To date Defendant MOIS has not filed any answer or pleading of any kind, nor made any appearance or communicated in any way, directly or through counsel, with any counsel of record in this litigation.

### 4.      Service of Process on Defendant Bank Markazi

On April 25, 2019, Plaintiffs, by letter to the Clerk of Court (see Dkt. Nos. 17 & 17-1) requested that the Clerk ship a service package to Defendant Bank Markazi pursuant to 28 U.S.C. § 1608(b)(3)(B). Included with the letter was a box containing a prepared and ready-to-ship package for service addressed to Bank Markazi, including two copies each of the First Amended Complaint and the Summons, with two translations of each document into Farsi. This service box was provided to the Clerk unsealed and included a corresponding USPS Registered Return Receipt tracking number. The USPS Registered Return Receipt for Bank Markazi was addressed specifically to Abdolnaser Hemmati, Bank Markazi Jomhouri Islami Iran, Mirdamad Boulevard, No. 198, P.O. Box 15875/7177, Tehran, Iran and was given a tracking number of RH001612962US. *See* Dkt. No. 24-1; and Exhibit A.

On May 6, 2019, the Clerk of Court filed a Certificate of Mailing. *See* Dkt. No. 21. USPS Registered Return Receipt First Class International Mail package bearing tracking number RH001612962US was successfully delivered on May 29, 2019, and was received and signed for by an agent of Bank Markazi named "Asgari." *See* Dkt. No. 24-1.

On June 12, 2019, Plaintiffs filed with the Court their Notice of Service on Bank Markazi and supporting documentation. Dkt. Nos. 24 & 24-1.

To date Defendant Bank Markazi has not filed any answer or pleading of any kind, nor made any appearance or communicated in any way, directly or through counsel, with any counsel of record in this litigation.

### 5.      Service of Process on Defendant Bank Melli Iran

On April 25, 2019, Plaintiffs, by letter to the Clerk of Court (*see* Dkt. Nos. 17 & 17-1) requested that the Clerk ship a service package to Defendant Bank Melli Iran pursuant to 28 U.S.C. § 1608(b)(3)(B). Included with the letter was a box containing a prepared and ready-to-ship package for service addressed to Bank Melli Iran, including two copies of the First Amended Complaint and the Summons, with two translations of each document into Farsi. This service box was provided to the Clerk unsealed and included a corresponding USPS Registered Return Receipt tracking number. The USPS Registered Return Receipt for Bank Melli Iran was addressed specifically to Mohammad Rez Hossein Zadeh, Ferdowsi Avenue, 10 Building, Mail Box 11365.144, Tehran, Iran 1135931596 and was given a tracking number of RH001613035US. *See* Dkt. No. 26-1; and Exhibit A.

On May 6, 2019, the Clerk of Court filed a Certificate of Mailing. *See* Dkt. No. 21. USPS Registered Return Receipt First Class International Mail package bearing tracking number RH001613035US was successfully delivered on May 30, 2019, and was received and signed for by an agent of Bank Melli Iran named "Merzaey." *See* Dkt. No. 26-1.

On June 12, 2019, Plaintiffs filed their Notice of Service on Bank Melli Iran and supporting documentation. Dkt. Nos. 26 & 26-1.

To date Defendant Bank Melli Iran has not filed any answer or pleading of any kind, nor made any appearance or communicated in any way, directly or through counsel, with any counsel of record in this litigation.

### 6.    Service of Process on Defendant NIOC

On April 25, 2019, Plaintiffs, by letter to the Clerk of Court (*see* Dkt. Nos. 17 & 17-1) requested that the Clerk ship a service package to Defendant NIOC pursuant to 28 U.S.C. § 1608(b)(3)(B). Included with the letter was a box containing a pre-prepared and ready-to-ship package for service addressed to NIOC, including two copies of the First Amended Complaint and the Summons, with two translations of each document into Farsi. This service box was provided to the Clerk unsealed and included a corresponding USPS Registered Return Receipt tracking number. The USPS Registered Return Receipt for NIOC was addressed specifically to Masoud Karbasian, Roodsar Street, No. 18, District 6, Tehran, Iran 1135931596 and was given a tracking number of RH001612874US. *See* Dkt. No. 25-1; and Exhibit A.

On May 6, 2019, the Clerk of Court filed a Certificate of Mailing. *See* Dkt. 21. USPS Registered Return Receipt First Class International Mail package bearing tracking number RH001612874US was successfully delivered on May 29, 2019 and was received and signed for by an agent of NIOC named "Mirrasoli." *See* Dkt. No. 25-1.

On June 12, 2019, Plaintiffs filed with the Court their Notice of Service on the NIOC and supporting documentation. *See* Dkt. Nos. 25 & 25-1.

To date NIOC has not filed any answer or pleading of any kind, nor made any appearance or communicated in any way, directly or through counsel, with any counsel of record in this litigation.

**D.  Plaintiffs have Sufficiently Effected Service under 28 U.S.C §1608 *et seq.***

As detailed above, Plaintiffs first attempted to serve Iran, MOIS, and IRGC pursuant to 28 U.S.C. § 1608(a)(3), and those efforts failed within 30 days of initiation. Therefore, Plaintiffs sought to serve these Defendants pursuant to 28 U.S.C. § 1608(a)(4), and those efforts succeeded in the transmittal of the service packages via diplomatic channels.

Also as detailed above, Plaintiffs' efforts to serve the agent and instrumentality Defendants Bank Melli Iran, Bank Markazi, and NIOC all conformed to hierarchy and the requirements of 28 U.S.C 1608(b)(3)(B).

Plaintiffs have submitted to the Court proof of service in the form of the certified copies of diplomatic notes, and signed and returned postal receipts for each Defendant. *See* 28 U.S.C. 1608(c).

Therefore, the Court should find that, based upon the preceding facts and law, Plaintiffs effectively served the following Defendants:

1.  Iran - served on September 4, 2019, pursuant to 28 U.S.C. § 1608(a)(4);

2.  IRGC - served on September 4, 2019, pursuant to 28 U.S.C. § 1608(a)(4);

3.  MOIS - served on September 4, 2019, pursuant to 28 U.S.C. § 1608(a)(4);

4.  Bank Markazi - served on May 29, 2019, pursuant to 28 U.S.C. § 1608(b)(3)(B);

5.  NIOC - served on May 29, 2019, pursuant to 28 U.S.C. § 1608(b)(3)(B); and

6.  Bank Melli Iran - served on May 30, 2019, pursuant to 28 U.S.C. § 1608(b)(3)(B).

WHEREFORE, Plaintiffs respectfully move the Court for an Order that service has been effected under 28 U.S.C. § 1608(a)(4) and § 1608(b)(3)(B), and that the FSIA's service requirements have been satisfied such that the Court may exercise personal jurisdiction over the Defendants.

Dated: March 27, 2020.

Respectfully submitted,

*/s/ Christopher G. Paulos*
Christopher G. Paulos, *Pro Hac Vice*
Florida Bar No. 0091579
**LEVIN, PAPANTONIO, THOMAS, MITCHELL,**
**RAFFERTY AND PROCTOR, P.A.**
316 South Baylen Street, Suite 600
Pensacola, Florida 32502
Telephone: (850) 435-7067
Facsimile: (850) 436-6067
Email:  cpaulos@levinlaw.com

/s/ Howard L. Nations
Howard L. Nations
DC Bar No. TX143
**THE NATIONS LAW FIRM**
9703 Richmond Avenue, Suite 200
Houston, TX 77042
Telephone: (713) 807-8400
Facsimile: (713) 807-8423
Email: howard@howardnations.com
*Attorneys for Plaintiffs*