UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ESTATE OF CHRISTOPHER BROOK )
FISHBECK, et al., )
 )
      Plaintiffs, )
 )
 )  Civil Action No. 1:18-cv-2248-CRC
v. )
 )
 )
THE ISLAMIC REPUBLIC OF IRAN, et al., )
 )
      Defendants )
_____ )

### SWORN AFFIDAVIT OF GARY N. KLEIMAN

**BEFORE ME**, the undersigned authority, this day personally appeared Mr. Gary N. Kleiman, hereinafter "Affiant", who after being duly sworn, deposes and states:

**A. Professional Background and Experience**

1. I, Gary N. Kleiman, have operated a consulting firm specializing in global emerging economy and financial market analysis for 30 years, with coverage and firsthand experience in 75 countries throughout Asia, Latin America, Europe and the Middle East. Verbal briefings and written reports are standard products, and our public and private sector client base includes banks, fund managers, government agencies and international development organizations. Financial system monitoring and tracking focuses on a comprehensive banking and securities market policy and performance range across monetary institutional, legal-regulatory, and operational issues.

2. Among career highlights, I was designated the first individual financial sector expert for an IMF-World Bank Program to assist low and middle-income countries, and was an adjunct professor at the Georgetown University School of Foreign Service where I created a graduate emerging market finance course. I held a 20-year contract to advise the U.S. government

1

on economic and financial crisis, and served as an expert witness in sovereign debt default cases.[1] I am a regular columnist for the Financial Times, Asia Times and other outlets, and have been widely quoted in the press. I completed international political economy studies at Georgetown University, Sciences Po (Paris), and the London School of Economics. I have attached my CV designed for outside advisory and board positions. (Ex. 1).

3.  My direct involvement with Iran's banking and capital markets dates back 16 years to a project working with the Istanbul, Turkey-based Federal of Eurasian Stock Exchanges with Tehran as a member. I have regularly followed developments in Iran and written numerous articles in recent years, the latest from August and September 2018,[2] and spoken at official and industry events in the aftermath of the 2015 international nuclear deal easing sanctions.

4.  I am familiar with the Iranian banking system, and the operations of Defendants Bank Markazi, Bank Melli Iran, and the National Iranian Oil Company.

5.  For this declaration, I relied on existing knowledge and documents, and on information derived from my extensive contacts network from the country and the region, and the U.S., Europe and Asia. Prior to the recent U.S. withdrawal from the JCPOA, foreign funds based out of London were active in circulating relevant analysis and data to promote direct and portfolio investment in Iran. This Declaration is also based on additional review of enabling documents, outside research and media coverage, and common financial and investor community understanding of Iran's central bank status.

B.  **Nature of Assignment:**

---

[1] *Walker International Holdings Ltd. vs Republique Populaire du Congo*, 2005 ; *Donegal International Ltd. vs. Republic of Zambia, Mofed Ltd.* in the High Court of Justice Queens Bench Division (Commercial Court), 2007.

[2] https://www.asiatimes.com/2018/09/opinion/iran-stock-escape-numbs-sanctions-pain/?_=3918421; and https://www.ft.com/content/01e71676-963c-11e8-b747-fb1e803ee64e

2

6.  Plaintiffs' Counsel in this matter requested that I evaluate three Defendant entities—Bank Markazi Jomhouri Islami Iran (a/k/a the Central Bank of the Islamic Republic of Iran, or "CBI"); Bank Melli Iran; and the National Iranian Oil Company ("NIOC"). I was asked to determine whether the government of Iran directly owned a majority share in each entity before the Plaintiffs filed their first complaint in September 2018 and continuing through the date of their First Amended Complaint filed in January 2019. I also investigated whether each entity was incorporated in, and held their principal place of business in Iran. And finally, I was asked to determine the nature and scope of the commercial activities of the three entities.

7.  For this determination I referred to publically-available bylaws and descriptions published on the organizations' websites, and common third-party investor and media understanding of their relationships to the sovereign as described in the citations below. Key to examining their history and function, the 1979 Revolutionary Constitution enshrined a planned economy and strategic natural resource and financial institution "public administration and ownership" which nationalized banks under an Islamic no-interest system after prior state-takeover of oil production.

