### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ESTATE OF CHRISTOPHER BROOK FISHBECK,** *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> **THE ISLAMIC REPUBLIC OF IRAN,** *et al.*, <br><br> Defendants. | Case No. 18-cv-2248 (CRC) |

### <u>OPINION AND ORDER</u>

The estates and families of several hundred United States nationals allegedly killed or injured in Iraq from 2003 to 2011 bring this civil action against the Islamic Republic of Iran and five of its constituent entities or instrumentalities. The defendants have not appeared. Before the Court is plaintiffs' motion for an order finding that they have successfully effected service of process under the Foreign Sovereign Immunities Act ("FSIA"). <u>See</u> Motion for Order Finding Effective Service of Process Pursuant to 28 U.S.C. § 1608 ("Motion" or "Mot.") 1, ECF No. 39. For the reasons explained below, the Court finds that service was proper as to all defendants and will grant plaintiffs' motion.

### I.   **Legal Standards**

The FSIA "provides the sole basis for obtaining jurisdiction over a foreign state in the courts of this country." <u>Argentine Republic v. Amerada Hess Shipping Corp.</u>, 488 U.S. 428, 443 (1989). In FSIA cases brought against absent defendants, courts have an obligation to "satisfy [themselves] that [they have] personal jurisdiction." <u>Mwani v. bin Laden</u>, 417 F.3d 1, 6 (D.C. Cir 2005). The plaintiff bears the burden of proof on personal jurisdiction and may satisfy this burden by making a "prima facie showing" based on the pleadings and "bolstered by such

affidavits and other written materials as they can otherwise obtain." Id.; see also Edmond v. U.S. Postal Serv. Gen. Counsel, 949 F.2d 415, 424 (D.C. Cir. 1991).

The FSIA provides for personal jurisdiction where service has been properly made under 28 U.S.C. § 1608. Republic of Sudan v. Harrison, 139 S. Ct. 1048, 1053–54 (2019). Section 1608(a) governs service of process on "a foreign state or political subdivision of a foreign state," 28 U.S.C. § 1608(a); Fed. Rule Civ. Proc. 4(j)(1), while Section 1608(b) governs service of process on "an agency or instrumentality of a foreign state," 28 U.S.C. § 1608(b). Although similar, the two sections impose slightly different requirements on plaintiffs attempting service. See Holladay v. Islamic Republic of Iran, No. 17-cv-915, slip op. at 3–4 (D.D.C. Feb. 11, 2021) ("Holladay II"). Determining whether plaintiffs have properly completed service thus involves two inquiries: first, the Court must decide whether each defendant is either a "foreign state or political subdivision" to be served under § 1608(a) or "an agency or instrumentality of a foreign state" to be served under § 1608(b); second, the Court must determine whether plaintiffs satisfied the service requirements of the relevant subsection of § 1608. See Holladay v. Islamic Republic of Iran, 406 F. Supp. 3d 55, 59 (D.D.C. 2019) ("Holladay I").

## II.   Analysis

### A.   Status of the Defendants

Defendant Islamic Republic of Iran ("Iran") is a foreign state; defendant Iranian Revolutionary Guard Corps ("IRGC") is a branch of the Iranian Armed Forces that operates in and outside of Iran; and defendant Iranian Ministry of Intelligence and Security ("MOIS") is a non-military government organization that functions as the primary intelligence agency of Iran. Plaintiffs' Amended Complaint at 8–17. Defendants Bank Markazi Jomhouri Islami Iran ("Bank Markazi"), Bank Melli Iran ("Bank Melli"), and National Iranian Oil Company ("NIOC") are

corporations wholly owned by the government of Iran.  Id. at 17–26.  For the reasons explained below, the Court concludes that the first three defendants are "foreign state[s] or political subdivision[s]" under § 1608(a) and that the latter three are "agenc[ies] or instrumentalit[ies]" of Iran under § 1608(b).

To determine whether an entity is either "a foreign state or political subdivision of a foreign state," or "an agency or instrumentality of a foreign state," the D.C. Circuit applies a "categorical approach":  "if the core functions of the entity are governmental, it is considered the foreign state itself; if commercial, the entity is an agency or instrumentality."  Roeder v. Islamic Republic of Iran, 333 F.3d 228t, 234 (D.C. Cir. 2003).  Courts should generally examine the commercial or governmental "nature" of the functions in question, rather than the purpose or goal of the activities when making this determination.  See Holladay II, slip op. at 9–11.  However, even after determining that an entity's functions are categorically commercial, the court must also assess whether the entity meets the other criteria for "agency or instrumentality" under the FSIA.  The entity thus must be (1) a separate legal person, corporate or otherwise, from the foreign state; (2) "an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof"; and (3) "neither a citizen of a State of the United States . . . nor created under the laws of any third country."  28 U.S.C. § 1603(b)(1)–(3); see also Wultz v. Islamic Republic of Iran, 755 F. Supp. 2d 1, 29 (D.D.C. 2010) (describing these requirements and quoting § 1603(b)(1)–(3)).  "Instrumentality status is determined at the time of the filing of the complaint."  Dole Food Co. v. Patrickson, 538 U.S. 468, 480 (2003).

