# EXHIBIT 2

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA
------------------------------------------------------x
TIMOTHY KARCHER, et al.,                    :
                                            :    **Case No. 16-cv-00232 (CKK)**
                            Plaintiffs,     :
                                            :
              -against-                     :
                                            :
ISLAMIC REPUBLIC OF IRAN,                   :
                                            :
                            Defendant.      :
------------------------------------------------------x

# STATUS REPORT

Plaintiffs respectfully submit this Status Report pursuant to the Court's April 19, 2017 Scheduling and Procedures Order, ECF No. 32. The numbered paragraphs below correspond to the Court's various questions.

    i.    Plaintiffs propose to file a brief setting out the basis for the Court's personal and subject matter jurisdiction in this matter **on or before May 24**;

    ii.    Plaintiffs have conducted substantial informal discovery (including through the Freedom of Information Act), which has proceeded slowly, but believe they will be able to proceed without the need for Rule 26 discovery in this action;

    iii.    Plaintiffs anticipate requesting that the Court take judicial notice of <u>limited</u> factual findings from other cases and will file a motion **on or before May 24** in which they will identify with particularity the factual findings and their source;

    iv.    Plaintiffs anticipate that a joint liability and bellwether damages hearing (*see* point v., *infra*) in this action would last 5-6 days and expect to be prepared and available for said hearing as **early as July 17**, but with a preference for the week of **August 7, 2017** to accommodate the schedules of expert witnesses – all, of course, subject

    to the Court's availability;

v. Plaintiffs are cognizant that courts in cases involving the Terrorism Exception to the Foreign Sovereign Immunities Act have proceeded in a variety of ways, ranging from reviewing damages claims based solely on written submissions of expert reports and affidavits, to designating a magistrate judge or appointing special masters, to conducting a separate evidentiary hearing. In light of the sheer number of Plaintiffs involved, we respectfully suggest that a full-blown evidentiary hearing on damages would unnecessarily expend the Court's resources. Instead, we suggest that the Court adjudicate a limited number of bellwether claims; the vast majority of the damages claims could subsequently be submitted to special masters for reports and recommendations. A more detailed proposal is set forth in <u>Exhibit A</u>;

vi. Plaintiffs are also including, for reference purposes, a proposed scheduling and special master appointment order modeled in part on the one used in *Valore v. Islamic Republic of Iran*, No. 03-cv-01959 (RCL), ECF No. 49 (D.D.C. Feb. 4, 2010), attached hereto as <u>Exhibit B</u>.

vii. Lastly, in view of the nature of these particular claims, as well as the nature of some of the evidence Plaintiffs anticipate submitting, we request an opportunity to explore with the Court the possibility of submitting certain information and materials under seal.

Plaintiffs' counsel are available to answer any additional questions the Court may have.

Dated: May 8, 2017

                                                Respectfully submitted,

                                                OSEN LLC

                                  By    /s/ Gary M. Osen
                                          Gary M. Osen (DC Bar No. NJ009)
                                          Ari Ungar (DC Bar No. NJ008)
                                          Michael J. Radine (DC Bar No. NJ015)
                                          2 University Plaza
                                          Hackensack, NJ 07601
                                          Tel. (201) 265-6400

                                          TURNER & ASSOCIATES, P.A.
                                          C. Tab Turner
                                          4705 Somers Avenue, Suite 100
                                          North Little Rock, AR 72116
                                          Tel. (501) 791-2277

                                          Attorneys for Plaintiffs

# EXHIBIT A

**Plaintiffs' Proposal for Conducting Damages Proceedings**

The 373 Plaintiffs in this action are American victims of Iranian-backed terrorists and Iranian-designed munitions deployed in Iraq between 2004 and 2011. Plaintiffs comprise 256 family members of murdered United States soldiers[1] suing in their own capacity and representing 40 estates, as well as 22 wounded U.S. soldiers and 55 of their family members. Given the large number of Plaintiffs and the variety of their claims for physical, mental, and economic injuries, Plaintiffs summarize below the nature of their claims and respectfully propose a framework for reviewing damages evidence and determining awards.

