# EXHIBIT C

# Pennington v. Islamic Republic of Iran

United States District Court for the District of Columbia

June 24, 2021, Decided; June 24, 2021, Filed

Civil Action No. 19-796 (JEB)

**Reporter**

2021 U.S. Dist. LEXIS 117666 *; 2021 WL 2592910

DIANE PENNINGTON, et al., Plaintiffs, v. ISLAMIC REPUBLIC OF IRAN, Defendant.

**Subsequent History:** Judgment entered by, Motion granted by, in part, Motion denied by, in part Pennington v. Islamic Republic of Iran, 2022 U.S. Dist. LEXIS 9529 (D.D.C., Jan. 19, 2022)

**Counsel:** [*1] For DIANE PENNINGTON, Individually and as the Personal Representative of the Estate of Howard Allen, D. A., A MINOR, MELISSA KAY CUKA, Individually and as the Personal Representative of the Estate of Daniel Cuka, ABIGAIL CUKA, A. M. C., A MINOR, COLLEEN SCHILD, LANITA HERLEM, Individually and as the Personal Representative of the Estate of Bryant A. Herlem, Estate of DANIEL CUKA, Estate of BRYANT HERLEM, VELIA F. MESA, Individually and as the Personal Representative of the Estate of Rudy Mesa, Estate of RUDY MESA, VELIA A. MESA, LUCY RIGBY, LUIS AGUILAR, MANUEL AGUILAR, COREY SCHLENKER, Individually and as the Personal Representative of the Estate of William Thorne, Estate of WILLIAM THORNE, TIMOTHY MERRILL, Individually and as the Personal Representative of the Estate of Jason Merrill, Estate of JASON MERRILL, WANDA SUE MERRILL, ALYSSA MERRILL, AMBER PIRANEO, ASHLEA LEWIS, KEVYN PEREZ, LYLE BROOKS, FAYE MROCZKOWSKI, WILLIAM STOUT, TAMARA STOUT, CALLIE MCGEE, STEPHANIE BENEFIELD, MELINDA IGO, ALICIA IGO, ASHLEY LEWIS, DEVIN IGO, GINA WRIGHT, JOANNA HARRIS, Individually and as the Personal Representative of the Estate of Joanna Harris, Estate of BLAKE HARRIS, J. H., A MINOR, KIMBERLY [*2] YARBROUGH, TAYLOR BROWN, Individually and as the Personal Representative of the Estate of Scott Brown, Estate of SCOTT BROWN, RACHEL LAMBRIGHT, ADAM EGLI, DANIELLE EGLI, K. E., A MINOR, B. E., A MINOR, LAURA RUSSELL KENNEDY, Individually and as the Personal Representative of the Estate of Jonathan Edds, Estate of JONATHAN EDDS, MONIQUE SHANTEL GREEN, Individually and as the Personal Representative of the Estate of Joseph Richard, III, ESTATE OF JOSEPH RICHARD, III, Plaintiffs: Christopher J. Quinn, LEAD ATTORNEY, PRO HAC VICE, DRISCOLL FIRM, P.C., St. Louis, MO; Daniel Alberstone, LEAD ATTORNEY, PRO HAC VICE, BARON AND BUDD PC, Encino, CA; Elizabeth Smiley, Peter Klausner, LEAD ATTORNEYS, PRO HAC VICE, BARON AND BUDD, Encino, CA; Paul W. Johnson, LEAD ATTORNEY, PRO HAC VICE, THE DRISCOLL FIRM, P.C., Saint Louis, MO; Russell W. Budd, LEAD ATTORNEY, PRO HAC VICE, Baron & Budd, Dallas, TX; Thomas M. Sims, LEAD ATTORNEY, PRO HAC VICE, Baron & Budd, P.C., Dallas, TX; John J. Driscoll, THE DRISCOLL FIRM LLC, San Juan, PR.

For DEFENSE THREAT REDUCTION AGENCY, 2255: Marcia Kay Sowles, LEAD ATTORNEY, U.S. DEPARTMENT OF JUSTICE, Washington, DC.

