UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ESTATE OF CHRISTOPHER BROOK FISHBECK, et al.,**  Plaintiffs,  v.  **THE ISLAMIC REPUBLIC OF IRAN, et al.,**  Defendants | )  )  )  )  )  )  )  )  )  )  )  ) Civil Action No. 1:18-cv-2248-CRC |

**PLAINTIFFS' MOTION
TO APPOINT SPECIAL MASTERS & IMPLEMENT ADMINISTRATIVE PLAN
FOR NON-BELLWETHER LIABILITY DETERMINATIONS**

Pursuant to the Court's scheduling order (ECF Dkt. No. 75) and Rule 53 of the Federal Rules of Civil Procedure, Plaintiffs respectfully move this Court to enter an order appointing Special Masters to assist the Court in adjudicating issues and determining Defendants' liability for non-bellwether attacks. *See* Fed. R. Civ. P. 53. This appointment satisfies Rule 53 as follows:

**A. Background**

On March 15, 2022, Plaintiffs filed a motion regarding subject matter jurisdiction, seeking an order from the Court establishing that Plaintiffs (or the injured victim from which their claims arise) were United States nationals, servicemembers, or government employees at the time of their respective terrorist attacks. *See* ECF Dkt. No. 81; *see also* 28 U.S.C. §§ 1605A(a)(2)(A)(ii); and 1605A(c). In support of this motion, Plaintiffs submitted documentary proof of their status. *See* ECF Dkt. No. 81-2. Plaintiffs' motion also established that Defendants were designated a "state sponsor of terrorism" at the requisite times for subject matter jurisdiction to exist. *See* ECF Dkt. No. 81, at 1-3.

1

On May 2, 2022, Plaintiffs filed a motion regarding Defendants' material support to certain terrorist groups that operated in Iraq from 2003 through 2011. ECF Dkt. No. 84. As evidence, Plaintiffs submitted expert reports and documents showing that Defendants' material support was essential to the groups' operating capacity and that terrorist attacks, of the kind at issue in here, were reasonably foreseeable and a natural consequence of that material support. ECF Dkt. Nos. 84-1; and 85-1 through 85-11. Plaintiffs allege that these terrorist groups committed the attacks in this case. *See, e.g.*, ECF Dkt. 100, Second Amended Complaint, at ¶¶ 1-14.

From September 12-14, 2022, this Court held an evidentiary hearing concerning Defendants' liability for fifteen bellwether attacks committed in Iraq. The bellwether attacks were a representative cross-section of all 438 attacks at issue in this case. *See* ECF Dkt. No. 92, at 1-2. The bellwether attacks were selected using objective factors, such as tactics, techniques, and procedures (TTPs), geography, attack dates, group involvement, and degree of evidence available at the time of the evidentiary hearing. *Id*. During the hearing, the Court received oral and written testimony from eyewitnesses and the plaintiffs injured in the bellwether attacks. *See, e.g.*, Day 1 Tr., Day 2 Tr., and Day 3 Tr. The Court qualified three experts who assessed the bellwether attacks using established methodologies. Daveed Gartenstein-Ross, Day 1 Tr., 130:6-10; Mark Lee Walters, Day 2 Tr., 337:3-4; Michael Pregent, Day 2 Tr., 556:11-16. These experts testified to the likely identities of the specific terrorist groups that committed each bellwether attack, and how Defendants' material support was reasonably connected to each attack. The Court also admitted into evidence the documents identified on Plaintiffs' master exhibit list. Day 1 Tr., 5:14-17; *see* ECF Dkt. No. 99. In particular, the Court admitted the Plaintiff Fact Sheets prepared and certified by the bellwether Plaintiffs (or their legal representatives) that summarized facts and evidence related to the elements and nature of their specific claims. *See* ECF Dkt. Nos. 99, 104.

