UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ESTATE OF CHRISTOPHER BROOK FISHBECK, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>THE ISLAMIC REPUBLIC OF IRAN, et al.,<br><br>Defendants | )<br>)<br>)<br>)<br>)  Civil Action No. 1:18-cv-2248-CRC<br>)<br>)<br>)<br>)<br>)<br>) |

### PLAINTIFFS' SUPPLEMENTAL BRIEF ON LIABILITY OF DEFENDANTS BANK MARKAZI, BANK MELLI, AND NIOC

Pursuant to the Court's Order (ECF No. 127), Plaintiffs now submit their supplemental brief regarding Defendants Bank Markazi, Bank Melli, and the National Iranian Oil Company (NIOC) and whether their "indirect activities are sufficient to satisfy the requirements of 28 U.S.C. § 1605A(a)(1)." As stated in that Order, the Court found "satisfactory evidence in the record that Bank Markazi and Bank Melli provided financial services, and that NIOC provided funding, to the Islamic Revolutionary Guard Corps and/or other Iranian entities, which in turn provided material support to the subject terrorist groups." ECF No. 127, p. 3. The Court went on to invite supplemental briefing "[s]hould Plaintiffs wish to continue retaining those defendants in the case." *Id.* Plaintiffs do wish to retain those defendants in this case, and doing so is appropriate under the governing law and is practically beneficial—not only to Plaintiffs but also to other victims of state-sponsored terrorism.

**I.  Plaintiffs Have Established that Bank Markazi, Bank Melli, and NIOC Materially Supported the Subject Terrorist Groups**

Plaintiffs brought claims against Bank Markazi, Bank Melli, and NIOC because of the critical—indeed, indispensable—role they played in Iran's terrorism network. *See* ECF No. 115-

1, ¶¶ 140-141, 155-168 (NIOC), 169-175 (Bank Melli), 176-179 (Bank Markazi); *see also* ECF No. 100, ¶¶ 2-3, 47, 100-125, 173, 457-458, 506-515, 540, (NIOC), 92-98 (Bank Markazi), 566-569 (Bank Melli). Specifically, these Defendants provided Iran and the subject terrorist groups the funds, financial services, and infrastructure necessary to plan, prepare, and execute Iran's grand regional campaign of terrorism. For example, Iran used Bank Markazi, Bank Melli, and NIOC to launder at least $100 million in U.S. dollar-denominated assets for the benefit of the IRGC and its proxy Hezbollah. *Id.*, ¶¶ 11, 47, 94-9, 120-124, 128-141. In turn, the IRGC, MOIS, and Hezbollah directed, trained, armed, supplied and funded the subject Shia and Sunni terrorist groups in Iraq. *See, e.g., id.*, ¶¶ 117-119, 136-139, 176, 187, 200, 242, 269, 296, 303, 316-354, 414, 424-442, 484-505, 521-570. Iran also used Bank Markazi, Bank Melli, and NIOC to evade counterterrorism financing sanctions and covertly access funds and dual-purpose goods used for terrorism in Iraq. *Id.*, ¶¶ 154-158, 411, 452-458, 533-541, 549-558, 567-570. These Defendants' commercial activities also provided a façade that allowed Iran to gather intelligence information inside Iraq and transport money, fighters, and weapons into Iraq for the terrorist groups to use in attacks against American nationals. *Id.,* ¶¶ 371, 375, 382, 390, 400, 410, 434-442, 494, 513-516.

It is well-established that the provision of material support or resources to terrorists by a foreign state or its agencies and instrumentalities gives rise to liability under the FSIA. *See* 28 U.S.C. § 1605A; *In re Terrorist Attacks on Sept. 11, 2001*, No. 03 MDL 1570 (GBD), 2011 WL 13244047, at *41–42 (S.D.N.Y. Dec. 22, 2011). The FSIA defines "material support or resources" as "any property, tangible or intangible, or service, including currency or monetary instruments or financial securities, financial services, [and] lodging." *Stansell v. Republic of Cuba*, 217 F. Supp. 3d 320, 339 (D.D.C. 2016) (citing 28 U.S.C. § 1605A(h)(3) and 18 U.S.C. § 2339A). The financial

services and funding provided by Bank Markazi, Bank Melli, and NIOC clearly qualify as material support under the FSIA.

