UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ESTATE OF CHRISTOPHER BROOK FISHBECK, et al., | ) ) ) |
| Plaintiffs, | ) ) ) Civil Action No. 1:18-cv-02248-CRC |
| v. | ) ) |
| THE ISLAMIC REPUBLIC OF IRAN, et al., | ) ) |
| Defendants | ) ) |

### MAY 15, 2023 JOINT STATUS REPORT

Pursuant to the Court's Minute Order entered on April 18, 2023, Plaintiffs, through undersigned counsel, and non-party the Department of Defense ("DOD") hereby file this Joint Status Report.

### UPDATE FROM DOD

1. Late last year, Plaintiffs and DOD agreed to a path forward in this case. The U.S. Central Command ("CENTCOM") estimated that it could voluntarily process and produce 500 pages of responsive documents every 60 days. Because the documents that Plaintiffs seek are classified, they must undergo mandatory declassification review ("MDR") per Executive Order 13,526. Each tranche of documents is therefore assigned an MDR number, and DOD's progress is most easily reported accordingly:

*MDR 22-0119*

2. This tranche comprises operational reports and associated files for Attacks No. 51–92. This tranche contained nine documents totaling 28 pages. All 28 pages were produced on January 10, 2023, and numbered CENTCOM_00000381–408.

*MDR 22-0127*

3.      This tranche comprises documents maintained by the Defense Threat Reduction Agency ("DTRA"). Early last year, Plaintiffs provided certain parameters (known as "polygonals") used to narrow the scope of such documents. DTRA applied these polygonals and delivered the results—21 documents, totaling 577 pages—to CENTCOM for processing. Five documents (100 pages) were released in part on February 23, 2023, and numbered DTRA_00000001–101.[1] Another 13 documents (375 pages) were processed by CENTCOM and referred back to DTRA for further equity review. The last three documents were processed by CENTCOM in April. One of the documents (10 pages) was produced on May 4, 2023, as DTRA_00000365–74, and the other two documents (70 pages) were referred back to DTRA for further review.

4.      In summary, all 21 documents (577 pages) in MDR 22-0127 have been processed by CENTCOM. There remain 15 documents (445 pages) pending other DOD components' equity review.

*MDR 23-0154*

5.      This tranche comprises an additional 143 documents (698 pages) that CENTCOM found embedded within the documents provided by DTRA in MDR 22-0127. On May 4, 2023, 70 of these documents (295 pages) were produced as DTRA_00000102–406 (exclusive of DTRA_00000365–74, noted above). Another 30 documents (119 pages) were processed by CENTCOM and referred back to DTRA in April for further review.

6.      In summary, 100 documents (414 pages) of the 143 documents (698 pages) in this tranche have been processed by CENTCOM. The remaining 43 documents (284 pages) are being

---

[1] One of these pages was a 'slip sheet' for the 22 pages withheld in full.

processed presently. Because a substantial number of these documents appear to be duplicates, CENTCOM expects to process them fairly quickly.

*Overall Summary*

7.  Since December 2022, CENTCOM has processed 1,019 pages. That includes 433 pages produced to Plaintiffs, 22 pages withheld in full, and 564 pages referred to other DOD components for review.

8.  After CENTCOM finishes processing the DTRA documents in MDR 23-0154, CENTCOM will turn to operational reports (and associated files) of the sort previously produced for Attacks No. 1–92. These number approximately 1,700 pages of documents that were located using "report keys" and "tracking numbers" that Plaintiffs provided, and approximately 900 pages found through *ad hoc* searching for the attacks without report keys or tracking numbers. The latter are still being assessed for responsiveness and duplication and may therefore decrease in number.

9.  CENTCOM expects to have processed 1,500 total pages before June 9, 2023, per its proposal last December.

\*   \*   \*

**Plaintiffs' Position**

10. As stated above, DOD agreed that CENTCOM would process and produce 500 pages every 60 days. That has not occurred.

11. CENTCOM may have *processed* 1,019 pages since December 2022, but CENTCOM has only *produced* 455 pages since that time.[2] CENTCOM sent the remaining 564 pages of the 1,019 pages to other DOD agencies for further processing. Those 564 pages have not

---

[2] Of those 455 pages, DOD withheld/redacted 22 pages in full due to privilege for a total of 433 pages being actually produced to Plaintiffs, but Plaintiffs include those 22 pages that were withheld/redacted in full toward the total production count.

been produced and DOD has not provided Plaintiffs a timeline for when those 564 pages will be produced.

12.     Thus, out of the 1,019 pages "processed" by CENTCOM, 433 have been produced to Plaintiffs, 22 have been withheld/redacted in full, and 564 are still being processed by DOD.

