UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ESTATE OF CHRISTOPHER BROOK FISHBECK, et al.**, <br><br> Plaintiffs, <br><br> v. <br><br> **THE ISLAMIC REPUBLIC OF IRAN, et al.**, <br><br> Defendants. | Case No. 18-cv-2248 (CRC) |

## MEMORANDUM OPINION AND ORDER

The over 1400 plaintiffs in this case bring claims under the terrorism exception to the Foreign Sovereign Immunities Act ("FSIA") against the Islamic Republic of Iran and various of its constituent entities and instrumentalities for deaths and injuries suffered by U.S. servicemembers in Iraq from 2003 to 2011. No defendants have appeared.

The FSIA's terrorism exception abrogates sovereign immunity for foreign states that, among other things, provide "material support or resources" for extrajudicial killings. 28 U.S.C. § 1605A(a)(1); Mohammadi v. Islamic Republic of Iran, 782 F.3d 9, 14 (D.C. Cir. 2015). In a prior order, the Court found that Defendants Islamic Republic of Iran ("Iran"), Islamic Revolutionary Guard Corps ("IRGC"), and Iranian Ministry of Intelligence & Security ("MOIS") provided material support, as that term is used in 28 U.S.C. § 1605A(a)(1), to various Shia and Sunni terrorist groups, that said material support was essential to the operational capacity of those groups, and that attacks perpetrated by those groups in Iraq from 2003 to 2011 were the reasonably foreseeable and natural consequence of those defendants' material support. Order, ECF No. 127 (March 27, 2023). The Court withheld judgment as to whether the same could be said for Defendants Bank Markazi, Bank Melli, and the National Iranian Oil Company ("NIOC"). Id. at 3. While the Court found "satisfactory evidence in the record that Bank

Markazi and Bank Melli provided financial services, and that NIOC provided funding, to the Islamic Revolutionary Guard Corps and/or other Iranian entities, which in turn provided material support to the subject terrorist groups," the Court requested supplemental briefing from the plaintiffs as to whether those indirect activities constituted "material support" under the statute. Id.  Upon further consideration following that briefing, the Court finds that Bank Markazi and Bank Melli provided material support that foreseeably enhanced the capacity of the subject groups.  Based on the present record, however, plaintiffs have not adequately shown that NIOC provided material support during the relevant time period.  The Court therefore finds that it lacks subject-matter jurisdiction over NIOC under the FSIA's terrorism exception.

> I. **Legal Standard**

The FSIA defines "material support or resources" broadly as "any property, tangible or intangible, or service, including currency or monetary instruments or financial securities, financial services, [and] lodging[.]" Stansell v. Republic of Cuba, 217 F. Supp. 3d 320, 339 (D.D.C. 2016) (citing 28 U.S.C. § 1605A(h)(3) and 18 U.S.C. § 2339A).  Plaintiffs need not show that the defendants "specifically knew of or intended [their] support to cause" the particular attacks at issue.  Owens v. Republic of Sudan, 864 F.3d 751, 798–99 (D.C. Cir. 2017) ("Owens IV"), vacated and remanded on other grounds sub nom. Opati v. Republic of Sudan, 140 S. Ct. 1601 (2020).  Because "material support 'is fungible' and 'terrorist organizations can hardly be counted on to keep careful bookkeeping records,'" plaintiffs are only required to show that the material support was a proximate cause of their injuries.  Id. at 799 (quoting Kilburn v. Socialist People's Libyan Arab Jamahiriya, 376 F.3d 1123, 1130 (D.C. Cir. 2004)).  For material support to be a proximate cause of an act of terrorism, plaintiffs must show that the aid was a "substantial factor" in the events leading to the attack and that the injury was "reasonably foreseeable or anticipated as a natural consequence" of the defendant's actions.  Id. at 794 (quotations omitted);

see Force v. Islamic Republic of Iran, 464 F. Supp. 3d 323, 368 (D.D.C. 2020) (holding that "Iran's financial and military aid" were substantial factors in the alleged attacks because the aid "was essential to each group's operating capacity and that, without Iran's backing, both groups would be substantially weakened."). The evidentiary standard for these inquiries is "evidence satisfactory to the court." 28 U.S.C. § 1608(e).

