**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ESTATE OF CHRISTOPHER BROOK FISHBECK, et al.,**     ) | |
| ) | |
|     **Plaintiffs,**     ) | |
| ) | **Civil Action No. 1:18-cv-02248-CRC** |
|     **v.**     ) | |
| ) | |
| **THE ISLAMIC REPUBLIC OF IRAN, et al.,**     ) | |
| ) | |
|     **Defendants**     ) | |

**PLAINTIFFS' MOTION TO AMEND APPOINTMENT OF SPECIAL MASTERS FOR**
**NON-BELLWETHER LIABILITY & DAMAGES DETERMINATIONS**

Consistent with the discussion had at the hearing on August 30, 2023, Plaintiffs now submit this motion to request two things: 1) an order appointing three additional Special Masters, thereby bringing the total number of Special Master to nine; and 2) an order appointing the nine Special Masters to hear damages pursuant to 28 U.S.C. § 1605(A)(e).

**I.**     **Request to Appoint Three Additional Special Masters**

On August 30, 2023, following the hearing, the Court issued an order appointing six Special Masters "to determine defendants' liability for the non-bellwether attacks." ECF Doc. 139. In its order, the Court noted that "Plaintiffs may also seek to add additional Special Masters as necessitated by the demands of the case and should submit such recommendations to the Court." *Id.* Plaintiffs—having re-evaluated the scope of the case, the number of attacks, and the Special Masters' anticipated work—believe additional Special Masters are needed to facilitate the timely resolution of Plaintiffs' claims and increase the speed with which Plaintiffs can obtain final judgments. Plaintiffs therefore propose three additional candidates to be appointed as Special Masters for the purpose of assisting the Court with the determination of liability for claims related

1

to the non-bellwether attacks in this case. Plaintiffs further propose that the appointments be made under the terms set forth in the Court's Order Implementing Administrative Plan for Non-Bellwether Liability Determinations (ECF Doc. 140).

The candidates' professional biographies are set forth below, and their curriculum vitae are attached. They have reviewed this motion and the Administrative Plan and agree to the proposed duties and terms of compensation. None of these candidates is aware of "a relationship to the parties, attorneys, action, or court that would require disqualification of a judge under 28 U.S.C. § 455." Fed. R. Civ. P. 53(a)(2). Each candidate, if appointed, will submit a signed declaration disclosing any ground for disqualification under 28 U.S.C. § 455 and agreeing to abide by the Administrative Plan within thirty (30) days after entry of an order appointing that individual as a Special Master.

a. **Angela Gupta, Esq.**

Angela Gupta is a Managing Member of Associates in Dispute Resolution, LLC, where she practices exclusively in the neutral role. Ms. Gupta presently serves as Counsel to Special Master David R. Cohen in MDL 2804 – In re National Prescription Opiate Litigation, in the United States District Court for the Northern District of Ohio. Additionally, she is an Arbitrator with the American Arbitration Association and the Financial Industry Regulatory Authority, and a Due Process Hearing Officer for the Kansas State Department of Education. Previously, Ms. Gupta served as a career law clerk for the Honorable Kathryn H. Vratil in the United States District Court for the District of Kansas and was the primary law clerk for seven years in MDL 1840 - In re: Motor Fuel Temperature Sales Practices Litigation. She also practiced law in two Kansas City law firms and as an Assistant United States Attorney in the District of Kansas. Ms. Gupta has been practicing law for thirty-two years. She is active in bar leadership and currently serves as President

of the Federal Courts Advocates Section of the Kansas City Metropolitan Bar Association, Immediate Past President of the Johnson County Bar Association, and Secretary of the Earl E. O'Connor American Inn of Court. Ms. Gupta has been selected to serve a three-year term on the Bench-Bar Committee of the United States District Court for the District of Kansas and recently served on the Court's Magistrate Judge Merit Selection Panel.

### b.  Hon. Ellen Koblitz (Ret.)

Judge Koblitz served as a New Jersey Superior Court Judge for twenty-seven years, serving in every division: Civil, Criminal, Family and Chancery. She was a presiding trial judge for twelve of those years. She was then elevated to the Appellate Division by the New Jersey Chief Justice, where she served for ten years, the last two as Presiding Judge. When she left the bench in 2020, she joined the private law firm of Pashman Stein Walder Hayden, PC, where she assists the public interest Stein Center, as well as mediating and arbitrating in Civil and Family cases in State and Federal court and with the AAA. She also provides appellate consultation in all types of appeals. She is an adjunct professor at Rutgers Law School and has written many articles for the New Jersey Law Journal, primarily dealing with attorney and judicial ethics. She speaks at many CLE seminars and is the president of the Barry Croland Family American Inn of Court. After graduating from Yale Law School and before becoming a judge, Judge Koblitz spent seventeen years in the New Jersey Office of the Public Defender, in both the trial and appellate offices, heading up two county offices.

