UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ESTATE OF CHRISTOPHER BROOK FISHBECK, et al., )<br><br>Plaintiffs, )<br><br>v. )<br><br>THE ISLAMIC REPUBLIC OF IRAN, et al., )<br><br>Defendants )<br><br>This Document Relates To:<br>OCTAVIO SANCHEZ, VANETTE C. SANCHEZ, JACOB ANDREW SANCHEZ, & OCTAVIO MANUEL SANCHEZ, J.S., A MINOR CHILD | Civil Action No. 1:18-cv-2248-CRC<br><br>Judge Christopher D. Cooper<br><br>Special Master Matthew D. Besser |

### Report and Recommendation
### Wave 1 Attack Number 20

In its August 30, 2023, the Court assigned the Special Masters to review non-bellwether attacks and to make certain findings of fact and conclusions of law. ECF No. 140. For each attack, the Special Masters are to make or recommend findings of fact as to: (a) the terrorist group involved in the commission of the attack; (b) the personal injuries or deaths that occurred from the attack; and, (c) the relationship of the victims of the attack to the respective plaintiffs. *Id*. at 2. The Special Masters are to then make or recommend conclusions of law as to whether: (a) the attack involved a group that received material support from Defendants; (b) the attack involved an act listed in 28 U.S.C. § 1605A(a)(1); and, (c) Defendants' provision of material support was a proximate cause of the attack. *Id*. In accordance with this Court's order, the undersigned submits the following report and recommendation regarding wave 1 attack number 20.

**Recommended Findings of Fact**

Former Marine Corps Sergeant Octavio Sanchez seeks recovery for the severe injuries he suffered in a complex IED attack while deployed in Ramadi, Iraq. His wife, Vanette Chistine Sanchez, and children, Jason Andrew Sanchez and Jaslyn Sanchez, also seek recovery as solatium plaintiffs. *See* PX5109 at 2.

On June 16, 2005, Sgt. Sanchez and his unit were searching an agricultural area for insurgent weapons. PX5106, Octavio Sanchez Decl. at ¶ 6. He was truck commander in the first vehicle of a four-vehicle convoy. *Id*. While returning to base, Sgt. Sanchez's Humvee crossed a railroad track. *Id*. at ¶ 7. Shortly after that, an IED consisting of several 155-milimeter artillery shells daisy-chained together exploded. *Id*.; PX5104, SigAct Report; PX5108, Report of Col. Mark Lee Walters, CW4 Ronald Evans, and CW3 David Sultzer at pg. 2. The force of the blast launched the vehicle 30 feet into the air before it landed upside down. PX5106 at ¶ 7. The explosion killed one of his fellow soldiers in the Humvee. *Id*. at ¶ 8. As he crawled out of the upside-down vehicle, Sgt. Sanchez realized he was on fire. *Id*. Two marines came to his rescue and put out the flames using a fire extinguisher. *Id*. At the same time, however, insurgents attacked from multiple directions with small-arms fire. PX5105, Sgt. Tracy Reddish Decl. at ¶ g; PX5106 at ¶ 7. After 15 to 20 minutes, the insurgents retreated and Sgt. Sanchez was evacuated back to Camp Ramadi. *Id*. at ¶¶ g, j; PX 5108 at 2. From there, he was medically evacuated to Landstuhl Regional Medical Center before being transported to Brook Army Regional Medical Center in San Antonio. PX 5106 at ¶ 10.

Sgt. Sanchez suffered third-degree burns to 67% of his body. PX5110, VA Findings of the Physical Evaluation Board. In addition to the severe burns, the VA found that Sgt. Sanchez suffered a litany of other injuries from the attack, including: heterotopic ossification of his left forearm and elbow; compartment syndrome in all four limbs; and, acute stress disorder. *Id*. To

2

compound matters, he also lost fingers on both hands. PX5106 at ¶¶ 10–11. Sgt. Sanchez's right hand had "little to no motion and function" and was "terribly painful." *Id*. at ¶ 10. In August 2006, he had the hand amputated at the wrist. *Id*. He had to have fingers on his left hand amputated as well, and the remaining ones "are limited in motion." *Id*. at ¶ 11. In all, Sgt. Sanchez underwent four months of inpatient treatment and several years of outpatient treatment for his injuries. PX5106 at ¶ 10.

Plaintiff attributes the attack to AQI. To determine whether a terrorist group receiving material support from Defendants was responsible for the attack, this Court's order on the bellwether attacks counsels consideration of several factors, including:

(1) whether the tactics, methods, or weapons used in the attack could be linked to the groups Iran supported;

(2) whether the attack occurred in an area operationally controlled by one of the subject terrorist groups Iran supported;

(3) whether an expert credibly opined that the attack was committed by an Iran-backed terrorist group; and

(3) any other indicia that one of the subject terrorist groups was responsible for the attack.

ECF No. 137 at pg. 7. When considering these factors, the evidence shows it is more likely than not that AQI was responsible for the attacks.

Plaintiffs' experts conclude that AQI executed the attack, first basing that opinion on the location and timing of the attack. PX5108 at pg. 13. On these points, the Court has already found that AQI "was the dominant insurgent actor in the area" and conducted multiple attacks in the area during this time period. ECF No. 137 at 12 (regarding the April 2005 artillery attack on Camp Ramadi). The expert report concludes likewise, explaining that "AQI was the strongest organization" in the Al Anbar Province and enjoyed relative freedom of movement there.

PX5108 at 12. At the same time, relying on declassified CENTCOM materials, the experts note that other insurgent groups ordered a ceasefire several months earlier, making it more likely than not that AQI perpetrated the attack. *Id*. at 10.

As for weapons and tactics, the report states that "a successful execution of this type of IED attack required discipline, training, and synchronization which was a hallmark" of AQI at the time. *Id*. at 13. What's more, the experts state that AQI was known for the sort of planning, surveillance, and evidence gathering necessary to carry out the attack without being captured. *Id*. at 11–12. Plaintiffs have also submitted evidence that AQI used IEDs and ambushes in Al Anbar Province. PX6, Report of Dr. Michael Rubin at 91. The combination of these facts supports Plaintiff's contention that it was AQI who committed the attack.

Accordingly, based on the totality of the evidence, it is more likely than not that AQI was responsible for the attack that injured Sgt. Sanchez.

## Recommended Conclusions of Law

The Court has previously determined that AQI received material support from Defendants. *See* ECF No. 137. The IED attack falls squarely within the exceptions from immunity in 28 U.S.C. § 1605A(a)(1). The expert report submitted for this attack concludes that Iran's provision of material support was a proximate cause of the attack, citing the attack's "coordination, precision, and lethality." PX5108 at 13. That conclusion appears well-founded

## Recommendation

Based on the foregoing, I recommend that the hold Defendants liable for the attack that injured Sergeant Octavio Sanchez and enter judgment in his favor and in favor of his related solatium Plaintiffs.

February 13, 2024                                   Respectfully submitted,

 

 

_____
Matthew D. Besser,
Special Master

5