### C. Bank Markazi:

8.  Bank Markazi is the central bank of Iran, formed under enabling acts that date to 1960 and 1972, and the founding legislation assigns dual responsibility for "monetary and credit policies" and "granting loans to state enterprises and agencies."[3] That overlap has been reflected since the Revolution in successive Five-Year Development plans signaling economic management and commercial and industrial sector priorities. Since 1979, the governor's appointment as the top official has been politically charged under new rules where the President and wider cabinet must

---

[3] www.cbi.ir/default_en.aspx

approve the choice, and the latter also sit on a broad "Monetary and Credit Council" to constrain central bank autonomy. Bank Markazi sets and supports sector credit allocation directives where agriculture, manufacturing and mining, and construction and housing accounted for over half the total in recent years. A "milestone" described in a 2016 Turquoise Partners banking system report was the Mehr affordable mortgage scheme since 2008 as a main direct provider of individual borrower facilities. The latest public balance sheet (March 2017) shows assets from loans to government institutions and corporations and banks at 302,329 Billion Rials and 1,000.65 Billion Rials respectively.[4]

9. Bank Markazi, publishes its "Balance Sheet" and "Profit and Loss Account" each year. For their fiscal year ending March 19, 2017, Bank Markazi reported "Earnings before taxes" of 30,026 Billion Rials, paid "Income Taxes" totaling 7,975 Billion Rials, and recorded a "Net Profit" of 22,051 Billion Rials.[5]

10. During President Ahmadinejad's administration coinciding with the terrorist attacks at issue in this case, double-digit inflation resulted from missed money supply targets, with forced central bank lending schemes in housing and other areas, and he routinely dismissed heads before their terms expired. In July of 2018, amid a currency crisis where the Iranian Rial lost half its value against the Dollar, Iranian President Rouhani replaced a longstanding incumbent with a former Bank Melli chief executive. The move illustrated regular rotation among top banking posts named by a shared "General Assembly" of Cabinet Ministers and close ties between the institutions. An article[6] noted Bank Markazi's new head, Abdolnasser Hemati, "is a highly trusted person by the government."

---

[4] https://www.cbi.ir/category/EconomicReport_en.aspx
[5] https://www.cbi.ir/Search/Search_en.aspx?q=Balance&pg=2
[6] "The Knife in Iran's Bank, The Iranian, August 14, 2018.

11. With the 1960 banking law, Bank Markazi assumed note issue, supervisory and government account operation previously conducted by Bank Melli since 1931. It was incorporated in Iran under state shareholding and its current registered address is #198 Mirdamad Boulevard, Tehran, Iran. The Islamic Republic of Iran is the sole shareholder. The Monetary and Banking Act[7] Article 10 states that "the capital of CBI is five thousand million Rials which is fully paid up and wholly owned by the Government," and that "the Bank's capital may be increased upon the recommendation of its General Meeting and the approval of the Council of Ministers."

12. Bank Markazi does not conduct monetary and credit policy on its own or in its sole discretion, but rather, implements directives through the wider Money and Credit Council (MCC), with its governor as a member along with other government ministers, including from Finance, Industry and Planning. Under the 1983 amendments, guiding sector loan allocation, inflation and money supply targets are incorporated from broader economic Five-Year Development Plans.

13. Despite Bank Markazi's mandated role as the central bank, it conducts significant commercial activities, and is responsible for ensuring that it (and all other state-owned banks) complies with Islamic banking principles. In order to do so, Bank Markazi is highly involved in the commercial activities of all state-owned banks and considers each of the state-owned banks, including Defendant Bank Melli Iran, its "customers." Unlike other political or ministerial arms of the Iranian government, Bank Markazi is a distinct corporate entity that possesses assets and liabilities, reports its profits and losses, pays income taxes, and issues small loans and letters of credit to public and private customers. These commercial activities underpin Bank Markazi's line of business status as "engaged as commercial banks" within corporate and investor research firms such as Dun & Bradstreet.[8]

---

[7] Central Bank of Iran, The Monetary and Banking Act (as amended up to May 22nd, 2017)
[8] Based upon Dun & Bradstreet Report, accessed March 20, 2020. Available upon request.