### 1. Iran, IRGC, and MOIS

The first three named defendants all qualify as "foreign states or political subdivisions" of that state under § 1608(a).  The Islamic Republic of Iran is, of course, a foreign state.  See, e.g., Holladay I, 406 F. Supp 2d at 59.  Courts have also uniformly held that IRGC, as a branch of Iran's Armed forces, "constitutes a foreign state for FSIA purposes" because it is an "integral part[] of Iran's political structure."  Id. at 60; Rimkus v. Islamic Republic of Iran, 750 F. Supp. 2d 163, 180 (D.D.C. 2010); see also Transaero, Inc. v. La Fuerza Aerea Boliviana, 30 F.3d 148, 153 (D.C. Cir. 1994) ("[A]rmed forces are as a rule so closely bound up with the structure of the state that they must in all cases be considered as the 'foreign state' itself[.]").  MOIS, as Iran's "primary intelligence agency," Holladay I, 406 F. Supp 2d at 59, is also "an integral part of [Iran's] political structure," making it, too, "a political subdivision within the meaning of the FSIA," Schooley v. Islamic Republic of Iran, No. 17-cv-1376, 2019 WL 2717888 at *68 (D.D.C. June 27, 2019); see also Roeder, 333 F.3d at 151 (holding that "the [MOIS] must be treated as the state of Iran itself rather than its agent [because] . . . . [t]he conduct of foreign affairs is an important and indispensable government function.") (internal quotation marks omitted).  Because they are a foreign state and political subdivisions thereof under the FSIA, these defendants are subject to service pursuant to § 1608(a).

### 2. Bank Melli, NIOC, and Bank Markazi

As for the remaining defendants, the Court concludes that they are properly considered agencies or instrumentalities of Iran subject to service under § 1608(b).  Defendant Bank Melli is an agency or instrumentality because its "core function . . . is commercial."  Holladay I, 406 F. Supp. 3d at 59.  As the plaintiffs' affidavits indicate, Bank Melli "provides commercial banking services in Iran and internationally[,] . . . [including] foreign exchange transactions[,] foreign

currency accounts, long-term and short-term foreign currency investment deposits and term deposits[,] money transfer and remittances[,] plastic card services[,] . . . [and] imports services in industry and commercial economic zones." Kleiman Aff. ¶21. As a result, "it is considered in the banking industry as primarily having a commercial purpose." Id. Although some of the tasks Bank Melli performs may assist the Iranian government in furthering its objectives, the court has no trouble concluding that Bank Melli's commercial functions predominate. See Holladay I, 406 F. Supp 3d at 59. Bank Melli also meets the requirements of § 1603(b): it is a separate corporate entity incorporated in and majority owned by Iran. See Kleiman Aff. at ¶¶19, 23; 28 U.S.C. § 1603(b)(1)–(3).

NIOC is also an agency or instrumentality of Iran because its primary functions—the production and sale of oil and oil byproducts—are clearly and "predominantly commercial in nature." Clawson Dec. at ¶¶2, 3; see Holladay II, slip op. at 11–12. "[W]hile NIOC does fulfill some governmental and quasi-governmental functions ancillary to the production and sale of oil," and serves as a significant source of tax revenue for the Iranian government, it functions "primarily as a commercial entity" aimed at the production and sale of oil. Clawson Dec. at ¶¶2, 3, 23, 25. Because these commercial activities constitute the core of NIOC's operations, it qualifies as an agency or instrumentality under core functions analysis. Holladay II, slip op. at 11–13. NIOC is also a separate corporate entity incorporated in and majority owned by Iran. Id. at 12–13. As such, NIOC is an "agency or instrumentality" of Iran subject to service under the provisions of § 1608(b). See id.