Plaintiffs' claims include the pain and suffering of both surviving victims and estates, economic damages for many of the same, solatium damages for the family members of surviving or deceased victims (whether or not their estates are Plaintiffs), and punitive damages. *See* 28 U.S.C. § 1605A(c) (listing available types of damages). In determining compensatory damages in FSIA cases, this Court typically looks to prior FSIA awards for guidance. *See, e.g.*, *Oveissi v. Islamic Republic of Iran*, 768 F. Supp. 2d 16, 24 (D.D.C. 2011).[2] These awards have established a framework which provides baseline awards for each category of damages depending on each plaintiff's injuries, along with upward or downward departures in cases of aggravating or mitigating circumstances. *See, e.g.*, *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 85-86 (D.D.C. 2010).

---

[1]   In 3 cases, however, the decedent was a military contractor or journalist.

[2]   Reliance on prior FSIA cases in uncontested actions had led to a "standardized approach," *Taylor v. Islamic Republic of Iran*, 881 F. Supp. 2d 19, 22 (D.D.C. 2012), that does not necessarily reflect full compensation a jury would award.

1

I.     **Summary of Damages Claims**

   A.     **"Survival Actions" for the Pain and Suffering of Decedents**

Survival actions are claims for injuries a decedent suffered before his death that may be brought after his death by his estate. *Id.* at 77. Survival claims can include "pain and suffering stemming from assault, battery, and IIED." *Id.* While pain and suffering is – axiomatically – unavailable for plaintiffs who died instantaneously from their wounds, *id.*, "[t]he courts have recognized that even very short periods of pain and suffering prior to death in a terrorist attack are compensable." *Stern v. Islamic Republic of Iran*, 271 F. Supp. 2d 286, 300 (D.D.C. 2003) (citing cases). Courts have typically awarded $1 million for extreme suffering lasting from as little as 30 seconds before death up to several hours. *Peterson v. Islamic Republic of Iran*, 515 F. Supp. 2d 25, 53 (D.D.C. 2007) (calling such awards "uniform"). *See also Elahi v. Islamic Republic of Iran*, 124 F. Supp. 2d 97, 113 (D.D.C. 2000) (awarding $1 million for 30 seconds of suffering); *Eisenfeld v. Islamic Republic of Iran*, 172 F. Supp. 2d 1, 5 (D.D.C. 2000) (same for several minutes of suffering); *Stern*, 271 F. Supp. 2d at 300 (same for several minutes of suffering).

Pain and suffering endured before death, from several hours up to several years, has led to much higher awards. *See Peterson*, 515 F. Supp. 2d at 53 ("This award increases when the period of the victim's pain is longer."). In *Peterson*, pain and suffering awards included $7.5 million for 8 days of "excruciating pain," $7 million for 7 days of excruciating pain, and $5 million for nine years where the victim led a "somewhat functional life after the attack." *Id.*[3]

---

[3]     Even where evidence as to the duration of conscious suffering before death is unclear, courts have found that plaintiffs "are entitled to fair compensation for their injuries," and have awarded similar or reduced amounts. *See, e.g.*, *In re Terrorist Attacks on Sept. 11, 2001*, No. 03 CIV. 9848 GBD FM, 2012 WL 3090979, at *4 (S.D.N.Y. July 30, 2012), *report and recommendation adopted*, No. 03 MDL 1570 GBD FM, 2012 WL 4711407 (S.D.N.Y. Oct. 3, 2012) (awarding $2 million in pain and suffering per victim of the September 11, 2001 attacks and citing similar cases); *Peterson*, 515 F. Supp. 2d. at 53 (reducing a $1 million award to $500,000 "without any definitive proof of a duration of time" of survival).

2

Evidence gathered to date shows that several of the 40 estates in this action likely suffered extreme pain and mental anguish from their wounds before dying. Plaintiffs anticipate showing through fact and expert evidence that these victims suffered or likely suffered from periods of at least 30 seconds up to several days or more. One victim whose estate is a Plaintiff, Wesley Hunter, lived for over two and a half *years*, frequently in extreme pain, before eventually dying from complications from his injuries.