**Judges:** JAMES E. BOASBERG, United States District Judge.

Opinion by: [*3] JAMES E. BOASBERG

## Opinion

**MEMORANDUM OPINION**

Between 2005 and 2008, a series of sixteen terrorist attacks in Iraq killed or wounded twenty members of the United States military. Plaintiffs — the estates and families of the victims — brought this action seeking recompense for their economic and psychological injuries. Specifically, Plaintiffs sue for damages from the Islamic Republic of Iran under the terrorism exception to the Foreign Sovereign Immunities Act. As Defendant has failed to appear, default has been entered, and Plaintiffs now move for default judgment on liability only. Given that the Court finds the link between Iran and the attacks clear, it will grant their Motion.

### I. Background

Explosively Formed Penetrators (EFPs) — a type of lethal roadside bomb — have proven exceptionally dangerous to U.S. Armed Forces in the Middle East. See ECF No. 40-1, Exh. 1(a) (Declaration of Expert Daniel Byman) at 1. In 2015, General Martin Dempsey, then Chairman of the Joint Chiefs of Staff, testified before the Senate that EFPs were responsible for hundreds of American casualties. Id. at 4 (citing Impacts of the Joint Comprehensive Plan of Action (JCPOA) on U.S. Interests and the Military Balance in [*4] the Middle East: Hearing Before the S. Comm. on Armed Servs., 114th Cong. 357 (2015)). Plaintiffs in this case are the estates and family members of twenty of these U.S. nationals. While the Complaint generally alleges that Plaintiffs also include the injured soldiers themselves, see, e.g., ECF No. 1 (Complaint), ¶ 9, in its actual description of the parties, only the estates and family members of the dead and injured soldiers are mentioned. Id., ¶¶ 88-235. The Court will accordingly confine its analysis to these latter groups.

Plaintiffs filed this suit against Iran on March 21, 2019. Nine months later, they mailed copies of the summons, Complaint, and notice of the suit to Iran, see ECF No. 17 (Certificate of Mailing), but Defendant refused delivery and returned the summons unexecuted. See ECF No. 19 (Iran Summons Return). Undeterred, Plaintiffs transmitted the service documents to the U.S. State Department on May 12, 2020, see ECF No. 20 (Affidavit Requesting Foreign Mailing), which in turn forwarded them to Iran's Ministry of Foreign Affairs through the Swiss Embassy in Tehran on September 2, 2020. See ECF No. 24 (Service Affidavit). Service on Defendant was therefore effective [*5] as of that date. See 28 U.S.C. § 1608(c)(1). True to form, Iran failed to answer the Complaint. On March 1, 2021, consequently, Plaintiffs requested an entry of default, see ECF No. 36 (Affidavit for Default), which the Clerk granted on March 3. See ECF No. 38 (Default). Plaintiffs have now moved for default judgment on liability, saving the question of damages for a later date. See ECF No. 40 (Mot. for Def. Judg.).

### II. Legal Standard

Foreign states are generally immune from suit in federal court, subject to exceptions codified in the Foreign Sovereign Immunities Act. See 28 U.S.C. § 1604; see also Argentine Republic v. Amerada Hess

Shipping Corp., 488 U.S. 428, 439, 109 S. Ct. 683, 102 L. Ed. 2d 818 (1989) ("[T]he FSIA provides the sole basis for obtaining jurisdiction over a foreign state in federal court."). Relevant here is section 1605A, the so-called "terrorism exception" to the FSIA. See Fraenkel v. Islamic Republic of Iran, 892 F.3d 348, 352, 436 U.S. App. D.C. 99 (D.C. Cir. 2018). This section provides federal courts with jurisdiction over suits where plaintiffs seek money damages from a foreign state for "personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act." 28 U.S.C. § 1605A(a)(1). It also creates a cause of action for "national[s] of the United States" to sue foreign states that are designated by the U.S. government [*6] as sponsors of terrorism and perform or materially support the acts described in 28 U.S.C. § 1605A(a)(1). Id. § 1605A(c). The statute specifies that, "[i]n any such action, damages may include economic damages, solatium, pain and suffering, and punitive damages." Id.; accord Fraenkel, 892 F.3d at 353.

To obtain a default judgment in such an action, plaintiffs must establish their claims "by evidence satisfactory to the court." 28 U.S.C. § 1608(e). Successful plaintiffs may then recover damages by showing "that the projected consequences are reasonably certain (i.e., more likely than not) to occur, and [proving] the amount of damages by a reasonable estimate." Fraenkel, 892 F.3d at 353 (quoting Hill v. Republic of Iraq, 328 F.3d 680, 684, 356 U.S. App. D.C. 142 (D.C. Cir. 2003)). While these requirements create "some protection against an unfounded default judgment," plaintiffs need not produce "more or different evidence than [a court] would ordinarily receive; indeed, the quantum and quality of evidence that might satisfy a court can be less than that normally required." Id. (citation omitted) (alteration in original).