On November 14, 2022, Plaintiffs filed a motion for default judgment as to liability for the bellwether attacks and Proposed Findings of Fact and Conclusions of Law. ECF Dkt. Nos. 115, 115-1. This motion cited back to Plaintiffs' prior motions and evidence. Plaintiffs' motions seek orders from the Court that culminate in establishing the following facts and law for this case:[1]

a. Defendant Iran is foreign sovereign, and its co-Defendants are political subdivisions, agents and instrumentalities of Iran (see §1603(a) & (b); ECF Dkt. No. 55, at 2-3);

b. All Defendants were properly served, have failed to appear or respond, and are in default. (*see* §1608(a)-(c); ECF Dkt. Nos. 32-34; 38; 55, at 10);

c. The Court has personal jurisdiction over Defendants (see ECF Dkt. No. 115-1, at ¶¶ 566-567)*;

d. The Court has original jurisdiction over this civil action (*see* 28 U.S.C. § 1330(a); ECF Dkt. No. 115-1, at ¶¶570-572)*;

e. Defendants were a "state sponsor of terrorism" during at all requisite times necessary for this case (*see* § 1605A(c); ECF Dkt. No. 81)*;

f. Plaintiffs were U.S. nationals, members of the U.S. armed forces, or U.S. contractors at the time of the attacks, and have proper standing to bring their claims (*see* §§ 1605A(a)(2)(ii); 1605A(c); ECF Dkt. Nos. 81; 94; 115-1, at ¶¶ 128, 575)*;

g. Defendants provided material support to specific terrorist groups operating in Iraq from 2003 through 2011 (*see* §§ 1605A(a)(2)(ii); 1605A(c); 18 U.S.C. 2339A; ECF Dkt. Nos. 84; 85; 115-1, at ¶ 593)*;

h. Defendants' provision of said material support to these specific terrorist groups was essential to their operating capacities during that time (*id.*)*;

i. Terrorist attacks involving these groups that occurred in Iraq from 2003 through 2011 were reasonably foreseeable and a natural consequence of Defendants' material support (*id.*)*;

j. Iranian officials or agents acting within the scope of their "office, employment, or agency" directed Defendants' provision of material support to these groups in Iraq from 2003 through 2011 (*id.*; ECF Dkt. No. 115-1, at Fn. 209)*;

---

[1] Items identified with * are awaiting rulings on Plaintiffs' pending motions presently before the Court. Specifically, ECF Dkt. Nos. 81, 85, 94; & 115. Items a and b have been already been adjudicated.

3

    k. The bellwether attacks involved acts of extrajudicial killing that caused personal injuries and/or deaths of victims in those attacks (*id.*; ECF Dkt. No. 115-1, ¶¶ 594-598).*

    l. Defendants provided material support for the bellwether attacks and are jointly and severally liable to the bellwether plaintiffs (*id.*; ECF Dkt. No. 115-1, ¶¶ 600-614)*.

As the above-listed items show, the Court's orders on the Plaintiffs' motions will establish a majority of the common issues of fact and law applicable to all Plaintiffs. The Court's findings and conclusions underpinning its order on Defendants' liability for the bellwether attacks will guide the Special Masters on the proper analytical framework, and how certain facts and evidence dovetail with the law of the case. The Special Masters will follow these prior findings and orders during their review of non-bellwether attacks, needing only to focus on the remaining unresolved factual and legal issues essential to the Court's determination of Defendants' liability for the non-bellwether attacks. *See* ECF Dkt. No. 75; *see also* Fed. R. Civ. P. 53 (governing the appointment of special masters).

## B. This Case Exemplifies the Need for and the Purpose of FRCP Rule 53 Special Masters

This case involves the long term and sustained campaign by Iran to use its complex network of state entities and agencies to support a variety of proxies to commit terrorist attacks against the United States and its interests in Iraq. Iran's goal was to disrupt the establishment of a democratic Iraqi government and to exact the highest toll possible from the United States for its presence there. At issue in this case are 438 terrorist attacks committed by terrorist groups as part of this Iranian-backed terrorism campaign, and for which 1,447 plaintiffs are pursuing civil claims for damages.

Plaintiffs filed this case in 2018 and intend to seek compensation (to the extent possible) from the U.S. Victims of State Sponsored Terrorism Fund. Established in 2015 to compensate victims of terrorism (like Plaintiffs here), "the Fund" provides proportional compensation (not full)

4

to those with valid final judgments from U.S. courts. Financed by monetary recoveries from civil and criminal enforcement actions, which are inherently unpredictable, the amount and timing of payments from the Fund is highly variable. The Fund has made only three partial payments to date, and is set to sunset on January 2, 2039. The Fund also enforces strict procedural and claim submission deadlines. If obtained, Plaintiffs' future judgments are expected to qualify for the Fund, but a delay in getting to or entering the Fund will reduce the total duration of time available to receive payments. Hence, Plaintiffs desire to move this case forward as expeditiously as possible.