Furthermore, the FSIA makes no distinction between direct and indirect material support. As the D.C. Circuit has stated, "the terrorism exception to the FSIA targets sovereign nations in an effort to deter them from engaging, *either directly or indirectly*, in terrorist acts." *Owens v. Republic of Sudan*, 864 F.3d 751, 776 (D.C. Cir. 2017) (emphasis added). *See also Flanagan v. Islamic Republic of Iran*, 87 F. Supp. 3d 93, 106 (D.D.C. 2015) (finding IRGC liable for al-Qaeda's bombing of the U.S.S. Cole based upon its provision of financial support and training to al-Qaeda operatives and support for "Hezbollah, which *in turn* provided training for [a]l-Qaeda") (emphasis added).

The relevant question is whether a defendant's material support was a proximate cause of the terrorist acts that injured the plaintiff. *Id.* at 794. This does not require proof that the defendant "specifically knew of or intended its support to cause" the attack. *Id.* at 798. Nor does it require proof that the defendant's material support was a "but for" cause of the attack. *Kilburn v. Socialist People's Libyan Arab Jamahiriya*, 376 F.3d 1123, 1128 (D.C. Cir. 2004). And it does not require evidence that the defendant's material support was traceable or "tied to each of the attacks that caused [the plaintiffs'] injuries." *Id.* at 1130. That is because certain material support—such as funding and financial support—are "fungible, and the FSIA could hardly be interpreted to condition Plaintiffs' recovery on [a terrorist organization's] careful bookkeeping." *Id.*

The proximate cause element can be met with evidence that the defendant's support was a "substantial factor in the sequence of events that led to the plaintiff's injury" and the plaintiff's injury was "reasonably foreseeable or anticipated as a natural consequence of the defendant's conduct." *Owens*, 864 F.3d at 794. In this case, Plaintiffs presented—both in their general liability

brief (ECF No. 84-1) and at the September 2022 hearing—evidence showing how the actions and involvement of Bank Markazi, Bank Melli, and NIOC in providing funding and financial support to support Iran's terrorism campaign satisfy the proximate cause element. *See* ECF No. 115-1, ¶¶ 155-185 (summarizing the evidence against these three defendants).

In similar terrorism cases, federal courts have found Bank Markazi, Bank Melli, and NIOC liable under the FSIA for providing the same type of material support—funding and financial support—to terrorist groups, albeit indirectly through Iran's terrorism apparatus. *See In re Terrorist Attacks on September 11, 2001*, No. 03-MDL-1570 (GBD) (S.D.N.Y.); *Henkin v. Islamic Republic of Iran*, No. 1:18-CV-1273-RCL (D.D.C.); *Hake v. Bank Markazi Jomhouri Islami Iran*, No. CV 17-114 (TJK) (D.D.C.). The factual basis for liability in those cases—at least as articulated by the courts in their written opinions—was much thinner than what Plaintiffs have presented to the Court in this case.

*In re Terrorist Attacks on September 11, 2001*, was a case brought against Iran and its agencies and instrumentalities, including NIOC and Bank Markazi (identified by the court as the Central Bank of the Islamic Republic of Iran). As set forth in the court's opinion, the factual findings pertinent to those defendants were as follows:

- The Islamic Revolutionary Guard Corps (IRGC) "is a major factor in the Iranian economy: it owns and controls hundreds of companies and commercial interests, particularly in the oil and gas sector, engineering, telecommunications and infrastructure, and it holds billions of dollars in military, business, and other assets and government contracts. One of the IRGC's companies has been awarded contracts worth billions of dollars by government agencies and the National Iranian Oil Company." 2011 WL 13244047, at *5.
- "The entire apparatus of the Iranian state and government, and many parts of Iran's private

sector, including corporations (*e.g.*, National Iranian Oil Company, Iran Air, Iran Shipping Lines); banks (*e.g.*, Central Bank [of Iran], Bank Sepah)…are at the service of the Supreme Leader, the IRGC, and the MOIS when it comes to support of terrorism." *Id.* at *6.

- "A large cash flow of money was funneled to terrorist organizations through the NIOC." *Id.* at *8.