13.     Thus, DOD has not met its obligation to process and produce 500 pages every 60 days.

14.     DOD states that CENTCOM will have processed 1,500 pages by June 9, 2023, and thus will meet its obligation. Plaintiffs disagree.

15.     Documents being *produced* to Plaintiffs is the key to DOD's obligation.

16.     Because documents may/will need to be processed by other DOD agencies besides CENTCOM (564 pages so far), merely stating that CENTCOM will *process* 1,500 pages by June 9, 2023, without indicating when those documents will actually be *produced* to Plaintiffs, does not provide Plaintiffs with any useful information.

17.     Plaintiffs believe it is necessary for the Court to enter a court-ordered production schedule to keep DOD on track with processing and producing 500 pages every 60 days. Plaintiffs respectfully request the Court enter an order requiring DOD to process and produce 500 pages every 60 days (with pages that are withheld/redacted in full being included in the total production count).

### DOD's Position

DOD has made good on its proposal: CENTCOM has processed at least 500 pages every 60 days since December 9, 2022, when Plaintiffs reported the proposal to the Court. *See* ECF No. 120. Plaintiffs interpret the term "process" to mean that DOD *as a whole* would process the pages, such that pages processed by CENTCOM and referred to other DOD components do not count toward the 500-page bimonthly goal. But the correspondence outlining DOD's proposal in November 2021—which

could be made available at the Court's request—does not bear that reading.

For starters, "produce" could not have been taken literally because, until a given document is reviewed, DOD does not know whether any of it can be released. Seemingly for that reason, Plaintiffs agree that the 22 *withheld* pages count against DOD's goal. In other words, they agree that DOD did not agree literally to produce 500 pages every 60 days. Furthermore, DOD's proposal was expressly couched as an "estimate" of what *CENTCOM* could process based on *CENTCOM's* current workload. *See* Mot. for Production Order 2 ("Plaintiffs have agreed to DOD's proposed production schedule based upon DOD's representation that *CENTCOM* believes *it* can comply with this schedule.") (emphasis added), ECF No. 120. Just as DOD cannot predict whether an unreviewed document can be released, it cannot prejudge whether (or which) other DOD components will have equities in that document—or how long the component(s) might take to review any referral. And finally, the queue of documents under discussion last November was the ~1700 pages of operational reports and associated files mentioned above. *See id.* at 1 ("To be sure, this proposed production schedule only applies to those 1700 pages identified by CENTCOM."). Those files are maintained by CENTCOM, and thus generally do not need to be referred to other DOD components for equity review—hence DOD's estimate that CENTCOM could produce 500 such pages every 60 days.[3] For all these reasons, DOD's November 2022 proposal is best understood as a prediction of what CENTCOM could process and then produce, withhold, or refer to other DOD components. DOD has lived up to that proposal.

CENTCOM is balancing innumerable requests for documents through the Freedom of Information Act and third-party subpoenas like this one. The agency proposed a reasonable pace and has stuck to it. DOD respectfully suggests that a production order is unnecessary. Instead, the

---

[3] Now that CENTCOM has nearly finished processing DTRA documents, and will soon revert to CENTCOM documents, referral to other DOD components should not be an issue going forward. In other words, once CENTCOM turns to the ~1700 pages that came from its system, it should be able to process *and produce* (or withhold) 500 pages every 60 days.

Court should continue ordering regular status reports on DOD's progress as it continues to process documents.

| | |
|---|---|
| Dated: May 15, 2023. | Respectfully submitted, |

By: */s/ Dustin B. Herman*
DUSTIN B. HERMAN (*Pro Hac Vice*)
Ohio Bar No. 0093163
**SPANGENBERG SHIBLEY & LIBER LLP**
1001 Lakeside Ave., East, Suite 1700
Cleveland, Ohio 44114
Telephone: (216) 696-3232
Facsimile: (216) 696-3924
Email: dherman@spanglaw.com

*/s/ Howard L. Nations*
Howard L. Nations
DC Bar No. TX143
**THE NATIONS LAW FIRM**
9703 Richmond Avenue, Suite 200
Houston, TX 77042
Telephone: (713) 807-8400
Facsimile: (713) 807-8423
Email: howard@howardnations.com

*Counsel for Plaintiffs*

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

JACQUELINE COLEMAN SNEAD
Assistant Branch Director

/s/ *Jason C. Lynch*
JASON LYNCH (D.C. Bar No. 1016319)
Trial Attorney
Federal Programs Branch
U.S. Department of Justice, Civil Division
1100 L Street, NW
Washington, DC 20005
Telephone: (202) 514-1359
Email: Jason.Lynch@usdoj.gov

*Counsel for Non-Party U.S. Department of Defense*