## II. Analysis

### A. Bank Melli and Bank Markazi

Relying on several expert reports and official findings and statements by the United States Department of Treasury, plaintiffs present evidence that Bank Melli and Bank Markazi provided funding and financial services to the IRGC and other entities within Iran's terrorist network during the relevant period from 2003 to 2011. See, e.g., PX. 36, U.S. Dep't of the Treasury Fact Sheet at 3 (Oct. 25, 2007) ("From 2002 to 2006, Bank Melli was used to send at least $100 million to the [IRGC's] Qods Force. When handling financial transactions on behalf of the IRGC, Bank Melli has employed deceptive banking practices to obscure its involvement[.]"); PX. 51, U.S. Dep't of the Treasury Press Release at 3 (Nov. 5, 2018) ("Since the mid-2000s, Bank Melli increasingly provided services to Iranian military-related entities as they became further involved in all aspects of the Iranian economy. Bank Melli has enabled the IRGC and its affiliates to move funds inside and outside of Iran."); PX. 303, U.S. Dep't of Treasury Statement at 3 (July 12, 2007) (presentation by Under Secretary of the Treasury for Terrorism explaining that Iran "use[s] its banks to pursue not only its proliferation ambitions but also its funding of terrorism" and that Bank Markazi attempts to persuade other financial institutions to hide its involvement in transactions to evade international monitoring); PX. 122, U.S. Dep't of the Treasury Fact Sheet at 2–3 (describing how Bank Markazi has engaged in "deceptive practices" and provided "substantive assistance to minimize the impact of sanctions"

on other Iranian banks); PX. 1 (Clawson Decl.) ¶ 23 ("Iran has used Markazi for many years, including 2003-2011, to transfer funds to support terrorism."); U.S. Dep't of Treasury Statement at 3 (April 17, 2008) (testimony by Deputy Assistant Secretary for Terrorist Financing before the House Subcommittee on Terrorism, Nonproliferation and Trade explaining how Bank Markazi uses deceptive financial practices to "facilitate transactions for sanctioned Iranian banks"), https://perma.cc/2CNA-35CU.  At least one other court in this District, reviewing much of the same evidence before this Court, also found that Bank Markazi and Bank Melli contributed material support to Iran's terrorist network in Iraq during the same timeframe.  See Hake v. Bank Markazi Jomhouri Islami Iran, No. 17-cv-114 (TJK), 2022 WL 4130837, at *10 (D.D.C. Sept. 12, 2022) (finding Bank Markazi and Bank Melli provided material support to Shia terrorist cells that conducted attacks in Iraq from 2004 through 2011); see also Henkin v. Islamic Republic of Iran, 18-cv-1273, ECF No. 29, at 39–43, 46–48  (D.D.C. July 12, 2021) (finding that Bank Markazi and Bank Melli provided material support to Iran's terrorist activities, resulting in a 2015 terrorist attack carried out by Hamas in the West Bank).

That Bank Melli and Bank Markazi provided financial services and resources to the IRGC and other entities in Iran's terrorist network, which in turn trained and armed the terrorist groups alleged to have committed the bellwether attacks, does not lessen their culpability under the FSIA.  As noted by the D.C. Circuit, "the terrorism exception to the FSIA targets sovereign nations in an effort to deter them from engaging, either directly or *indirectly*, in terrorist acts." Owens IV, 864 F.3d at 776 (emphasis added).  To hold otherwise would allow bad actors to escape liability so long as they were not the final link in the causal chain of support for terrorism. Like others in this District, this Court holds that indirect provision of material support via an intermediary entity can trigger the terrorism exception to the FSIA.  See, e.g., Hake at *11 (D.D.C. Sept. 12, 2022) (holding Bank Melli, Bank Markazi, and NIOC provided material

support under the FSIA because they funded and provided financial services for Iranian intermediary organizations that were used to bolster terrorist groups); Flanagan v. Islamic Republic of Iran, 87 F. Supp. 3d 93, 106 (D.D.C. 2015) (finding Iran and its instrumentalities, IRGC and MOIS, provide material support by directly training Al-Qaeda operatives and providing support to Hezbollah, which in turn trained Al-Qaeda operatives); Henkin at 39–43, 46–48  (D.D.C. July 12, 2021) (finding that Bank Markazi and Bank Melli provided material support to Hamas via financing that passed through the IRGC and other banks).

      The Court emphasizes the importance of the foreseeability requirement for establishing indirect chains of material support for terrorism.  Evidence before the Court shows that Bank Melli provided material support to the IRGC, including the IRGC's Qods Force, which functioned as "the main Iranian organization supporting and directing those in Iraq attacking Americans."  PX. 3 (Piatetsky Decl.) ¶ 28.  The IRGC, in turn, has been designated a "Specifically Designated Global Terrorist" and a "Foreign Terrorist Organization" due to its longstanding support of terrorism.  See, e.g., PX. 21, U.S. Dep't of State, Designation of the IRGC at 1 (Apr. 8, 2019) ("[T]he IRGC, part of Iran's official military, has engaged in terrorist activity or terrorism since its inception[.]").  And by October 2007, the United States had found the IRGC's Qods Force to be a supporter of terrorism.  See PX. 135, Dep't of Treasury Press Release at 1 (May 10, 2018); U.S. Dep't of State Fact Sheet (Oct. 25 2007) ("[Today], [t]he Treasury Department also designated the [Qods Force] under E.O. 13224 for providing material support to the Taliban and other terrorist organizations[.]"), https://perma.cc/L7TY-3N9V.  Bank Melli's deliberate support to these known perpetrators and orchestrators of violence distinguishes this case from a bank's provision of routine financial services to groups that, unbeknownst to the bank, engage in terrorist activities.  Similarly, Bank Markazi and Bank Melli's use of deceptive banking practices to intentionally avoid international sanctions further demonstrates that their