### c.  Jaime Dodge, Esq.

Jaime Dodge is the Director of Emory Law School's Institute for Complex Litigation and Mass Claims. Over the past two decades, Professor Dodge has served as an arbitrator/neutral and instructor in a variety of domestic and international settings, including as a mediator, facilitator,

arbitrator/neutral, and advisor. Most recently she served as the Special Master for *MDL 2924 – In Re: Zantac (Ranitidine) Products Liability Litigation*. Professor Dodge clerked for Judge Noonan on the Ninth Circuit Court of Appeals following her graduation from Harvard Law School. She also holds a Masters in Dispute Resolution from Pepperdine Law School, where she served as a Straus Institute Fellow. During her time in private practice, Professor Dodge primarily represented defendants in complex litigation and appellate matters, with notable exceptions such as her plaintiffs' side representation of an athlete before the U.S. Olympic Committee (USOC), where she successfully argued for broader due process rights for athletes. Prior to founding the Institute at Emory, Professor Dodge served as a faculty member at the University of Georgia, Peking University School of Transnational Law, and at Harvard Law School.

## II.      Request to Appoint Special Masters to Hear Damages

Plaintiffs also move this Court, pursuant to the case schedule (ECF Doc. 75), Fed. R. Civ. P. 53, and 28 U.S.C. § 1605(A)(e), for an order appointing the Special Masters to assist the Court in adjudicating the issue of damages. The case schedule provides in pertinent part that, 30 days after the Court enters a finding of liability, "Plaintiffs will file a motion for the appointment of Special Master to hear damages pursuant to 28 U.S.C. § 1605(A)(e)." Section 1605(A)(e) provides that "[t]he courts of the United States may appoint special masters to hear damage claims brought under this section."

### a.   Proposed Special Masters

Plaintiffs request the appointment of the nine individuals previously proposed to the Court. This includes the six Special Masters the Court recently appointed to assist with determining liability for the non-bellwether attacks (ECF Doc. 139) as well as the three individuals identified

above. These nine individuals have reviewed this motion and agree to the proposed duties and terms of compensation set forth below.

### b.  Powers and Duties

Plaintiffs propose the Special Masters be empowered to consider issues related to damages pursuant to the following powers and duties:

The Special Masters will consider and make recommendations to the Court related to compensatory and punitive damages.

The Special Masters will have authority to exercise all powers set forth in Rule 53(c), including but not limited to, if conducting an evidentiary hearing, exercising the Court's power to compel, take, and record evidence. If needed, testimony may be recorded by electronic means and the copy shall clearly identify the parties. All evidence will be preserved by Plaintiffs' counsel. *See Fritz v. Iran*, No. 15-cv-456-RDM, Order Appointing Special Master, ECF Dk. 87 (D.D.C. Aug. 1, 2018).

As to the admissibility of evidence, the Special Masters should liberally construe the Federal Rules of Evidence. Plaintiffs may prove their claims "using evidence that might not be admissible in a trial," because the Court is not required "to step into the shoes of the defaulting party and pursue every possible evidentiary challenge." *Owens v. Republic of Sudan*, 864 F.3d 751, 785 (D.C. Cir. 2017). As this Court did in the bellwether hearing, the Special Masters should be permitted to receive testimony by sworn declarations, including Plaintiffs' Facts Sheets, and accompanying materials for which declarants and Plaintiffs certify to the contents pursuant 28 U.S.C § 1746 and consider declarations or affidavits in lieu of live testimony. *See Lonnquist v. Islamic Republic of Iran*, No. 17-cv-1630 (JDB) (D.D.C. Feb. 11, 2020), ECF Dkt. No. 38; R. &

R. at 2, *Chogo v. Republic of Sudan*, No. 15-cv-951 (JDB) (D.D.C. Oct. 10, 2019), ECF Dkt. No. 41. *See also* 28 U.S.C. § 1746 (declarations have same legal effect as affidavits).

Plaintiffs should not be required to qualify documents as genuine pursuant to Federal Rule of Evidence 901. Instead, Plaintiffs' counsel requests permission to state that a proffered document is genuine and is an accurate copy of what counsel proffers it to be. *See Sheikh v. Republic of the Sudan,* No. 14-cv-2090-JDB, Order Adopting Administrative Plan, ECF Dkt. 44 (D.D.C. Aug. 29, 2019).

### c. Communications

Plaintiffs request that the Special Masters be permitted to communicate *ex parte* with the Court or with counsel for Plaintiffs if they determine it is reasonable and efficient. Similarly, the Court should permit counsel for Plaintiffs to communicate *ex parte* with the Special Masters, as well as allow the Special Masters to communicate *ex parte* with each other, as reasonably necessary to facilitate the carrying out of the Administrative Plan and the Special Masters' duties.