14. In recent years, with credit scarce in Iran through established foreign and local commercial channels, Bank Markazi has expanded into new industries and rescued existing oil ventures. This past fiscal year, starting March 2019, it increased loans 50% to $500 million for "emerging startups and knowledge-based companies."[9] Another large investment will go to the Siraf refining project according to the Petroleum Ministry.[10] For the private sector generally, it pledged in July "all necessary support measures" including production and working capital funds.[11]

15. Bank Markazi has been subject to U.S. and international sanctions for its commercial work alongside other major state-owned banks as an intermediary and facilitator in funding terrorist activities and the United States has increased sanctions incrementally over the last two years, and especially in September 2019, following the Islamic Revolutionary Guard Corps (IRGC) classification as a Foreign Terrorist Organization (FTO).

16. The U.S. Treasury Department has recounted Bank Markazi's use of commercial front companies and other subterfuge to channel "billions of dollars to the IRGC's Quds Force and its proxy Hezbollah," and under the latest measures Bank Markazi is considered an "IRGC affiliate" because "the IRGC-QF has received the vast majority of its foreign currency from the CBI and senior CBI officials have worked directly with the IRGC-QF to facilitate CBI's financial support to the IRGC-QF... [including] tens of millions of euros to Iraq from the CBI. Then-Governor of the CBI Valiollah Seif directed the transfer."[12]

---

[9] Financial Tribune, "Central Bank of Iran Lends Tech Firms $500 Million, December 10, 2019.
[10] "CBI to Finance Siraf Refining Project," The Iran Project, December 18, 2019.
[11] Tehran Times, "CBI to Take all Necessary Measures to Support Private Sector," July 14, 2019.
[12] https://home.treasury.gov/news/press-releases/sm780.

17. Similarly, an October 2018 FinCEN Advisory warned that CBI transactions went to personal accounts for withdrawal by non-government individuals and entities, and that "multiple wire transfers" were unrelated to traditional central bank activity.[13]

18. As a separately incorporated government arm with core commercial purposes under local statute and presence, Bank Markazi is, and was, before the Plaintiffs filed their first complaint in September 2018 and continuing through the date of their First Amended Complaint filed in January 2019, wholly-owned by the government of Iran, formed under the laws of Iran, and has its principal place of business in Iran. Bank Markazi's commercial activities predominate and have evolved in intensity over its history.

### D. Bank Melli Iran (National Bank):

19. Bank Melli Iran sector dominance predates the revolution as the first modern locally founded bank 90 years ago in 1928, with foreign institutions previously in that position. It is a "powerful government economic development arm," according to its website. The bank's organization chart places the General Assembly at the top, above the board of directors.[14] It is the biggest fully state-owned competitor alongside Refah and Post, and the largest in industry assets at over $75 Billion at end-2016, the latest data available.[15] State ownership was emphasized since it carried out simultaneous commercial and central banking functions for 30 years.

20. Bank Melli Iran openly claims to be "the largest finance provider for the country's 5-year plans"[16] and engages in wide ranging retail and wholesale activities through its domestic network of over 3000 branches and 15 overseas branches and subsidiaries, with the latter

---

[13] Financial Crimes Enforcement Network, FinCEN Advisory, Fin-2018-A006, October 11, 2018.
[14] Bank Melli Iran website (www.bmi.ir)
[15] *Ibid.*
[16] *Ibid.*

incorporated under the relevant local law. It is particularly active in foreign exchange operations and project and trade credit, and its investment company is listed on the Tehran Stock Exchange and holds stakes in dozens of other state companies.

21. According to Bloomberg, Bank Melli Iran, Inc., together with its subsidiaries, provides commercial banking services in Iran and internationally. Its banking products and services include foreign exchange transactions; foreign currency accounts, long-term and short-term foreign currency investment deposits, and term deposits; money transfer and remittances; plastic card services; imports and exports services; foreign exchange facilities; and imports services in industrial and commercial economic zones[17]. As a result of Bank Melli Iran's significant commercial activities it is considered in the banking industry as primarily having a commercial purpose and a competitor to other large regional banks. It recently tried to sell holdings in stock exchange-listed companies, following recapitalizations the past two years to $5 Billion under a government public sector bank injection where Bank Melli Iran took half the total.[18]

22. The U.S. Treasury Department has tracked Bank Melli Iran's banking services to support Iran's nuclear and ballistic missile programs, including letters of credit and accounts for clients like the Islamic Revolutionary Guard Corps and defense-related companies served by specialist Bank Sepah.[19] Its favored position was underscored as one of two banks authorized to offer high yield deposit certificates with 18% return,[20] in an attempt to restore saver confidence following currency depreciation and inflation spikes.