Bank Markazi, which plaintiffs describe as the central bank of Iran, see, e.g., Mot. at 6, presents a somewhat closer call. Ultimately, however, the Court concludes that it is properly considered an "agency or instrumentality" of the Iranian government subject to service pursuant

to § 1608(b) for substantially the same reasons outlined in Judge Moss's thorough decision in

Holladay II.   See slip op. at 13–19.   Bank Markazi clearly satisfies the requirements of

§ 1603(b)(1)–(3), as it is a separate corporate entity wholly owned by Iran and formed under

Iranian law.  Kleiman Aff. at ¶23; Holladay II, slip op. at 13.  However, as Judge Moss noted,

"[c]entral banks, by their nature, straddle the line between governmental commercial activity,"

complicating application of the "core functions" test.[1]   Holladay II, slip op. at 13.   Nonetheless,

the Court agrees with the analysis in Holladay II concluding that the facts averred in the Kleiman

affidavit—which was submitted by plaintiffs in both cases—suffices to make the "prima facie"

showing under § 1608(b) that Bank Markazi is as an "agency or instrumentality" of Iran.  See id.

at 18–19.   In particular, the Court finds that the significant commercial and private lending

activities of the Bank, id. at 14, its relatively limited and dependent role in setting monetary and

financial regulatory policy, id. at 14–15, the fact that Bank Markazi reports profits and losses, id.

at 14, and its self-identification as an "agency or instrumentality of Iran" in briefing before the

United States Supreme Court, id. at 16–17 (citing Brief for Petitioner, Bank Markazi v. Peterson,

---

[1] There is a degree of inherent ambiguity in whether a central bank's "core functions" are governmental or commercial because a central bank's day-to-day functions will, to some extent, resemble those of commercial banks even as it broadly performs such "governmental functions" as setting monetary policy, issuing currency, or acting as a lender of last resort.  A central bank may, for example, transact in the market for government securities just as commercial banks and other financial institutions do.  But to call these transactions a "commercial function" would be misleading, as such transactions are a key means of performing the "governmental function" of setting monetary policy.  See, e.g., Federal Open Market Committee of Federal Reserve System v. Merrill, 443 U.S. 340, 344 (1979) (noting that "[o]pen market operations—the purchase and sale of Government securities in the domestic securities market—are the most important monetary policy instrument of the Federal Reserve System").  However, because the Court agrees with Holladay II that the best interpretation of the "core functions" test looks at the nature of the activity, rather than its purpose, such ambiguities are not fatal to Plaintiffs' argument here. Slip op. at 3–4.

136 S. Ct. 1310 (2016) (No. 14-770), 2015 WL 7294865, at *9 (Nov. 16, 2015)), to be strong indicators of Bank Markazi's "agency or instrumentality" status.[2]

> B.   Service on Iran, the IRGC and MOIS pursuant to § 1608(a)

Having categorized the various defendants under § 1608, the Court now turns to the question of whether the defendants were properly served under the requirements of the relevant subsection. Beginning with the "foreign state or political subdivision" defendants (Iran, IRGC and MOIS), the Court concludes that the plaintiffs complied with the strictures of § 1608(a) and thus properly served these defendants.

When serving defendants under § 1608(a), "[s]trict adherence to [its] terms . . . is required." Transaero, Inc., 30 F.3d at 154. The statute "sets out in hierarchical order the following four methods by which '[s]ervice . . . shall be made.'" Harrison, 139 S. Ct. at 1054 (quoting 28 U.S.C. § 1608(a)). The first method is delivery of the summons and complaint "in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision." 28 U.S.C § 1608(a)(1). The second, if no such special arrangement exists, is delivery "in accordance with an applicable international convention on service of judicial documents." Id. § 1608(a)(2). The third, if service cannot be made under (1) or (2), is delivery of

> the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned.

---

[2] The Court's conclusion is bolstered by the legislative history and out-of-circuit precedent discussed in Holladay II. Slip op. at 16–18.

Id. § 1608(a)(3).  And the fourth, if service cannot be made within 30 days under subsection (3), is delivery of

> two copies of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the Secretary of State in Washington, District of Columbia, to the attention of the Director of Special Consular Services—and the Secretary shall transmit one copy of the papers through diplomatic channels to the foreign state and shall send to the clerk of the court a certified copy of the diplomatic note indicating when the papers were transmitted.

Id. § 1608(a)(4).