B.  **Pain and Suffering of Survivors**

FSIA damages awards for the pain and suffering of surviving victims of terrorist attacks are determined based upon an assessment of such factors as "the severity of the pain immediately following the injury, the length of hospitalization, and the extent of the impairment that will remain with the victim for the rest of his or her life." *Valore*, 700 F. Supp. 2d at 83-84 (quoting *Peterson*, 515 F. Supp. 2d at 54). FSIA courts typically grant a baseline award of $5 million to victims "suffering such physical injuries as compound fractures, severe flesh wounds, and wounds and scars from shrapnel, as well as 'lasting and severe psychological pain.'" *Id.* at 84 (quoting *Peterson*, 515 F. Supp. 2d at 54). However, courts will depart upwards to "$7.5-$12 million in more severe instances of physical and psychological pain, such as where victims suffered relatively more numerous and severe injuries, were rendered quadriplegic, partially lost vision and hearing, or were mistaken for dead . . . ." *Id.* Conversely, courts will depart downwards "to $2-$3 million where victims suffered only minor shrapnel injuries or minor injury from small-arms fire," *id.*, and down to $1.5 million for victims who suffered "severe and lasting psychological harm," but "no physical injuries." *Peterson*, 515 F. Supp. 2d at 56.

Nearly all of the 22 Plaintiffs who survived one of the terrorist attacks at issue ("Survivors") were severely physically and/or psychologically injured. Due to the purposefully highly destructive power of the signature Iranian weapon that injured the majority of these

3

individuals, the explosively-formed penetrator ("EFP"),[4] Plaintiffs contend that many of these 22 Survivors suffered injuries that greatly exceed the typical "baseline," and in some cases may exceed nearly all of those described in *Peterson* and *Valore*. For instance, an EFP severed Robert Bartlett's skull, removing half of his face and parts of his jaw, nose, eye, and lips. Mr. Bartlett endured over 40 surgeries in the following *three and a half years* to reconstruct his face and jaw and to attempt to repair other injuries. Likewise, after an EFP hit Timothy Karcher's vehicle, he lost both legs above the knee, suffered from kidney and stomach failure, and went into cardiac arrest multiple times while emergency treatment was attempted during a dust storm. During the following months, Mr. Karcher underwent dozens of surgeries and emergency procedures, and suffered heart and other organ failure multiple times.

Of the 22 Survivors:

- More than a dozen may seek upward departures, as they sustained traumatic brain injuries causing permanent disability, lost limbs, suffered permanent hearing, vision, or mobility problems, and/or suffered severe burns. Many of them required multiple surgeries for their wounds (during which some fell into comas or required resuscitation) and long, excruciating recovery periods.

- A handful sustained injuries similar to those awarded the baseline figure of $5 million in *Valore*.

- One or two sustained significant psychological harm, but were not physically injured, and may be entitled to awards similar to the $1.5 million awarded in *Peterson*.

---

[4] EFPs are a particularly effective form of manufactured Improvised Explosive Device, sometimes known as a shaped charge and usually made with a high explosive packed behind a concave copper disk. To produce these weapons, copper sheets were often loaded onto a punch press to yield the copper disks. These disks were annealed in a furnace to soften the copper. The sheets were then loaded into a large hydraulic press and formed into the disk-like final shape. This manufacturing process is critical to the design and concomitant lethality of the weapon. When the explosives inside an EFP detonate, the blast energy inverts the copper disk into a ragged slug traveling over a mile per second, capable of punching through armor even 300 feet away.

C. **Solatium**

Solatium is awarded to compensate the "the mental anguish, bereavement [,] and grief that those with a close personal relationship" to a deceased or injured victim of terrorism suffer. *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d at 85. This Court has "developed a standardized approach for FSIA… solatium [] claims… in which spouses of deceased victims were awarded approximately $8 million, while parents received $5 million and siblings received $2.5 million." *Taylor v. Islamic Republic of Iran*, 881 F. Supp. 2d 19, 22–23 (D.D.C. 2012) (citing *Estate of Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 229, 269 (D.D.C. 2006)). While the *Heiser* framework also awarded children of deceased victims $5 million, the *Taylor* court noted a recent trend of awarding such children only $3 million. *Taylor*, 881 F. Supp. 2d at 23 n.3. Claims of family members of surviving victims of terrorism are typically "'valued at half of the awards to family members of the deceased'—$4 million, $2.5 million and $1.25 million to spouses, parents, and siblings, respectively," and $1.5 million to children. *Taylor*, 881 F. Supp. 2d at 23 (quoting *Oveissi*, 768 F. Supp. 2d at 26-27).[5]