### III. Analysis

The Court's analysis proceeds in two parts. It begins by clearing some jurisdictional underbrush and then evaluates Defendant's liability.

A. Jurisdiction

The FSIA both gives this Court subject-matter jurisdiction and abrogates Defendant's [*7] sovereign immunity, subject to certain conditions. Iran must also be properly served under 28 U.S.C. § 1608(a). The Court looks at each of these questions separately.

*1. Subject-Matter Jurisdiction*

The state-sponsored-terrorism exception to the FSIA provides federal courts with subject-matter jurisdiction over suits against a foreign state only where (1) "money damages are sought" (2) "against a foreign state for" (3) "personal injury or death that" (4) "was caused" (5) "by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act." 28 U.S.C. § 1605A(a)(1); see also Oveissi v. Islamic Republic of Iran, 879 F. Supp. 2d 44, 50 (D.D.C. 2012); Wultz v. Islamic Republic of Iran, 864 F. Supp. 2d 24, 32 (D.D.C. 2012).

All five conditions are met here. First, Plaintiffs seek money damages. See Compl. at 42. Second, Iran is a foreign state. Third, Plaintiffs allege personal injury and death. Id., ¶ 1. Fourth, they have met the causation prong by showing that Iran's provision of material support caused their injuries. The Act requires only that Plaintiffs show "some reasonable connection between the act or omission of the

defendant and the damages [that] the plaintiff has suffered." Valore v. Islamic Republic of Iran, 700 F. Supp. 2d 52, 66 (D.D.C. 2010) (citation omitted). This they have done. Plaintiffs' two experts — Dr. Daniel Byman (former Research Director for [*8] the Center for Middle East Public Policy at the RAND Corporation) and Michael Pregent (former intelligence officer for the U.S. Army) — explained in detail Iran's history of interference in Iraq, including the support of militant Shia proxy groups, and both experts evinced confidence that Iran played a substantial role in these attacks. See Byman Decl.; ECF No. 40-1, Exh. 2(a) (Expert Report of Michael Pregent). In fact, Dr. Byman noted that only groups with links to Iran have actually used EFPs. See Byman Decl. at 19. A court in this district, moreover, recently found in a similar case that the "identification of the weapon as an EFP all but necessitates the inference that Iran was responsible." Karcher v. Islamic Republic of Iran, 396 F. Supp. 3d 12, 30 (D.D.C. 2019) (emphasis removed). The Court thus finds a reasonable connection between Defendants' actions and the damages Plaintiffs suffered.

Fifth and finally, the attack constituted an "extrajudicial killing," or such an attempt, within the meaning of the Act. While Plaintiffs in this case are the estates and families of U.S. servicemembers who were involved in military operations, as opposed to being civilian bystanders, this is ultimately a distinction without a difference. The terrorism exception [*9] to the FSIA specifically provides a private right of action for members of the armed forces and civilians alike. See 28 U.S.C. § 1605A(c)(1)—(2); see also Karcher, 396 F. Supp. 3d at 14 (finding Iran liable under FSIA exception for seven attacks on U.S. servicemembers in Iraq); Estate of Heiser v. Islamic Republic of Iran, 659 F. Supp. 2d 20, 22 (D.D.C. 2009) (finding same for deaths of 17 U.S. servicemembers killed in bombing in Saudi Arabia); Spencer v. Islamic Republic of Iran, 71 F. Supp. 3d 23, 25 (D.D.C. 2014) (finding same for deaths of 241 U.S. servicemembers, and the injuries of many others, in bombing of Marine barracks in Lebanon). Additionally, as to the family members of individuals injured but not killed by the EFPs, other courts in this district have held that the FSIA terrorism exception encompasses attempted extrajudicial killings, at least where the attack resulted in casualties. See, e.g., Cohen v. Islamic Republic of Iran, 238 F. Supp. 3d 71, 81 (D.D.C. 2017) (concluding that "extrajudicial killing" occurred under FSIA, even though plaintiffs survived, because attack resulted in casualties); Gill v. Islamic Republic of Iran, 249 F. Supp. 3d 88, 99 (D.D.C. 2017) (finding that "extrajudicial killing" occurred under FSIA where no victims died in attack). This Court agrees. Finding all five criteria met, therefore, it concludes that it has jurisdiction over Plaintiffs' claims.