The use of Special Masters as proposed in this motion not only serves this purpose but also is appropriate under Fed. R. Civ. P. Rule 53, because 1) the number of non-bellwether attacks (423) and plaintiffs (1,1447) is exceptional; 2) the findings of fact or issues to be established do not require determination by a jury; and 3) the use of Special Masters will greatly assist the Court in effectively and timely addressing the remaining issues of liability for non-bellwether attacks. *See* Fed. R. Civ. P. 53(a)(1)(B) (emphasis added).

### C. Proposed Administrative Plan

Plaintiffs include with this motion a proposed order implementing an Administrative Plan governing procedures before the Special Masters. Exhibit A. Plaintiffs base their proposal on administrative plans entered in similar matters by this Court. *See e.g.*, *Sheikh v. Republic of the Sudan*, No. 14-cv-2090-JDB, Order Adopting Administrative Plan, ECF Dkt. 44 (D.D.C. Aug. 29, 2019) (involving the 1998 bombings at the U.S. embassies in Kenya and Tanzania). As detailed below, the proposed order conforms to the requirements of Fed. R. Civ. P. 53, which provides:

> The appointing order must direct the master to proceed with all reasonable diligence and must state:
>
> (A) the master's duties, including any investigation or enforcement duties, and any limits on the master's authority under Rule 53(c);

5

> (B) the circumstances, if any, in which the master may communicate ex parte with the court or a party;
> (C) the nature of the materials to be preserved and filed as the record of the master's activities;
> (D) the time limits, method of filing the record, other procedures, and standards for reviewing the master's orders, findings, and recommendations; and
> (E) the basis, terms, and procedure for fixing the master's compensation under Rule 53(g).

Fed. R. Civ. P. 53(b)(2).

### 1. Powers & Duties

Plaintiffs propose that the Special Masters be empowered to consider issues related to Defendants' liability for providing material support to the groups responsible for committing each non-bellwether attack.

The Special Masters shall make or recommend findings of fact on the following:

> a. The terrorist group(s) involved in the commission of the attack;
> b. The personal injuries or deaths that occurred from the attack; and
> c. The relationship of the victims of the attack to the respective plaintiffs.

Using the Court's prior orders and analytical framework, the Special Masters shall then make or recommend conclusions of law on the following:

> a. The attack involved a group(s) that received material support from Defendants;
> b. The attack involved a requisite act or acts listed in 28 U.S.C §1605A(a)(1); and
> c. Defendant's provision of material support was a proximate cause of the attack.

To assess Defendants' liability and the applicable law, the Special Masters shall be guided the provisions of 28 U.S.C. § 1605A, this Court's prior findings of fact and conclusions of law, any further orders this Court may enter, and other relevant precedent.

The Special Masters shall have authority to exercise all powers set forth in Federal Rule of Civil Procedure 53(c), including but not limited to, the power to compel production of evidence.

If needed, testimony may be recorded by electronic means and the copy shall clearly identify the parties and be turned over to counsel for the Plaintiffs who shall preserve it for use by the Court. *See Fritz v Iran*, No. 15-cv-456-RDM, Order Appointing Special Master, ECF Dkt. 87 (D.D.C. Aug. 1, 2018).

As to the admissibility of evidence, the Special Masters should liberally construe the Federal Rules of Evidence. Plaintiffs may prove their claims "using evidence that might not be admissible in a trial," because the Court is not required "to step into the shoes of the defaulting party and pursue every possible evidentiary challenge." *Owens*, 864 F.3d at 785. As this Court did in the bellwether hearing, the Special Masters should be permitted to receive testimony by sworn declarations, including Plaintiffs' Facts Sheets and accompanying materials for which declarants and Plaintiffs certify to the contents pursuant 28 U.S.C § 1746 and consider declarations or affidavits in lieu of live testimony. *See Lonnquist v. Islamic Republic of Iran*, No. 17-cv-1630 (JDB) (D.D.C. Feb. 11, 2020), ECF Dkt. No. 38; R. & R. at 2, *Chogo v. Republic of Sudan*, No. 15-cv-951 (JDB) (D.D.C. Oct. 10, 2019), ECF Dkt. No. 41. *See also* 28 U.S.C. § 1746 (declarations have same legal effect as affidavits).