- "Because of NIOC's role in material support of terrorism, OFAC has placed NIOC on its List of Specially Designated National and Blocked Persons." *Id.*

- Bank Markazi "is owned by, and is tightly linked to, the Iranian government." *Id.* at *9.

- "In practice, the Iranian government exercises tight control over [Bank Markazi] and ignores the law by issuing direct orders to it." *Id.* Although the bank's governor has a five-year term, "in fact, he serves at the pleasure of Iran's president." *Id.*

- "The transfers of huge sums of Iranian money to terrorist organizations such as HAMAS and Hizballah, often millions of dollars of cash carried in suitcases, can only be accomplished with the complicity and/or knowledge and acquiescence of [Bank Markazi]. The same must be true in the case of banking transactions between Iranian agencies and instrumentalities and terrorist organizations." *Id.* Bank Markazi "facilitates the transfer of money to terrorist groups." *Id.*

Based on this evidence, the court ruled that NIOC and Bank Markazi were "subject to liability under [sic] as agents of Iran under § 1606A(c) of the FSIA." *Id.* at *41. Plaintiffs herein presented the same evidence—and considerably more—showing NIOC's and Bank Markazi's intimate and essential involvement in Iran's terrorism network. *See generally* ECF No. 84-1, Sections VI.B.2-4, VI.E

In *Henkin*, a case against Bank Markazi, Bank Melli, and Bank Saderat, the court found

these banks "materially supported Hamas in the time leading up to the attack," as the "Iranian government passed millions of dollars of funding to Hamas through all three of these banks," which "facilitated the attack by providing material support to the Hamas organization." 2021 WL 2914036, at *2. The court concluded, "[b]ecause the Defendants materially supported Hamas to effect the common goal of inflicting terrorism, were integrated in Hamas's terror policies, and deployed Hamas as agents, the Court may hold Defendants Iran, the IRGC, the MOIS, Bank Markazi, Bank Melli, Bank Saderat, and Syria jointly and severally liable to the Estate of Eitam Henkin for his § 1605A(c)(4) claims." *Id.* at *11.

*Hake*, like this case, "is about several attacks on American soldiers in Iraq between 2004 and 2011." 2022 WL 4130837, at *1 (D.D.C. Sept. 12, 2022). The *Hake* plaintiffs first sued the Islamic Republic of Iran and obtained judgments. *Karcher v. Islamic Republic of Iran*, 396 F. Supp. 3d 12, 65 (D.D.C. 2019). In a separate action involving the same attacks, the *Hake* plaintiffs sued Bank Markazi, Bank Melli, and NIOC, obtaining judgments against all three. The court summarized the evidence against those defendants as follows:

> [A]ccording to experts Clawson and Katherine Bauer, Defendants Bank Markazi, Bank Melli, and National Oil played critical roles in Iran's efforts to promote terrorism through the IRGC-QF and Hezbollah. Using government reports and terrorist designations, statements by government officials, information from third-party banks, and Defendants' own public reports, they explain that Iran used Bank Markazi for many years "to transfer funds to support terrorism, principally to the IRGC-QF and Hezbollah." Clawson and Bauer also detail how "Bank Melli provided banking services that provided significant funding to the IRGC-QF." In fact, according to the Treasury Department, "IRGC-QF has used Bank Melli to dispense funds to Iraqi Shi'a militant groups." Clawson further describes Bank Melli's well-documented support for an Iranian organization that made weapons and munitions "used by those attacking U.S. forces in Iraq." Both Clawson and Bauer outline the United States government's findings about National Oil's role as financier of the IRGC-QF "and its terrorist proxies." And Bauer details how all three laundered money to help "the IRGC and other elements of Iran's terror apparatus." Indeed, Defendants' efforts "helped the regime acquire items restricted for their military applications and use in terrorism."