financial support for Iran's terrorist network was distinct from customary banking activities. Based on plaintiffs' evidence (and the lack of any counter evidence from defendants), the Court finds it credible that Bank Markazi and Bank Melli were aware that the resources and financial services they provided to the IRGC's Qods Force and other entities would foreseeably be used to expand Iran's terrorism network. The Court further finds that Bank Markazi and Bank Melli's support, including the provision of funding and assistance in evading international sanctions, was a substantial factor in helping to grow Iran's terrorist network in Iraq during the relevant period. See, e.g., Clawson Decl. ¶¶ 122, 155–57, 216; Piatetsky Decl. ¶¶ 89, 99; PX. 6 (Rubin Decl.) ¶¶ 60, 72.

### B. National Iranian Oil Company

The Court cannot reach the same conclusion as to the National Iranian Oil Company ("NIOC") based on the current record. While plaintiffs and their experts have presented evidence that NIOC provided funding to the IRGC, the present record does not show that NIOC did so during the relevant period or that the purported funding facilitated the alleged attacks in any way. To start, scant record evidence suggests that NIOC was funding terrorism generally during the relevant period of 2003 to 2011 or that it provided aid that contributed to the operational capacity of the relevant terrorist groups here. Nearly all of plaintiffs' evidence regarding NIOC is from well before the relevant period or shows support after the attacks had already occurred. See, e.g., Piatetsky Decl. ¶ 63 ("In 1995, Under Secretary of State Peter Tarnoff testified before the Senate that 'a straight-line links Iran's oil income and its ability to sponsor terrorism, build weapons of mass destruction, and acquire sophisticated armaments.'"); PX. 125, U.S. Dep't of Treasury Press Release (Sept. 24, 2012) (Department of Treasury determined that NIOC was an "agent or affiliate" of the IRGC based on then-recent efforts by the IRGC to sell NIOC's oil to circumvent sanctions); Mot. Material Support at 126, ECF No. 84

("[I]n November 2012, NIOC was placed on the Office of Foreign Assets Control ('OFAC') List of Specially Designated Nationals and Blocked Persons ('OFAC SDN List') under Executive Order No. 13382 for NIOC's role in assisting the IRGC with the proliferation of weapons of mass destruction."). Missing, however, is credible evidence showing that NIOC's provision of funding to the IRGC could have been a substantial factor in supporting the attacks against American soldiers from 2003 to 2011.

Besides funding, Plaintiffs also theorize that NIOC provided direct support to the IRGC during the relevant period via the use of its helicopters and personnel. See Clawson Decl. ¶ 163 (relaying the anecdote from a colleague that NIOC helicopters had been seen in the area of IRGC arms smuggling routes). But plaintiffs' isolated and unsubstantiated anecdote is not sufficient to support that assertion. Even the expert who conveyed the anecdote admits that "such direct NIOC support for terrorism is more the exception than the rule." Id. ¶ 164. Accordingly, the Court is not satisfied on the current record that NIOC provided material support that was a substantial factor in growing Iran's terrorism network during the relevant period. Plaintiffs may supplement their evidence should they still seek to establish jurisdiction over NIOC.

### III. Conclusion

Accordingly, it is hereby

**ORDERED** that plaintiffs' [84] Motion Regarding Material Support is GRANTED in part and DENIED in part as to Defendants Bank Markazi, Bank Melli, and NIOC. The Court finds that Defendants Bank Markazi and Bank Melli have provided material support, as that term is used in 28 U.S.C. § 1605A(a)(1), to Iran's terrorist network during the relevant time period of 2003-2011. Further, the Court finds that said material support was a substantial factor in growing the operating capacity of Iran's terrorist network, and terrorist attacks involving Iran's network in Iraq during the relevant time period of 2003-2011 were reasonably foreseeable and a

7

natural consequence of that material support.  The Court cannot reach the same conclusions for Defendant NIOC on the current record.

**SO ORDERED.**

_____
CHRISTOPHER R. COOPER
United States District Judge

Date:   August 18, 2023