### d. Materials

In order to develop a scalable process that is efficient and satisfactory to the Court, Plaintiffs' counsel and the Special Masters will work together to develop the following materials:

- A standardized template for the report and recommendation for all Special Masters to use in addressing the damages issues. A uniform template will provide organizational uniformity, reduce the possibility of errors and delays, and promote the efficient and ease of review for the Court and parties when reviewing the reports and recommendations.

- A standardized format and method of presenting the damages evidence and materials, including declarations/affidavits, victim impact statements, medical records, and expert reports.

### e.  Reports

Special Masters shall submit their reports to the Court via ECF. The reports shall recommend findings of fact and conclusions of law regarding damages within the scope of the Special Masters' duties as detailed above.

The Special Master assigned to an attack for purposes of liability will also be assigned to that attack for purposes of damages. Accordingly, the Special Master who makes a liability recommendation will make a damages recommendation for all Plaintiffs harmed in that attack, including both direct and solatium victims. Plaintiffs and the Special Masters will work together should reassignment be necessary.

For the bellwether attacks, Plaintiffs will submit their damages evidence to the Special Masters as soon as feasible.

For the non-bellwether attacks, Plaintiffs will submit their damages evidence to the assigned Special Master to an attack within 60 days after Plaintiffs submit their liability evidence for that attack.

The Special Master will be required to file their damages report for the Plaintiffs harmed in an attack within sixty (60) days after Plaintiffs submit the damages evidence for those Plaintiffs. The Special Master will file a single damages report for all the Plaintiffs harmed in a given attack. If the Special Master requests additional information, Plaintiffs shall submit the requested information no later than thirty (30) days after the request, and the Special Master shall file the

completed report no later than thirty (30) days after Plaintiffs submit the additional materials/evidence.

The following illustrates the schedule for the initial tranches of non-bellwether attacks:

- December 15, 2024: Plaintiffs to submit liability evidence to the Special Masters.

- February 13, 2024 (*i.e.*, 60 days later):

  o Special Masters to file their reports and recommendations regarding liability for their assigned tranche-one attacks;

  o Plaintiffs to submit to the Special Master damages evidence for the Plaintiffs harmed in tranche-one attacks;

  o Plaintiffs to submit liability evidence to the Special Masters for the second tranche of non-bellwether attacks.

- April 15, 2024 (*i.e.*, 60 days later):

  o Special Masters to file their reports and recommendations regarding damages for the tranche-one Plaintiffs;

  o Special Masters to file their reports and recommendations regarding liability for their assigned tranche-two attacks;

  o Plaintiffs to submit to the Special Master damages evidence for the Plaintiffs harmed in the tranche-two attacks.

  o Plaintiffs to submit liability evidence to the Special Masters for the third tranche of non-bellwether attacks.

This every-60-day schedule will continue until all non-bellwether attacks have been considered by the Special Masters for liability and damages and their reports submitted to the Court for its consideration.

### f.  Standards of Review

Pursuant to Fed. R. Civ. P. Rule 53(f)(2), Plaintiffs may file an objection to a Special Master's report within twenty-one (21) days after the report is filed. The Court shall decide *de novo* all objections to findings of fact or conclusions of law made or recommended by the Special

Masters. The Court shall set aside a ruling by the Special Masters on a procedural matter only for an abuse of discretion. *See* Fed. R. Civ. P. Rule 53(f)(3), (4), and (5).

### g.   Protective Orders

Plaintiffs may provide documents to the Special Masters that are under seal. Plaintiffs' counsel will preserve for the Court all relevant evidence submitted to the Special Masters. The Special Masters shall comply with all applicable protective orders in this case.

### h.   Compensation

Fed. R. Civ. P. 53(g) directs the Court to "fix the master's compensation on the basis and terms stated in the appointing order" and mandates the compensation be paid either by the parties or "from a fund or subject matter of the action within the court's control." The Foreign Sovereign Immunities Act provides a source of payment. Specifically, 28 U.S.C. § 1605A(e)(2) provides:

> The Attorney General shall transfer, from funds available for the program under section 1404C of the Victims of Crime Act of 1984 (42 U.S.C. § 10603c [recodified at 34 U.S.C. § 20106(b)]), to the Administrator of the United States district court in which any case is pending which has been brought or maintained under this section such funds as may be required to cover the costs of special masters appointed under paragraph (1).

In turn, 34 U.S.C. § 20106(b) provides that the Director of the Office for Victims of Crime Act "may use the emergency reserve referred to in section 20101(d)(5)(A) of this title to carry out a program to compensate victims of acts of international terrorism that occur outside the United States for expenses associated with that victimization."