---

[17] https://www.bloomberg.com/research/stocks/private/snapshot.asp?privcapId=24391068
[18] "Government Raises Bank Melli Capital by $2.4 bn, *Financial Tribune*, January 29, 2017 and BMI's Capital Exceeds $5 b, *Financial Tribune*, October 19, 2017
[19] https://www.iranwatch.org/iranian-entities/bank-melli
[20] Al.monitor.com, "Iran's Central Bank Signals Possible Interest Rate Hike, September 8, 2018

23. Unlike other nationalized banks like Saderat, Mellat and Tejarat that were partially privatized in the mid- to late-2000s, although ownership and control remained with state interests, the government has retained complete shareholding in Bank Melli Iran. Both outside public and private sector sources, including the World Bank and Turquoise Securities, respectively apply this description.[21] It is locally chartered with the main registered office on Ferdowsi Avenue, Tehran, Iran. Thus, Bank Melli Iran is, and was, before the Plaintiffs filed their first complaint in September 2018 and continuing through the date of their First Amended Complaint filed in January 2019, primarily owned by the government of Iran, formed under the laws of Iran, and has its principal place of business in Iran. Throughout this time period, Bank Melli Iran's activities have been, and continue to be, predominantly commercial in nature.

E. **National Iranian Oil Company:**

24. NIOC was founded in 1951 following nationalization of oil and natural gas exploration and output. It was incorporated in Tehran and has addresses on Taleghani Avenue and Hafez Street, and has dual policy and commercial roles spanning drilling, research, refining, distribution and export activities,[22] and in 2016 subsidiaries received additional authority to seek private investment. Under Article 44 of the 1979 Constitution, the Petroleum Ministry also received public administration responsibility, and NIOC's Board Chair is the Minister and its chief executive his deputy. It is 100% government-owned as a leading commercial global hydrocarbons company, ranking in size with other top Mideast oil producers, and exports had recovered to 3 million barrels/day with the post-2015 sanctions lifting.

---

[21] "The Grand Corruption Cases Database Project," The World Bank, Washington, DC, June 2012; Iranian Banking Sector Report – June 2016, Turquoise Partners, London/Tehran
[22] http://www.nioc.ir/portal/home/?generaltext/81026/81171/84719/; and https://www.iranwatch.org/iranian-entities/national-iranian-oil-company

9

25. According to Funding Universe, "[t]hroughout its existence in the Shah's Iran, NIOC had been an instrument of the government. Nominally it was a public company and not a state-owned corporation, although all its shares were government-owned. In practice NIOC operated under the close scrutiny of the government."[23]

26. NIOC is owned by Iran through its Ministry of Petroleum and operates as an agency of Iran that is directly affiliated with co-Defendant IRGC.[24]

27. The U.S. Treasury Department's OFAC removed it from the Specially Designated National list in 2016 but retained identification as part of the Iranian government to prohibit American company transactions.[25]

28. NIOC has issued project bonds for the South Pars offshore field considered sovereign-backed by investors, and recently entered joint ventures with other big state-run counterparts including China's National Petroleum Company.

29. The regional investor site Zawya independently classifies ownership as government.[26]

30. According to Bloomberg, the National Iranian Oil Company engages in the exploration and production of oil and natural gas resources.

31. By law and practice, NIOC is, and was, before the Plaintiffs filed their first complaint in September 2018 and continuing through the date of their First Amended Complaint filed in January 2019, wholly-owned by the government of Iran, formed under the laws of Iran,

---

[23] www.Fundinguniverse.com/company-histories/national-iranian-oil-company
[24] https://www.treasury.gov/press-center/press-releases/Pages/tg1718.aspx
[25] Iranwatch.org
[26] https://www.zawya.com/mena/en/search?query=National+Iranian+Oil+Company&filter=companies.

and has its principal place of business in Iran. As the single largest entity responsible for Iran's global oil sales, the commercial activities of NIOC are its predominate core functions.

**FURTHER AFFIANT SAYETH NAUGHT**

Signed and delivered this 24th day of March, 2020.