Plaintiffs cannot achieve service under (1) or (2) because no "special arrangement[s]" or international conventions exist which would allow them to effect service on Iran.  See Lukken Aff. ¶¶ 5–11; Holladay I, 406 F. Supp. 3d at 61–62 (noting that there is neither a "special arrangement" nor international convention which would enable service under §§ 1608(a)(1) or (2)).  Plaintiffs attempted service pursuant to § 1608(a)(3) by filing a letter to the Clerk of the Court on April 25, 2019 requesting that she ship service packages to defendants Iran, IRGC, and MOIS.  See ECF Dkt. No. 19.  The service packages contained the Summons, the Complaint, the Notice of Suit, and a copy of the FSIA together with two copies of a translation of each document into Farsi, the official language of Iran.  See ECF Dkt. No. 20.  On May 6, 2019, the Clerk of the Court filed a Certificate of Mailing indicating that the documents were sent to the head of the ministry of foreign affairs on May 2, 2019. See ECF Dkt. No. 20.  After a several weeks-long shipping process, this effort to serve these defendants failed, as all three packages were rejected by the defendants.  See ECF Dkt. No. 22 Ex. 1–3.

Plaintiffs proceeded to attempt service pursuant to § 1608(a)(4).  On June 12, 2019—more than 30 days after first initiating service pursuant to § 1608(a)(3)—plaintiffs requested, via letter to the Clerk of Court, foreign service of process through the U.S. Department of State and

provided the Clerk's office with a service box containing two copies in English and two copies in Farsi of plaintiffs' First Amended Complaint, the Summons, the Notice of Suit, the FSIA, and a cashier's check payable to U.S. Embassy Bern for the fee charged by the U.S. Department of State to serve documents.  See ECF Dkt. No. 23 Ex. 1.  The Clerk filed an Affidavit of Service executed by Jared Hess, Attorney Advisor of the US Department of State Overseas Citizens Services, confirming that the service package "was delivered to the Iranian Ministry of Foreign Affairs under cover of diplomatic notes," and plaintiffs have submitted to the Court certified copies of the diplomatic notes.  See ECF Dkt. No. 36.  Accordingly, the Court finds that plaintiffs have satisfied the requirement that service of process be "through diplomatic channels to the foreign state" and that the State Department "send to the [clerk] a certified copy of the diplomatic note," thereby successfully effecting service on defendants Iran, the IRGC and MOIS pursuant to § 1608(a)(4).

     C.  Service on Bank Markazi, Bank Melli and NOIC pursuant to § 1608(b)

     Turning to the "agency or instrumentality" defendants (Bank Markazi, Bank Melli, and NIOC), the Court similarly concludes that plaintiffs properly served these defendants.  Like § 1608(a), § 1608(b) sets out a progression of methods through which service can be made.  Howe v. Embassy of Italy, 68 F. Supp. 3d 26, 31 (D.D.C. 2014).  The first is delivery of the summons and complaint "in accordance with any special arrangement for service between the plaintiff and the agency or instrumentality."  28 U.S.C. § 1608(b)(1).  The second, if no special arrangement exists, is delivery "either to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process in the United States; or in accordance with an applicable international convention."  Id. § 1608(b)(2).  The third, if service cannot be made under (1) or (2), is

if reasonably calculated to give actual notice, by delivery of a copy of the summons and complaint, together with a translation of each into the official language of the foreign state . . . (B) by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the agency or instrumentality to be served.

Id. § 1608(b)(3)(B).

Plaintiffs cannot effect service under (1) or (2). See Lukken Aff. ¶¶ 5–11; Holladay I, 406 F. Supp. 3d at 63 (noting that neither §§ 1608(b)(1) or (2) is available to plaintiffs seeking to serve Iran). On April 25, 2019, plaintiffs requested by letter to the Clerk of Court that the Clerk ship a service package to each of these defendants containing two copies in English and two copies in Farsi of plaintiffs' First Amended Complaint and the Summons. ECF Dkt. No. 19. The Clerk filed a Certificate of Mailing on May 6, 2019 indicating that these materials were sent via registered mail with return receipt requested to these defendants pursuant to the provisions of § 1608(b)(3)(B). ECF Dkt. 21. Plaintiffs subsequently filed exhibits showing that the packages were successfully delivered to agents of each of the defendants who received and signed for them. See ECF Dkt. 24 Ex. A, ECF Dkt. 25 Ex. A, ECF Dkt. 26 Ex. A. Accordingly, the Court finds that plaintiffs satisfied § 1608(b)(3)(B)'s requirement that service of process be "by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the agency or instrumentality to be served." 28 U.S.C. § 1608(b)(3)(B).

**III.   Conclusion**

For the foregoing reasons it is hereby

**ORDERED** that [39] plaintiffs' motion for an order finding that service of process has been properly effected on the defendants is GRANTED.

**SO ORDERED.**

_____
CHRISTOPHER R. COOPER
United States District Judge

Date:  <u>March 1, 2021</u>