As with damages for other types of terrorism-related injuries, this Court may grant upward or downward departures depending on several factors. For instance, an upward departure may be appropriate where evidence shows "an especially close relationship between the plaintiff and decedent, particularly in comparison to the normal interactions to be expected given the familial relationship; medical proof of severe pain, grief or suffering on behalf of the claimant [is presented]; and circumstances surrounding the terrorist attack [rendered] the suffering particularly

---

[5] *Taylor* also notes that recent decisions of this Court disfavor solatium awards for family members of survivors that exceed the survivors' own pain and suffering awards. *Id.* at 23. In *Taylor*, as here, some survivors suffered only psychological injuries, and were awarded $1.5 million each. As a result, their family members' solatium awards were reduced "in rough proportion to the *Heiser* framework to: $1 million for spouses, $850,000 for parents, $750,000 for children, and $500,000 for siblings." *Id.*

5

more acute or agonizing." *Id.* (quoting *Oveissi*, 768 F. Supp. 2d at 26-27). Downward departures may be appropriate where the plaintiff's relationship to the victim is exceptionally brief or limited.

All 311 family-member Plaintiffs have exhibited emotional anguish as a result of the injuries or death of their loved ones. Plaintiffs anticipate seeking upward departures for approximately 10-20% of these family members, due to the extreme nature of their suffering, including in some cases devastating physical health effects, bouts of alcohol or drug abuse, suicidal thoughts (or attempts), hospitalizations and/or loss of the ability to work or enjoyment of life. Some have also suffered additionally from learning of the particularly horrific deaths of their loved ones, or from caring for severely disabled loved ones who survived the attacks.

Specifically, Plaintiffs anticipate seeking upward departures for approximately the following number of people (while noting several instances in which the Survivor sustained psychological injuries only, because downward departures may be appropriate in those cases):

***Family members of decedent victims: 256***

- Spouses: 25, of whom Plaintiffs anticipate seeking upward departures for about 30%.
- Parents: 124, of whom Plaintiffs anticipate seeking upward departures for about 20%.
- Children: 28.
- Siblings: 79, including several for whom Plaintiffs anticipate seeking upward departures.

***Family members of surviving victims: 55***

- Spouses: 10, including at least 1 for whom Plaintiffs anticipate seeking an upward departure, and 1 spouse of a Survivor with psychological injuries only.
- Parents: 14, of whom Plaintiffs anticipate seeking upward departures for about a fourth.
- Children: 24, including 4 children of a Survivor with psychological injuries only.
- Siblings: 7.

6

**II.     Proposed Method for Conducting Damages Proceedings**

Given the number and nature of Plaintiffs' claims, Plaintiffs propose that the Court appoint 5 Special Masters pursuant to 28 U.S.C. § 1605A(e)(1) and Federal Rule of Civil Procedure 53 to hear and review Plaintiffs' damages evidence and testimony. *Compare Peterson v. Iran*, No. 01-cv-02094-RCL (D.D.C.) (appointing 13 special masters for nearly 1,000 plaintiffs) *with Dammarell v. Iran*, No. 01-cv-2224-JDB (D.D.C.) (appointing magistrate judge as sole special master for approximately 50 plaintiffs). After these appointments are made, Plaintiffs will propose to the Court a distribution of Plaintiffs among the Special Masters such that all members of each family are overseen by the same Special Master.

Plaintiffs also propose presenting damages testimony and other fact and expert evidence to the Court as to a small subset of cases during the liability hearing so that the Court can issue a bellwether damages decision, which may provide guidance to the Special Masters. *See Dammarell v. Iran*, 01-cv-02224-JDB (D.D.C.) (presenting damages evidence as to 27 plaintiffs to the Court and the remaining 52 to a magistrate judge).