2. Sovereign Immunity

FSIA plaintiffs face an additional hurdle. Even where a court has subject-matter jurisdiction, FSIA defendants remain [*10] impervious to suit absent a waiver of sovereign immunity. Fortunately for Plaintiffs here, the FSIA vitiates such immunity when three conditions are met: (1) "The foreign state was designated as a state sponsor of terrorism at the time [of] the act . . . and . . . either remains so designated when the claim is filed under this section or was so designated within the 6-month period before the claim is filed under this section"; (2) "the claimant or the victim was, at the time [of] the act[,] . . . a national of the United States"; and (3) "in a case in which the act occurred in the foreign state against which the claim has been brought, the claimant has afforded the foreign state a reasonable opportunity to arbitrate the claim." 28 U.S.C. § 1605A(a)(2)(A)(i)—(iii); see also Wultz, 864 F. Supp. 2d at 33.

Plaintiffs meet two of the three conditions, and the third does not apply. First, Iran has been designated as a state sponsor of terrorism since 1984 and remains so designated today. See Dep't of State, Bureau of

Counterterrorism, State Sponsors of Terrorism, https://bit.ly/2SQNecF (last visited June 21, 2021). Second, all 20 victims, as well as all claimants, are United States nationals. See Compl., ¶¶ 88-235. Finally, as the attack occurred in [*11] Iraq, not Iran, the third condition does not come into play. The Court can thus easily conclude that Congress has abrogated Iran's sovereign immunity pursuant to 28 U.S.C. § 1605A.

*3. Service of Process*

One last threshold issue remains: service of process. Title 28 U.S.C. § 1608(a) sets out four methods by which service may be made, in ranked order. The summons and complaint may be delivered, first, "in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision," id. § 1608(a)(1), or, second, "in accordance with an applicable international convention on service of judicial documents." Id. § 1608(a)(2). If no such agreements exist, plaintiffs must attempt service through a third method, which involves sending the requisite documents "by any form of mail requiring a signed receipt . . . to the head of the ministry of foreign affairs of the foreign state concerned." Id. § 1608(a)(3). And should that fail, plaintiffs may resort to method four: the Court Clerk may send the packet to the Secretary of State for transmittal "through diplomatic channels to the foreign state." Id. § 1608(a)(4); see also Republic of Sudan v. Harrison, 139 S. Ct. 1048, 1054, 203 L. Ed. 2d 433 (2019).

Plaintiffs have successfully navigated this procedural thicket and effected service on Iran. The parties lack a [*12] special service arrangement, and the United States and Iran are not signatories to a service convention, ruling out methods one and two. See Valore, 700 F. Supp. 2d at 70. Plaintiffs tried method three, mailing the relevant documents to Iran's foreign minister in his home country, but did not succeed. See Cert. of Mail.; see also Iran Sum. Ret. Persisting, Plaintiffs turned to method four. The State Department transmitted the documents to Iran's Ministry of Foreign Affairs through the Embassy of Switzerland on September 2, 2020. See Service Affidavit at 1. As a result, service on Defendant was finally effective as of that date. See 28 U.S.C. § 1608(c)(1).

Mindful that it lacks the authority "to raise the FSIA terrorism exception's statute of limitations on behalf of an entirely absent defendant," Maalouf v. Islamic Republic of Iran, 923 F.3d 1095, 1112, 440 U.S. App. D.C. 451 (D.C. Cir. 2019), the Court sees no other jurisdictional hurdles and proceeds onward to the merits.

B. Liability

Although § 1605A provides a private right of action, it still requires plaintiffs "to prove a theory of liability." Valore, 700 F. Supp. 2d at 73; see also Rimkus v. Islamic Republic of Iran, 750 F. Supp. 2d 163, 175-76 (D.D.C. 2010) ("[P]laintiffs in § 1605A actions . . . must articulate the justification for such recovery, generally through the lens of civil tort liability."). Consistent with guidance from the D.C. Circuit, district courts "rely on well-established [*13] principles of law, such as those found in Restatement (Second) of Torts," to determine liability under the FSIA. *In re Islamic Republic of Iran Terrorism Litig.*, 659 F. Supp. 2d 31, 61 (D.D.C. 2009); see also Bettis v. Islamic Republic of Iran, 315 F.3d 325, 333, 354 U.S. App. D.C. 244 (D.C. Cir. 2003) (using Restatement "as a proxy for state common law" in determining FSIA liability). Here, Plaintiffs assert a multitude of such theories — namely, wrongful death and a variety of solatium-related claims, including intentional infliction of emotional distress. All clear the bar. While Plaintiffs also put forth a personal-injury theory of liability, as the Complaint does not include the injured soldiers themselves among the list of Plaintiffs, the Court need not

address this issue. It therefore considers only the claims made by the estates and family members of the victims.