Plaintiffs should not be required to qualify documents as genuine pursuant to Federal Rule of Evidence 901. Instead, Plaintiffs' counsel requests permission to state that a proffered document is genuine and is an accurate copy of what counsel proffers it to be. *See, e.g.*, *Sheikh* Administrative Plan at 7.

2. **Communication**

Plaintiffs request that the Special Masters be permitted to communicate *ex parte* with the Court or with counsel for Plaintiffs if they determine it is reasonable and efficient. Similarly, the Court should permit counsel for Plaintiffs to communicate *ex parte* with the Special Masters, as well as allow the Special Masters to communicate *ex parte* with each other, as reasonably

necessary to facilitate the carrying out of the Administrative Plan and the Special Masters' duties. *See, e.g., Sheikh* Administrative Plan at 7.

### 3. Materials

Plaintiffs shall provide the following materials to the Special Masters upon their appointment by the Court to assist the performance of their duties:

- Second Amended Complaint;
- Orders entered in this case;
- Master exhibit list and exhibits;
- Expert reports; and
- Evidentiary hearing transcripts

Plaintiffs will also provide other materials the Special Masters may request or the Court deems necessary.

In order to develop a scalable process that is efficient and satisfactory to the Court, Plaintiffs' counsel and the Special Masters will work jointly to develop the following materials prior to the first group of non-bellwether attacks being assigned for review:

    **i.** **Special Master Documents:** To include, a proposed standardized template for the report and recommendation (and any other expected routine documents) for all Special Masters to use in addressing the liability issues. The template will ensure consistency with the Court's prior rulings and analytical framework, and confirm inclusion of consistent essential content. A uniform template will also provide organizational uniformity, reduce the possibility of errors and delays; and promote the efficient and ease of review for the Court and parties when reviewing the reports and recommendations.

    **ii.** **Non-Bellwether Presentment Package:** This will include a standardized format and method of presenting the evidence and materials for the non-bellwether attacks,

including how information for each attack and the corresponding plaintiffs shall be organized, summarized, and produced. This will include the use of Plaintiff Fact Sheets, abridged attribution expert reports, and other documents that the Special Masters determine to be necessary and routine for their review of the liability evidence and issues. This will also ensure compliance with protective orders, sealed materials, and protecting personal identifier information pursuant to LCvR 5.4 (f) (1)-(4).

    **iii.** **Status Reports on Special Master Process:** On their routine status reports, Plaintiffs will work with the Special Masters to include a specific section that will update the Court on the progress of the Special Masters' work. This will include information on the assignments of attacks, status of the attacks within the review process (e.g. Pending, In Progress, Complete, etc.), important dates or deadlines that apply, and any other information the Court, Special Masters, or Plaintiffs find necessary to keep the Court fully informed of the process.

**4. Filing Special Master Materials**:

Special Masters should submit their reports and recommendations to the Court via ECF regarding each attack assigned to them, which shall recommend findings of fact and conclusions of law regarding liability issues within the scope of their duties as detailed above in Section C.1. Where appropriate, the reports and recommendations shall cite the Court's prior rulings or the record (*e.g.* established facts and law of the case, exhibits from the master exhibit list, hearing transcripts, *etc*.). Plaintiffs may submit new evidence to the Special Masters. Newly proffered evidence need not be filed on the docket but shall be marked, cited, stored and tracked as necessary,

and provided to the Court as needed to answer any questions it has, or to respond to objections, motions, etc.

### 5. Timing

Under Federal Rule of Civil Procedure 53(b)(2), the Special Masters shall proceed with reasonable diligence in completing their duties. Per the Scheduling Order, Plaintiffs shall submit the first tranche of non-bellwether attacks one hundred and twenty (120) days after entry of the Court's order on the pending motion for default judgment (ECF Dkt. No. 115) and the Court's findings of facts and conclusions of law for the bellwether attacks (ECF Dkt. No. 115-1).

Plaintiffs propose that, every sixty (60) days thereafter, Plaintiffs shall submit a subsequent group of attacks to be reviewed by Special Masters for issues related to liability. Upon submitting each subsequent group to the Special Masters, Plaintiffs shall file with the Court a Status Report detailing the specific attacks/plaintiffs assigned to each Special Master, and will work jointly with the Special Masters to keep the Court apprised of the status of the attacks/plaintiffs in the queue for review by the Special Masters. *See, e.g.,* Sheikh Administrative Plan at 8.