2022 WL 4130837, at *10 (internal citations omitted).

In *Hake*, Judge Kelly found "Defendants' actions were a substantial factor in the bellwether attacks," as "Defendants provided critical funding to" both the Islamic Revolutionary Guard Corps-Qods Force and Hezbollah. The court further found that the defendants "were also significant players in Iran's efforts to disguise its involvement in proliferation and terrorism activities through an array of deceptive practices specifically designed to evade detection." *Id.* at *11. For these reasons, the court held Bank Markazi, Bank Melli, and NIOC liable for the attacks under 28 U.S.C. § 1605A. The court recognized "[o]ther courts have relied on essentially the same evidence to find that Defendants supported Iran's terrorist activities." *Id.* (citing *Henkin* and *In re Terrorist Attacks on Sept. 11, 2001*).[1]

Plaintiffs respectfully submit that this Court should reach the same conclusion in this case, as Plaintiffs have met their burden under 28 U.S.C. § 1608(e) of proving: Bank Markazi, Bank Melli, and NIOC provided material support to the subject terrorist groups; said material support was essential to the groups' operating capacity; and terrorist attacks involving those groups in Iraq between 2003 and 2011 were reasonably foreseeable and a natural consequence of that material support. Indeed, as Plaintiffs' evidence shows, absent the critical functions provided by these three defendants within Iran's terrorism network, Iran's support for terrorist groups in Iraq would not have been as widespread, long-lasting, clandestine, or effective in terms of lethality. The funds generated and distributed by and through these defendants provided the "oxygen" for the terrorist

---

[1] The courts in *In re Terrorist Attacks on Sept. 11*, *Henkin*, and *Hake* all relied upon the testimony of Dr. Patrick Clawson, whose expert reports and declarations have been proffered in this case. *See* PX1, Report & Decl. of Dr. Patrick Clawson; ECF No. 115-1, at Section VI.d. Plaintiffs have also proffered the expert opinions of Dr. Matthew Levitt, who was also relied upon in both *Henkin* and *Hake* (*see e.g.*, *Henkin*, No. 1:19-cv-01184-RCL, ECF No. 61, ¶¶ 175, 185, 188, 209, 220; and *Hake*, 2022 WL 4130837, at *10). *See also*, ECF No. 115-1, at Section VI.e.

groups to succeed with their dastardly acts.[2]

## II. Retaining Bank Markazi, Bank Melli, and NIOC as Defendants Will Benefit Plaintiffs and Other Victims of State-Sponsored Terrorism

Retaining Bank Markazi, Bank Melli, and NIOC as defendants, with the goal of ultimately obtaining judgments against them, will benefit Plaintiffs in a practical sense. In 2015, Congress established the United States Victims of State Sponsored Terrorism Fund ("the Fund") to provide compensation to victims of state-sponsored terrorism. *See generally* 34 U.S.C. § 20144; http://www.usvsst.com/. The Fund disburses a limited amount of money to victims who have obtained final judgments against state sponsors of terrorism. Because the amount of money in the Fund is far less than the total amount of judgments, the Fund pays eligible claims on a *pro rata* basis. 34 U.S.C. § 20144(d)(3)(A). The Fund further limits how much victims can recover by capping claims at $20 million per claimant and $35 million per family—even where the judgments far exceed those amounts, which is often the case. 34 U.S.C. § 20144(d)(3)(A). Also, the Fund does not pay punitive damages. *Id.* at § 20144(j)(3). In fact, based on the payments from the Fund to date, it has paid victims only about 24% of the capped values permitted by the fund (despite the actual amount of some victim's judgments being much higher).[3]

Judgments against Bank Markazi, Bank Melli, and NIOC would give Plaintiffs access to sources of recovery outside the Fund—and thus the ability to recover more than they could from the Fund alone. This is not theoretical. A federal court recently ordered a New York bank to turn

---

[2] *See* U.S. Secretary of State Colin L. Powell, *Remarks on Financial Aspects of Terrorism at Office of Financial Crimes Enforcement Network* (November 7, 2001) ("[M]oney is the oxygen of terrorism. Without the means to raise and move money around the world, terrorists cannot function."), https://2001-2009.state.gov/secretary/former/powell/remarks/2001/5979.htm.

[3] *See U.S. Victims of State Sponsored Terrorism Fund Payment Calculation Explanation for Non-9/11-Related Claims Fourth Distribution* (December 2022), available at: http://www.usvsst.com/docs/USVSST%20Fund%20Round%20Four%20Payment%20Calculation%20Non-9-11_Dec%202022.pdf

over to victims of Iranian terrorism $1.7 billion belonging to Bank Markazi. *Peterson v. Islamic Republic of Iran*, No. 13 CIV. 9195 (LAP), 2023 WL 2601265, at *1 (S.D.N.Y. Mar. 22, 2023). If and when Plaintiffs obtain judgments against Bank Markazi, Bank Melli, and/or NIOC, they will likewise seek to collect upon those judgments by seizing those defendants' assets.