Plaintiffs propose the Special Masters be compensated for their work at an hourly rate equal ***to 50% of what their hourly rate would be*** under the Laffey Matrix. *See* http://www.laffeymatrix.com/see.html (last visited September 15, 2023). The Laffey Matrix— named after a case from the D.C. Circuit—is a fee schedule used by many federal courts (including

this one) for determining the reasonable hourly rates for attorney fee awards under fee-shifting statutes in complex federal litigation. *See Save Our Cumberland Mountains v. Hodel*, 857 F.2d 1516, 1525 (D.C. Cir. 1988) (en banc); *Covington v. District of Columbia*, 57 F.3d 1101, 1109 (D.C. Cir. 1995); *DL v. D.C.*, 924 F.3d 585 (D.C. Cir. 2019).

A rate equal to 50% of the Laffey Matrix rate would be $371/hour for Special Master Matthew Besser, who graduated from law school 19 years ago, and $447/hour for the other Special Masters, all of whom graduated from law school 20-plus years ago. *See* http://www.laffeymatrix.com/see.html (last visited September 15, 2023).[1]

Plaintiffs are mindful that, in other terrorism cases, judges in this District have authorized payment to special masters at half-day rates. For instance, Judge Lamberth issued an order this year appointing a special master under Section 1605(A)(e) and authorizing compensation at a rate of $600 for a half-day of work (*i.e.*, up to four hours per day) and $1,200 for a full day of work (*i.e.*, four to eight hours in a day). *See Stearns v. Iran*, 1:17-cv-131-RCL, Doc. 52 (D.D.C. Feb. 21, 2023). Yet undersigned counsel is not aware of any legal authority—no statute, regulation, or case law—mandating a certain compensation rate or a particular method of compensation for special masters appointed under Section 1605(A)(e). Plaintiffs believe an hourly rate is the most fair and appropriate method of compensation under the circumstances. Indeed, the proposed rate— **half the Laffey Matrix rate**—is rather modest considering all facts. The purpose of the fund is to support crime victims, including victims of acts of terrorism. 34 U.S.C. §§ 20101, 20105. That

---

[1] The hourly rate is based on the year this case was filed rather than the current year. See *B.J. v. D.C.*, No. 19-CV-2163-TSC-ZMF, 2020 WL 8512639, at *2 (D.D.C. Nov. 9, 2020), report and recommendation adopted, No. 19-CV-2163-TSC-ZMF, 2021 WL 5992052 (D.D.C. Feb. 10, 2021) (noting the applicable hourly rate is based on the year in which the action was filed, rather than the year in which the work occurred). The proposed hourly rate is therefore less than what the rate would be today.

purpose is served by fairly remunerating the Special Masters who have agreed to assist this Court with this large, complex case.

Finally, Plaintiffs propose the following procedures for payment of the Special Masters' compensation. Within thirty (30) days after a Special Master files a damages report with respect to an attack, that Special Master shall provide Plaintiffs' counsel with a statement itemizing the amount of time worked and the nature of the work done in relation to that report. Such statements shall include a calculation of the total payment sought. Within two weeks of receiving any such statement, Plaintiffs shall file a motion with the Court seeking an order directing the Clerk to coordinate payment with the Office for Victims of Crime.

### III.    Conclusion

WHEREFORE, for the foregoing reasons, Plaintiffs respectfully move this Court for an order appointing three additional Special Masters—Angela Gupta, Esq., Hon. Ellen Koblitz (Ret.), and Jaime Dodge, Esq.—to assist the Court, pursuant to the Administrative Plan (ECF Doc. 140), with the determination of liability for claims related to the non-bellwether attacks in this case.

In addition, Plaintiffs respectfully move the Court for an order appointing these three individuals, as well as the six previously appointed Special Masters, to assist the Court with the determination of damages under the terms set forth above.

Finally, Plaintiffs will keep the Court apprised of the Special Master assignments in Plaintiffs regular status reports.

A proposed order is attached.

Dated: September 15, 2023

Respectfully submitted.

By: */s/ Jeremy A. Tor*
Jeremy A. Tor (Pro Hac Vice)
Ohio Bar No. 0091151
**SPANGENBERG, SHIBLEY & LIBER LLP**
1001 Lakeside Ave., East., Suite 1700
Cleveland, Ohio 44114
Telephone: (216) 696-3232
Facsimile: (216) 696-3924
Email: jtor@spanglaw.com

*-and-*

*/s/ Chad E. Ihrig*
Chad E. Ihrig (*Pro Hac Vice*)
Texas Bar No. 2408437
Nix Patterson, LLP
8701 Bee Cave Road
Seven Oaks East, Suite 500
Austin, Texas 78746
Fax: 512.328.5335
Tel: 512.328.5333

*Counsel for Plaintiffs*