_____
Signature of Affiant

STATE OF VIRGINIA
COUNTY OF FAIRFAX

_____
Gary N. Kleiman

3/24/20
Date

**BEFORE ME**, the undersigned authority, on this day personally appeared GARY N. KLEIMAN, known to me to be the person whose name is subscribed to the foregoing Affidavit, and acknowledge to me that he executed the same for the purposes and consideration therein expressed and in the capacity therein expressed.

Witness my hand and official seal on this 24th day of March, 2020.

PETER BANG
NOTARY PUBLIC
REG# 7853435
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES 06/30/2023

_____
Notary Public

My Commission expires: 6/30/2023
Notary Public

# EXHIBIT 1

Gary N. Kleiman

**Senior Partner**
**Kleiman International Consultants, Inc.**
Telephone:  +1 202-686-4200
Mobile:  +1 202-669-0234
gkleiman@kleimaninternational.com
www.kleimaninternational.com

Summary:
Headed pioneer global emerging economy and financial market consulting firm for 30 years, with analysis covering full geographic, asset class and thematic range for banks, investment managers, corporations, government agencies and international development organizations. Seeking to apply comprehensive expertise and entrepreneurial-thought leadership skills to company and fund board positions on high-level risk control and market strategy, and outside financing sources and partnerships. Prolific speaker and writer able to leverage director role to reach external commercial and official audiences, and current nonprofit advisory board member. Business understanding and guidance across all cross-border lending, debt, equity and financial services foreign direct investment categories

Career Experience:
1987-   Senior Partner and Co-Founder, Kleiman International Consultants, Inc., New York City and Washington, DC

Started and led the original independent firm of analysts for emerging economies and banking and securities markets, offering research and advice and firsthand insight on 75 countries throughout Latin America, Asia, Europe, the Middle East, and Africa. Global client base established across a diverse public and private sector range, with emphasis on dedicated financial institutions and fund managers, and bilateral and multilateral donors.  Developed and serviced project and retainer relationships through verbal briefings, written reports, standard publications, conferences and seminars, and technical assistance and training.

Tracked economic policy and performance and credit and capital markets trends to clarify allocation risk and reward, and advised recipient countries and stock exchanges on investment climate and practical steps to promote foreign portfolio and direct inflows. Examined specialized topics in all regions and asset classes, and combined business and government perspectives for integrated understanding of macro and institutional, regulatory, and operating issues.

Received wide press coverage since 1990s circulation of annual emerging securities market survey, and launched pioneer website blog a decade ago. Created subscription banking, stock and bond market products, and first local-currency debt reference.   Aided with formation of industry trading association EMTA and expansion of IFC's Emerging Market Database. Held a 20 year contract to advise the US government on crisis and vulnerability indicators, and appointed the initial individual financial sector expert for the IMF-World Bank's First Initiative. Served as expert witness in international court cases,

and invited to join small fund boards.  Client account growth and confidentiality maintained throughout the firm's history, with an average five employees and revenue in the mid six-figures.

Activities and Awards:
*Financial Times Columnist* 2001-07; current writer for its *beyondbrics* blog
Regular contributor:  Asia Times, *BNE Intellinews*
Bretton Woods Committee Cited Member for poor country initiatives
US Presidential Campaign and Program Emerging Market Policy Volunteer
Project Task Forces: Council on Foreign Relations, World Economic Forum
Global Conference Moderator: Euromoney, Institutional Investor, Informa
Media Commentator: CNBC, Bloomberg, CBC
Listed:  *Who's Who in America*
Cited: Best Emerging Market Banking and Securities Analyst (2015) - *Asset International*
Adjunct Professor and Student Mentor, Georgetown University School of Foreign Service: inaugurated emerging market finance graduate course
Advisor, US-Tunisia Joint Economic Commission
Member, Tent Partnership for Refugees,
Advisory Board, Institute for the Study of International Migration
Innovation in Banking Analysis Award (2018) - Corporate Live Wire

Education (1977-82):
General Course-MSc level, London School of Economics
BSFS, magna cum laude, Truman Scholar, Georgetown University, Washington DC
Certificat D'Etudes Politiques with Mention, Sciences Po, Paris
Academic Internships: Thailand, Philippines (UN), Tunisia (AIESEC)
Languages: French, Spanish, Russian (basic)