Plaintiffs would then nominate 5 candidates (or more, as necessary) to serve as Special Masters within 5 days of the entry of the Liability Decision and/or bellwether damages decision ("Liability Decision"). The candidates would be required to be members of the bar of the highest court of a state of the United States or of the District of Columbia, with at least five years of experience as a practicing attorney or as a judge of a state or federal court. Candidates could not have any financial or other conflict of interest in participating in this matter. Once appointed, Plaintiffs propose that the Special Masters hear and review the remaining Plaintiffs' damages claims according to the following procedures, along with deadlines measured from this Court's entry of the Liability Decision:

1. Special Masters would hold trial proceedings and recommend findings of fact pursuant to Rule 53(a)(1)(B), and would have all powers provided in Rule 53(c). The Special Masters would each submit a report or reports to the Court with the Special Master's findings of fact and applications of law regarding damages. The reports would contain an evaluation of each element of damages.

2. Each Special Master would be paid an hourly rate approved by the Court for work expended on this matter, and would be reimbursed for reasonable expenses incurred in relation to work on this matter. The Special Masters' compensation and reimbursement for their reasonable expenses would be made from funds made available by the Attorney General pursuant to 28 U.S.C. § 1605A(e)(2). Special Masters would provide Plaintiffs with vouchers and supporting documentation of time worked and expenses incurred, which Plaintiffs would submit by motion to the Court.

3. Special Masters would consider all issues relating to damages as to each claim made by Plaintiffs, pursuant to the Federal Rules of Evidence, and they would be guided in reviewing and evaluating damage claims by the FSIA opinions described above. Plaintiffs will present evidence to the Special Masters in the following manner:

   - An expert report regarding the economic injuries of the Survivors and the estate Plaintiffs claiming such damages, submitted to the Special Masters within 90 days from entry of the Liability Decision.

   - Sworn declarations from the approximately 80-90% of family members whose emotional distress Plaintiffs believe suggest baseline solatium awards,[6] submitted to the Special Masters within 120 days from entry of the Liability Decision.

   - Live testimony or sworn declarations from the family members for whom Plaintiffs will seek upward departures, along with expert reports or sworn declarations from mental health experts, presented to the Special Masters within 150 days from entry of the Liability Decision.

   - Expert reports or sworn declarations from one or more medical experts as to the pain and suffering of the estate Plaintiffs with such clams, presented to the Special Masters within 150 days from entry of the Liability Decision.

   - Expert reports or sworn declarations from one or more medical experts as to each of the 22 Survivors' injuries, presented to the Special Masters within 150 days from entry of the Liability Decision.

   - *De bene esse* deposition testimony transcripts from the 22 Survivors as to their injuries, presented to the Special Masters within 150 days from entry of the Liability Decision.

---

[6] Plaintiffs would propose to also submit at this stage evidence relating to the children and spouse of a Survivor with psychological injuries only.

8

- Live expert testimony if deemed necessary given the circumstances.

4. Special Masters would be expected to file all of their reports with the Court by 210 days from entry of the Liability Decision.

Case 1:16-cv-00232-CKK   Document 36-2   Filed 05/08/17   Page 1 of 4

# EXHIBIT B

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA
------------------------------------------------------x
TIMOTHY KARCHER, et al.,          :
                                  :    **Case No. 16-cv-00232 (CKK)**
                    Plaintiffs,   :
                                  :
            -against-             :
                                  :
ISLAMIC REPUBLIC OF IRAN,         :
                                  :
                    Defendant.    :
------------------------------------------------------x

### PROPOSED SCHEDULING AND SPECIAL MASTERS APPOINTMENT ORDER

Pursuant to this Court's April 19, 2017 Order, ECF No. 32, and Plaintiffs' responsive May 8, 2017 Status Report ("Status Report") and accompanying <u>Exhibit A</u> ("Exhibit A to Plaintiffs' Status Report"), ECF Nos. 36 and 36-1, and to ensure the expeditious and efficient resolution of this action, it is hereby

**ORDERED** that the following deadlines shall govern certain further proceedings in this action:

  i. Plaintiffs shall file a brief setting out the basis for the Court's personal and subject matter jurisdiction in this matter on or before **May 24, 2017**;

  ii. Plaintiffs shall file a motion in which they identify with particularity the limited factual findings from other cases that they request the Court take judicial notice of and their sources, and provide the legal support Plaintiffs believe exist for the Court to take this course of action on or before **May 24, 2017**; and

  iii. Plaintiffs shall appear before the Court for hearings on defendant Islamic Republic of Iran's liability and bellwether damages for a limited number of Plaintiff families on **August 7, 2017**.