First, Plaintiffs may recover for wrongful death "if they can establish [that Iran] caused [the victims'] deaths." Thuneibat v. Syrian Arab Republic, 167 F. Supp. 3d 22, 39 (D.D.C. 2016) (citing Restatement (Second) of Torts § 925 (1965)). All the deaths and injuries in question were caused by EFPs. See Compl., ¶ 14. The relevant question, therefore, is whether Iran is responsible for their presence. As mentioned earlier, Plaintiffs have provided the reports of two experts with extensive knowledge in this field. Both ultimately reached the conclusion that [*14] Iran played a significant role in these attacks. See Byman Decl. at 2 (expressing "high level of confidence" that Iran was responsible for EFP attacks); see also Pregent Rep. at 6, 8-9 (concurring with Byman that Iran was responsible "[w]ithin a reasonable degree of intelligence and counter-insurgency certainty"). These experts are far from alone in this judgment. Former CIA Director General Michael V. Hayden has testified that "[t]he EFPs are coming from Iran." Byman Decl. at 18. General Stanley McCrystal, former Commander of the Joint Special Operations Command, discussing EFPs, told the New Yorker: "There was zero question where they were coming from. We knew where all the factories were in Iran." Id. Similarly, three non-governmental Middle East experts — Michael Eisenstadt, Michael Knights, and Ahmed Ali — wrote a joint piece for the Washington Institute for Near East Policy in which they claimed that EFPs are exclusively associated with Iran. Id. Finally, as previously discussed, a court in this district recently held that plaintiffs had sufficiently demonstrated Iran's responsibility, noting that the connection between it and EFPs was so strong that "absent any indication that [*15] any of these EFPs was not backed by Iran, the Court shall find that Iran was indeed the provider of the EFP(s) in each bellwether attack." Karcher, 396 F. Supp. 3d at 30. The Court finds such evidence — and the reasoning of Karcher — to be persuasive. It thus concludes that Plaintiffs have sufficiently proven that Iran was responsible for providing the relevant EFPs.

Next, all Plaintiffs claim intentional infliction of emotional distress. Under general principles of tort law, "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress," both to the victim and "to a member of such person's immediate family who is present at the time." Heiser, 659 F. Supp. 2d at 26 (quoting Restatement (Second) of Torts § 46). As the Heiser court explained, terrorism is "unique among the types of tortious activities in both its extreme methods and aims," in that it is "intended to cause the highest degree of emotional distress, literally, terror." Id. at 27 (citation omitted). For that reason, immediate family members of terrorism victims may state a claim for IIED even if they were not present at the site of the attack. See Republic of Sudan v. Owens, 194 A.3d 38, 42 (D.C. 2018); Heiser, 659 F. Supp. 2d at 27.

All Plaintiffs make several other solatium claims — claims of severe [*16] mental anguish, extreme emotional pain and suffering, and loss of society, companionship, comfort, advice, and counsel. "Solatium claims under the FSIA are functionally identical to claims for intentional infliction of emotional distress." Moradi v. Islamic Republic of Iran, 77 F. Supp. 3d 57, 71-72 (D.D.C. 2015) (quoting Spencer v. Islamic Republic of Iran, 71 F. Supp. 3d 23, 27 (D.D.C. 2014)). As with IIED claims, solatium claims are equally available to compensate those related to persons injured but not killed. Oveissi v. Islamic Republic of Iran, 768 F. Supp. 2d 16, 26 n.10 (D.D.C. 2011). The Court thus finds them appropriate here.

**IV. Conclusion**

For these reasons, the Court will grant Plaintiffs' Motion and enter default judgment on their behalf as to liability.

/s/ James E. Boasberg

JAMES E. BOASBERG

United States District Judge

Date: June 24, 2021

**End of Document**