Plaintiffs also propose that the Special Master be required to file their reports with proposed findings and conclusions by no later than sixty (60) days after Plaintiffs submit the necessary materials and evidence for each group. *Id*. If the Special Masters request additional information, Plaintiffs shall submit the requested information no later than thirty (30) days after the request, and the Special Master shall file the completed report for that attack on the docket no later than thirty (30) days after Plaintiffs submit the additional materials or evidence.

### 6. Standards of Review:

Pursuant to the Scheduling Order (ECF Dkt. No. 75, at 8) and Fed. R. Civ. P. Rule 53(f)(2), Plaintiffs may file an objection to, or motion to modify/adopt, a finding, report, or recommendation

by Special Masters within twenty-one (21) calendar days of the date it was electronically filed. The Court shall decide *de novo* all objections to findings of fact or conclusions of law made or recommended by the Special Masters. The Court shall set aside a ruling by the Special Masters on a procedural matter only for an abuse of discretion. *See* Fed. R. Civ. P. Rule 53(f)(3), (4), and (5).

   7. **Protective Orders & Seals**:

Plaintiffs may provide documents to the Special Masters that are under seal. *See, e.g.*, Mar. 4, 2022, May 12, 2022, and Sept. 6, 2022 Minute Orders Granting Motion for Leave to File Under Seal. Plaintiffs' counsel will preserve for the Court all relevant evidence submitted to the Special Masters (*see* Section C.4 above discussing newly offered evidence). The Special Masters shall be provided copies of, and review and comply with, all applicable protective orders in this case. *See* ECF Dkt. Nos.53, 58, 78.

   8. **Compensation**

Fed. R. Civ. P 53(g) states:

> (1) Before or after judgment, the court must fix the master's compensation on the basis and terms stated in the appointing order[.]
> (2) The compensation must be paid either:
>    (A) by a party or parties; or
>    (B) from a fund or subject matter of the action within the court's control.
> (3) The court must allocate payment among the parties after considering the nature and amount of the controversy, the parties' means, and the extent to which any party is more responsible than other parties for the reference to a master. [2]

---

[2] § 1605A(e)(2) of the FSIA permits payment of special masters appointed to assist the Court on damages using "funds available for the program under section 1404C of the Victims of Crime Act of 1984 (42 U.S.C. § 10603c [recodified at 34 U.S.C. § 20106(b)). Accordingly, this motion does not request funds available through § 1605A(e)(2), but will file separate motion doing so in the Damages phase of this case.

Because Plaintiffs seek appointment of the Special Masters to assist the Court at the liability phase of the case, and no Defendant has appeared to share the expense, Plaintiffs accept responsibility for the compensation of Special Masters for this phase.

Plaintiffs' propose (and the proposed Special Masters candidates have agreed to) the following rates and terms of compensation:

i. **Initial Payment:**

The Special Masters will receive an initial payment of $10,000 upon appointment by the Court to compensate them for review of the materials necessary to learn about the case and the case history, review the operative Administrative Plan, and prepare with the assistance of counsel for Plaintiffs the standardized template documents and packages detailed above.

ii. **Per-Attack Payment:**

In addition to the initial payment of $10,000, each Special Master shall be paid a flat rate of $1,000 per attack. This will include payment for (a) reviewing materials and evidence submitted to the Special Masters regarding Defendants' liability for the attacks assigned to Special Masters; and (b) preparing a report and recommendation to the Court related to the assigned attacks. The Special Masters shall be paid within 30 days of filing a report and recommendation for an assigned attack. Any amount paid in compensation to the Special Masters should constitute an item of court costs and taxed upon Defendants found liable.

Plaintiffs should be permitted to seek an amendment of the Administrative Plan to seek compensation from any fund existing as a result of a grant from the Office of Justice Programs of the United States Department of Justice or from any other public or private source, should such funds exist or arise. In the event such sources arise, Plaintiffs should be allowed to seek reimbursement of Special Master compensation costs they incur prior to their knowledge or the

availability of such sources. *See In re Islamic Republic of Iran Terrorism Litig.*, 659 F. Supp. 2d 31, 112 (D.D.C. 2009).