Judgments against Bank Markazi, Bank Melli, and NIOC also would give Plaintiffs a direct route to their assets—as opposed to an indirect route by obtaining judgments against Iran only. Moreover, it is possible that certain foreign jurisdictions would recognize a judgment against Bank Markazi, Bank Melli, and NIOC but not against Iran itself. These are yet additional benefits of retaining Bank Markazi, Bank Melli, and NIOC as defendants.[4]

Plaintiffs' ability to recover from sources outside the Fund will also redound to the benefit of other victims of state-sponsored terrorism. That is because the amount an eligible claimant may receive from the Fund is reduced to the extent the claimant receives compensation from a source ***other than*** the Fund. 34 U.S.C. § 20144(d)(3)(B). Consequently, any compensation Plaintiffs

---

[4] In cases involving execution of FSIA judgments against assets of Bank Markazi and Bank Melli, these banks have raised defenses that: 1) they were not named parties in the underlying liability actions; 2) the subject assets were not related to the underlying claims; and 3) plaintiffs had not established during the liability proceedings that the banks' conduct related to their underlying claims arising from §1605A. *See, e.g.*, Motion to Dismiss and Opposition filed by Bank Markazi in *Peterson v. Islamic Republic of Iran*, No. 13 CIV. 9195 (LAP), 2020 WL 7390265 (S.D.N.Y. Sept. 11, 2020) (discussed and ruled upon by the district court at 2023 WL 2601265, at *15 (S.D.N.Y. Mar. 22, 2023); *Weinstein v. Islamic Republic of Iran*, 609 F.3d 43, 48 (2d Cir. 2010) (In opposing plaintiffs' motion to appoint a receiver to Bank Melli's real property located in New York to partially satisfy their FSIA judgment against Iran, Bank Melli argued that the court lacked jurisdiction over "an instrumentality of a sovereign state when the instrumentality ***was not itself a party to the underlying tort action that gave rise to judgment on which plaintiff now seeks to recover***.") (emphasis added). Bank Markazi recently asserted similar arguments before the International Court of Justice in an effort to prevent the execution of FSIA judgments granted by U.S. courts. *See Certain Iranian Assets* (Iran v. U.S.), Judgment, 2023 I.C.J. (March 30) (not yet reported), available at: https://www.icj-cij.org/sites/default/files/case-related/164/164-20230330-JUD-01-00-EN.pdf.

obtain outside the Fund will reduce the amount they take out of the Fund—and, because the Fund contains a finite amount of money, *increase* the amount in the Fund available to other victims.

### III.     Conclusion

For the foregoing reasons, Plaintiffs submit that Bank Markazi, Bank Melli, and NIOC should remain in the case and request the Court issue an order similar to ECF No. 127 but expanded to apply to these three Defendants.

All that said, if the Court would like to have a hearing or conference, in person or by Zoom, on the issues raised in this supplemental brief, undersigned counsel would of course make themselves available.

Dated: April 28, 2023.                                     Respectfully submitted,

By: */s/ Jeremy A. Tor*
Jeremy A. Tor (Pro Hac Vice)
Ohio Bar No. 0091151
**SPANGENBERG, SHIBLEY & LIBER LLP**
1001 Lakeside Ave., East., Suite 1700
Cleveland, Ohio 44114
Telephone: (216) 696-3232
Facsimile: (216) 696-3924
Email: jtor@spanglaw.com

Christopher G. Paulos
DC Bar No. 1615782
**LEVIN, PAPANTONIO, RAFFERTY, PROCTOR, BUCHANAN, O'BRIEN, BARR & MOUGEY, P.A.**
316 South Baylen Street, Suite 600
Pensacola, Florida 32502
Telephone: (850) 435-7067
Facsimile: (850) 436-6067 Email: cpaulos@levinlaw.com

*Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been served by electronic filing with the Clerk via the CM/ECF system, which electronically notifies all registered participants.

Respectfully submitted,

*/s/ Jeremy A. Tor*