It is **FURTHER ORDERED** that the remainder of the Plaintiffs' damages claims shall be heard by 5 Special Masters appointed by the Court. The appointment of the Special Masters and their powers and duties shall be governed by the following procedures:

  i. Plaintiffs shall propose 5 candidates to serve as Special Masters within 5 days of the Court's entry of its rulings on liability and bellwether damages ("Liability Decision"). The candidates must be members of the bar of the highest court of a state of the United States or of the District of Columbia, with at least five years of experience as a practicing attorney or as a judge of a state or federal court. Candidates shall have no financial or other conflict of interest in participating in this matter. The Court may order the Plaintiffs to propose additional candidates

1

        until the Court is satisfied with 5 candidates and has appointed them as Special Masters.

  ii.    Once appointed, the Special Masters shall hold trial proceedings and recommend findings of fact to the Court pursuant to Federal Rule of Civil Procedure 53(a)(1)(B), and shall have all powers provided in Rule 53(c). The Special Masters shall each submit a report or reports to the Court with the Special Master's findings of fact and applications of law regarding damages. The reports shall contain an evaluation of each element of damages.

  iii.    Each Special Master shall be paid an hourly rate approved by the Court for work expended on this matter, and shall be reimbursed for reasonable expenses incurred in relation to work on this matter. The Special Masters' compensation and reimbursement for their reasonable expenses shall be made from funds made available by the Attorney General pursuant to 28 U.S.C. § 1605A(e)(2). Special Masters shall provide Plaintiffs with vouchers and supporting documentation of time worked and expenses incurred, which Plaintiffs shall submit by motion to the Court.

  iv.    The Special Masters shall consider all issues relating to damages as to each claim made by Plaintiffs, pursuant to the Federal Rules of Evidence, and they shall be guided in reviewing and evaluating damage claims by the Foreign Sovereign Immunities Acts opinions described in Exhibit A to Plaintiffs' Status Report and the bellwether damages rulings in the Court's Liability Decision.

  v.    Plaintiffs shall make the following submissions to the Special Masters within the following time periods:

        a. An expert report regarding the economic injuries of the Plaintiffs claiming such damages within 90 days from entry of the Liability Decision;

        b. Sworn declarations from the family member Plaintiffs whose emotional distress Plaintiffs believe suggest baseline solatium awards or lower awards within 120 days from entry of the Liability Decision;

        c. Live testimony or sworn declarations from family members Plaintiffs for whom Plaintiffs will seek upward departures, along with expert reports or sworn declarations from mental health experts within 150 days from entry of the Liability Decision;

        d. Expert reports or sworn declarations from one or more medical experts as to the pain and suffering of the estate Plaintiffs with such claims within 150 days from entry of the Liability Decision;

        e. Expert reports or sworn declarations from one or more medical experts as to each of the 22 wounded Plaintiff's injuries within 150 days from entry of the Liability Decision; and

      f.    Transcripts from *de bene esse* deposition testimony, or, if necessary, sworn declarations, from one or more of the 22 wounded Plaintiffs as to their injuries within 150 days from entry of the Liability Decision.

vi.    The Special Masters may each request live expert testimony as to any claim for damages if they determine it is necessary given the circumstances;

vii.    The Special Masters shall file all of their reports with the Court within 210 days from entry of the Liability Decision; and

viii.    Plaintiffs shall file a proposed order within 5 days of the entry of the Liability Decision providing exact dates for the deadlines listed above.

**SO ORDERED.**

_____
COLLEEN KOLLAR-KOTELLY
United States District Judge

3