### D. Proposed Special Masters

Plaintiff propose that any person appointed as a Special Master of this Court under this Administrative Plan shall have not less than five years of experience as a licensed attorney or as a judge of a court of any state, the District of Columbia, or the United States. Such person shall not be related to any party or counsel appearing in this action, nor have any financial or other interest that would create a conflict of interest. *See* Fed. R. Civ. P. 53(a)(2), (b)(3). Below, Plaintiffs identify and propose five individuals who have agreed to serve as Special Masters, if appointed. Each of these proposed individuals have reviewed this motion and the proposed Administrative Plan, and agree to the proposed duties and terms of compensation. Attached to this motion is the *curriculum vitae*/biography of each of these proposed Special Masters. None of these proposed individuals is aware of "a relationship to the parties, attorneys, action, or court that would require disqualification of a judge under 28 U.S.C. § 455." Fed. R. Civ. P. 53(a)(2). Each proposed Special Master will submit a signed declaration disclosing any ground for disqualification under 28 U.S.C. § 455 and agreeing to abide by the final Administrative Plan within thirty (30) days after entry of an order appointing that individual as a Special Master. Any order appointing an individual as a Special Master may be contingent upon submission of the signed declaration.

In light of the large number of attacks in this action, Plaintiffs request that the Court appoint all five proposed individuals to serve as Special Masters. This will facilitate the timely resolution of Plaintiffs' claims and increase the speed with which Plaintiffs can obtain final judgments eligible for compensation from the Fund. For similar reasons, courts in other large-scale matters have appointed multiple Special Masters. *See* Order Appointing Special Masters, *Chogo v.*

13

*Republic of the Sudan*, No. 15-cv-00951-JDB (D.D.C. Aug. 29, 2019), ECF Dkt. No. 38 ("Chogo Special Master Order"). If the Court appoints multiple Special Masters, Plaintiffs will submit for the Court's approval a plan identifying which Special Masters shall be responsible for which non-bellwether attacks — assigning the attacks in a manner to ensure that each Special Master will complete their work as efficiently as possible. Plaintiffs shall submit the proposed assignments for the non-bellwether attacks at the same time as their motion to appoint Special Masters to hear damages for the bellwether attacks. *See* ECF Dkt. No. 75, ¶ 7 ("Thirty (30) days after finding of liability: Plaintiffs will file a motion for the appointment of Special Masters to hear damages pursuant to 28 U.S.C. § 1605A(e).")

### 1. Hon. David R. Herndon (Ret.)

Judge Herndon was a United States District Judge in the United States District Court for the Southern District of Illinois, for twenty years. He served as Chief Judge there for seven years. *See* Herndon CV (Ex. A). Prior to be appointed to the federal judiciary, Judge Herndon served as a judge in Illinois' Third Judicial Circuit Court for Madison and Bond Counties for eight years. *Id.* Prior to taking the bench, Judge Herndon was in private practice for fourteen years during which he handled cases through trial for both plaintiffs and defendants. *Id*. His experience as a federal judge included overseeing more than 35,000 civil and criminal cases. The United States Judicial Panel on Multidistrict Litigation (JPML) appointed Judge Herndon twice to preside over large complex mass action litigations: MDL 2100 *In re YAZ* and MDL 2385 *In re Pradaxa*. Since retiring from the bench, Judge Herndon founded Herndon Resolution, LLC, providing services as an arbitrator and special master, and currently serves as Fee Panel Arbiter in MDL 2804 *In Re: National Prescription Opioid Litigation*, Special Master in *MDL 2885 In Re: 3M Combat Arms Earplug Product Liability Litigation*, and Trustee of the DII Industries, LLC Asbestos PI Trust.

He is a member of the Federal Judges Association and served as Chair of the Judicial Conference Committee for Judicial Security by appointment of Chief Justice John Roberts.

   2. **Rear Admiral John D. Hutson, Esq. (U.S. Navy Ret.)**

Rear Admiral John D. Hutson is a retired United States Navy officer and Judge Advocate General. *See* RADM Hutson CV and Biography (Ex. B). During his military and legal career he served as: Chief Defense Counsel and Chief Trial Counsel for the Navy's Corpus Christi, Texas, Regional Office; Instructor at the Naval Justice School; Executive Officer of the Naval Legal Service Office, Newport, Rhode Island; Staff Judge Advocate and Executive Assistant to the Commander, Naval Investigative Command; Director of Legislation for the Navy; Executive Assistant to the Judge Advocate General of the Navy; Commanding Officer, Naval Legal Service Office, Europe and Southwest Asia; and Commanding Officer of Naval Justice School. He was promoted to the rank of Rear Admiral, and assumed duties as the Judge Advocate General of the Navy in May 1997. Rear Admiral Hutson was awarded the Distinguished Service Medal, the Legion of Merit (with three gold stars), Meritorious Service Medal (with two gold stars), Navy Commendation Medal, and Navy Achievement Medal. Upon retirement, Rear Admiral Hutson was appointed as Dean and President of the Franklin Pierce Law Center, which became the University of New Hampshire School of Law in Concord, New Hampshire, and served in that position for eleven years.

   3. **Matthew E. D. Besser, Esq.**

Matthew Besser is currently the Managing Principal, Bolek Besser Glesius LLC, in Cleveland, OH. He is Arbitrator with the American Arbitration Association. He has been in private practice as an attorney for seventeen years. *See* Besser CV (Ex. C). Prior to private practice and his work as an arbitrator, which was a law clerk for Hon. Richard L. Nygaard, at the United States

15

Court of Appeals of the Third Circuit, in Erie, PA., and as an extern for Hon. Solomon Oliver, at the United States Court for the Northern District of Ohio, in Cleveland, Ohio. He has taught appellate advocacy as an Adjunct Professor at Case Western Reserve University School of Law, in Cleveland, Ohio, and served the Cleveland Metropolitan Bar Association as Board Member, Chair of the Grievance Committee, and member of the Judicial Selection Committee.

4. **Michael J. Borden, Esq.**

Michael Borden is Principal at Borden Dispute Resolution LLC, and presently serves as Assistant to U.S. District Judge Dan A. Polster and Counsel to Special Master David R. Cohen, *MDL 2804 – In re National Prescription Opiate Litigation,* in the United States District Court for the Northern District of Ohio. *See* Borden CV (Ex. D). He serves as Chair of the ADR Committee for United States District Court for the Northern District of Ohio, Advisory Group. Mr. Borden is also an Arbitrator with the American Arbitration Association, and for the Financial Industry Regulatory Authority. He presently holds a Fellowship with the Academy of Court-Appointed Neutrals. Mr. Borden is a member of the American Law Institute, and a Professor Emeritus of Law at Cleveland-Marshall College of Law, where he also served as an Associate Dean for three years. Mr. Borden has been practicing law for twenty-four years.

5. **Hon. Ronald V. Swanson (Ret.)**

Judge Swanson served as a judge for sixteen years in the county, circuit, and appellate courts of the state of Florida, including the First Judicial Circuit in Santa Rosa and Escambia counties; as well as the First District Court of Appeal, in Tallahassee. *See* Swanson CV and Biography (Ex. E). After his retirement, in 2017, the Florida Senate appointed Judge Swanson to be Special Master in an investigation into allegations of misconduct by a State of Florida State Senator. Prior to taking the bench, Judge Swanson served as an Assistant State Attorney for

Florida, and was designated Special Prosecutor for cases of significance during that time. Before his work as a jurist and prosecutor for the state of Florida, Judge Swanson served for over 20 years in the United States Navy Judge Advocate General's Corps, retiring as a Navy Captain. During this time, he served in numerous assignments including as a Military Judge for the Navy and Marine Corps Trial Judiciary from 1982 to 1985. Judge Swanson also served as Special Counsel to the Vice Chief of Naval Operations; on duty at Naval Station, Guantanamo Bay, Cuba; and as the Commanding Officer, Naval Legal Service Office Central, Naval Air Station, Pensacola, Florida. Of note, Judge Swanson was appointed counsel for the Combat Systems Officer aboard the USS *Vincennes* in proceedings before a Court of Inquiry established to investigate and resolve claims between Iran and the United States after the guided-missile cruiser mistakenly shot down Iran Air Flight 655.

## **CONCLUSION**

WHEREFORE, for the foregoing reasons, Plaintiffs respectfully move this Court for an order authorizing the appointment of the above Special Masters to assist the Court in adjudicating issues and determining Defendants' liability for non-bellwether attacks.

Dated: November 21, 2022.                                   Respectfully submitted,

*/s/ Chad E. Ihrig*
Chad E. Ihrig (*Pro Hac Vice*)
Texas Bar No. 2408437
Nix Patterson, LLP
8701 Bee Cave Road
Seven Oaks East, Suite 500
Austin, Texas 78746
Fax: 512.328.5335
Tel: 512.328.5333