UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ESTATE OF CHRISTOPHER BROOK FISHBECK, et al.,** )<br> )<br>Plaintiffs, )<br> )<br>v. )<br> )<br>**THE ISLAMIC REPUBLIC OF IRAN, et al.,** )<br> )<br>Defendants )<br> )<br>**This Document Relates to Plaintiffs:** )<br>**Daniel James Griego, Amy Griego, Lena Parker,** )<br>**Fred Griego, Cynthia Leonard, Priscilla Evans,** )<br>**Noah James Griego, Anthony Lee Miele,** )<br>**Michael Anthony Mendoza, Kelly Mendoza,** )<br>**S.M.M., Minor Child, Tyler David Neumeister,** )<br>**Elyse Fink, Shoshone Nadene Boudreau,** )<br>**Kimberlee Morgan Hinkley, Blair Ellis Dell,** )<br>**Candus Angel Dell, Valerie Jade Dell,** )<br>**The Estate of Patrick Marc M. Rapicault,** )<br>**Vera Rapicault, Nicole Rapicault,** )<br>**Donnell Drail Nelson II & Daniel Joel Foster** ) | Civil Action No. 1:18-cv-2248-CRC<br><br>Special Master Michael J. Borden |

**REPORT AND RECOMMENDATION REGARDING
DEFENDANTS' LIABILITY FOR WAVE 1 ATTACKS 3, 11, 18, & 22**.

In this case, over 1400 plaintiffs bring claims against Iran and its alleged instrumentalities under the terrorism exception to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605A, seeking damages resulting from death or injury caused to United States servicemembers in over 400 terrorist attacks during operations in Iraq from 2003 to 20011.[1]  The Court has found

---

[1] See Plaintiffs' Second Amended Complaint (Doc. 100). Defendants in the case include: Islamic Republic of Iran ("Iran"), Islamic Revolutionary Guard Corps ("IRGC"), Iranian Ministry of Intelligence & Security ("MOIS"), Bank Markazi Jomhouri Islami Iran ("Bank Markazi"), Bank Melli Iran ("Bank Melli"), and National Iranian Oil Company ("NIOC"). See id. The Court has found sufficient evidence demonstrating that all defendants, except NIOC, provided "material support" to various terrorist groups within the meaning of 28 U.S.C. § 1605A(a)(1). See Order at 2 (Doc. 127) (Iran, IRG, and MOIS); Memorandum Opinion and Order at 2-7 (Doc. 136) (Bank

1

defendants liable for providing "material support" for 12 of 15 bellwether terrorist attacks. Order at 2 (Doc. 127). Memorandum Opinion and Order at 8-28 (Doc. 137). Subsequently, the Court appointed several Special Masters, including the undersigned, to, *inter alia*, assist the Court with determining liability for claims related to non-bellwether attacks in the case. Order Appointing Special Masters for Non-Bellwether Liability & Damages Phase at 1 (Doc. 145). This report and recommendation addresses defendants' liability for Attacks 3, 11, 18, and 22 in the Wave 1 submissions. For reasons set forth below, the undersigned recommends the Court enter an order holding defendants liable for the attacks.

I. **Legal Standards**

In assessing liability, the undersigned is guided by (1) the provisions of 28 U.S.C. §1605A; (2) this Court's prior findings of fact, conclusions of law, and other relevant orders; and (3) other relevant precedent. See Order Implementing Administrative Plan for Non-Bellwether Liability Determinations ("Administrative Order") at 2 (Doc. 140). The Court has already found the defendants were properly served and the criteria for establishing subject matter jurisdiction have been met. See Memorandum Opinion and Order at 2-3 (Doc. 137). Accordingly, the undersigned focuses his analysis on whether each attack was committed by a terrorist group that received material support from the defendants. See id. at 3 ("all that remains is for the Court to determine whether each bellwether attack was committed by a terrorist group that received material support from the defendants"). The Court has previously found that the defendants provided material

---

Markazi and Bank Melli). The Court invited plaintiffs to supplement their evidence regarding NIOC. Memorandum Opinion and Order at 7 (Doc. 136).

support to the two terrorist groups alleged to have carried out the attacks addressed in this report and recommendation. See Order at 2 (Doc. 127).[2]

II.   Analysis

A.   <u>Wave 1 Attack 3: April 7, 2004 attack near Fallujah.</u>

On April 7, 2004, Plaintiffs Gunnery Sergeant Daniel Griego, Private First Class Anthony Miele, Sergeant Michael Mendoza, Lance Corporal Tyler Neumeister, and Hospital Corpsman Blair Dell (collectively, the "Attack 3 Plaintiffs") were all injured during a complex coordinated attack involving small arms fire, mortars, rocket propelled grenades (RPGs) and improvised explosive devices (IEDs) that occurred approximately seven miles south of Fallujah, Iraq. (2004.04.07 Attack Brief ("Attack 3 Brief") at 1). In the early afternoon of April 7, 2004, GySgt Griego, PFC Miele, Sgt. Mendoza and HM2 Dell were part of a convoy that included several Humvees "conducting reconnaissance and security as part of a larger mission to move their firm base from Camp Fallujah to the Rock ASP in Fallujah as part of Operation Vigilant Resolve." (PX3002 – Declaration of Daniel Griego). GySgt. Griego was in one vehicle, Sgt. Mendoza was in another, PFC Miele and HM2 Dell were in a third, and LCpl. Neumeister was providing air support from a helicopter. (*Id.* at 1; PX3202 – Declaration of Blair Ellis Dell at 1; PX3103 – Declaration of Michael Anthony Mendoza at 1; PX3150 – Declaration of Tyler David Neumeister at 1).

While traveling approximately seven miles south of Fallujah on an open road that left them exposed to attack, the first three vehicles in the convoy were struck by machine gun fire and RPGs.

---

[2] Plaintiffs allege Attacks 3, 11, and 18 were carried out by Al Qaeda in Iraq, and Attack 22 was carried out either by Al Qaeda in Iraq or Ansar al-Sunna (also known as Ansar al-Islam). The Court has found defendants provided material support to both of these terrorist groups.

3

(PX3002 – Griego Declaration at 1). The land-based Attack 3 Plaintiffs dismounted from their vehicles and returned fire upon the enemy, with LCpl. Neumeister's helicopter landing to assist with evacuation. (PX3150 – Neumeister Declaration at 1). Numerous American combatants were injured, and one, Capt. Brent Morel was killed during this attack. *Id*. at 1-2.

Plaintiffs' expert attributed the attack to Jamaat al-Tawhid wa-l-Jihad (JTJ), the organization that later came to call itself al-Qaeda in Iraq ("AQI").[3] (Expert Report of Daveed Gartenstein-Ross, Ph.D. ("Attack 3 Expert Report")). The expert's conclusion is based on the tactics, techniques, and procedures ("TPPs") employed in the attack, as well as the geographic location and time period of the attack. The expert points out that Attack 3 took place shortly after the onset of the First Battle of Fallujah, which began on April 4, 2004. *Id.* Additionally, the expert explained that, according to a CENTCOM report:

> From the very beginning, AMZ [Abu Musab al-Zarqawi] planned to use Fallujah, the heart of the Sunni Triangle, as his center of operations in Iraq. By the time that Baghdad fell to Coalition forces, his network stockpiled tons of arms and munitions in 3-5 locations around the city. By September of [2003], AMZ was conducting training sessions for his fighters on the town's outskirts. Throughout the insurgency, Fallujah remained one JTJ/AQI's major strongholds and bases of support, despite coalition operations that have temporarily dislodged the rebels. Moreover, the organization enjoyed considerably more popular support in Fallujah than in any other major locale.[4]

(PX2950 – Expert Report) at 6. The expert concluded that "JTJ established a strong operational influence in Fallujah during the period when this attack occurred and was motivated to conduct the attack." *Id*. at 8.

---

[3] JTJ was the name the Zarqawi Organization operated under at the time of this attack. In October, 2004, the Zarqawi organization underwent a name change when the group formally pledged baya (allegiance) to al-Qaeda, changing its name from Jamaat al-Tawhid wa-l-Jihad (JTJ) to Tanzim Qa'idat al-Jihad fi Bilad al-Rafidayn (al-Qaeda in Iraq). As this attack occurred before the group rebranded as AQI, this attribution refers to the group as JTJ. PX2950, p. 5

[4] PX937 – CENTCOM, "Insurgent Group Profile: Al Qaeda in Iraq (AQI)," May 2, 2007, pp. 2, 3, https://ahec.armywarcollege.edu/CENTCOM-IRAQ-papers/0592.%20aqi.pdf.

4

Moreover, the expert explained that the TPPs used in this attack were "commonly associated with JTJ." *Id*. Consistent with the description of the attacks culled from the victims' declarations, the expert noted that the "perpetrators conducted an ambush attack involving IEDs and small arms fire, including RPGs, machine guns, and AK-47s. JTJ commonly carried out similar attacks." *Id.* at 7.

Finding the conclusions of the expert credible, the undersigned is satisfied that there is sufficient evidence to attribute Attack 3 to JTJ, which received material support from the defendants, and recommends the Court hold the defendants liable for Attack 3.

### B. Wave 1, Attack 11: November 15, 2004 in Al Anbar, Iraq

Plaintiff Captain Patrick Rapicault was killed on November 15, 2004, in or near Ramadi by a suicide/vehicle-borne IED (SVBIED) while returning from a completed mission in a convoy on the Main Supply Route from Hurricane Point. Captain Rapicault was serving as an infantry officer when he was killed in action. While returning from completing a clearing operation, the convoy encountered a white sedan parked by the side of the road. As Captain Rapicault's vehicle neared the sedan, the sedan began moving slowly then accelerated and turned into Captain Rapicault's vehicle and detonated, completely destroying Captain Rapicault's vehicle. The blast instantly killed two of the five passengers, and wounded Captain Rapicault, who later died from his injuries. *Id*. Radwa

Plaintiff's experts attributed the attack to Al-Qaeda in Iraq ("AQI")[5] based on the location and timing of the attack, and the tactics and weapons used. (PX4111 – Expert Report of M. Lee Walters, Ron Evans, and David Sultzer ("Attack 11 Expert Report")). In November 2004, Ramadi was a base of attack for AQI. *Id.* at Specifically, the experts explained that by the second half of

---

[5] As noted above, by October 2004, JTJ had changed its name to al-Qaeda in Iraq ("AQI").

2004, AQI had dispatched many of its fighters from Fallujah to Ramadi as a result of successful attempts by US forces to dislodge them from Fallujah. (PX4111 – Attack 11 Expert Report at 9; PX901 CENTCOM Study of the Insurgency in Anbar Province, Iraq – Chapter 4 at 46-47).

The experts concluded that the use of the SVBIED "was a unique and hallmark tactic, technique, and procedure (TTP) of Zarqawi's Al Qaeda in Iraq (AQI)." (PX4111 – Attack 11 Expert Report at 12). The experts further explained that commanders in Iraq were aware of the threat of SVBIEDs, noting that the 1st Marine Division Commander warned his command that AQI "have used parked cars as SVBIEDs to attack the second and third vehicles in convoys as they drive past, either by detonating near a passing vehicle or by suddenly pulling into the convoy" and detonating. *Id*. at 5.[6] Moreover, captured Zarqawi deputy Sami Mohammed Ali Said al-Ja'af, an explosives expert, "confessed to building 75% of all car bombs (VBIEDS) used in Iraq since OIF [Operation Iraqi Freedom]." *Id*. at 11.

Given the location of the attack in an AQI stronghold, the resemblance of the attack to others perpetrated by AQI, credible attribution by the experts, supporting, consistent evidence from a military study, and the confession from the Zarqawi deputy, the undersigned is satisfied that there is sufficient evidence to attribute Attack 11 to AQI, which received material support from the defendants, and recommends the Court hold the defendants liable for the attack.

C. **Wave 1, Attack 18: May 9, 2005 – IED attack in Ar Radwaniyah, Anbar Province, Iraq**

Plaintiff Lance Corporal Donnell Nelson, II, was injured in an IED attack in the area of Ar Radwaniyah, Anbar Province, on May 9, 2005. (PX4801 – Declaration of Donnell Drail Nelson at 1). LCpl Nelson, serving as a machine gunner, and his fellow Marines were returning to their base

---

[6] Citing I MEF Situation Report, From 151900CNOV04 to 161900CNOV04, DTG162200CNOV04.

6

after a combat patrol in a four-vehicle formation when his vehicle struck an IED. *Id.* The IED, which contained multiple propane tanks and at least three 155mm high explosive artillery rounds, detonated and caused an explosion that flipped his vehicle upside down and "catastrophically destroyed" it. *Id.* at 1-2. LCpl. Nelson declared that he learned during a debriefing that "the IED was set up to detonate under pressure and designed to dismantle and destroy armored fighting vehicles. *Id.* at 2. LCpl. Nelson sustained significant physical injuries in the attack, as did the other members of his crew. *Id.* Private First Class Stephen Baldwyn died from the injuries he suffered during the attack. *Id.*

Plaintiff's expert Daveed Gartenstein-Ross attributed the attack that Injured LCpl. Nelson and killed PFC Baldwyn to AQI. (PX4816 – Expert Report of Daveed Gartenstein-Ross at 1 ("Attack 18 Expert Report")). Specifically, the expert relied on slides presented at a Department of Defense press briefing during which Principal Deputy Assistant Secretary of defense of Public Affairs Lawrence Di Rita explained the "considerable capacity AQI had to make and distribute [IEDs] in and around Fallujah in late 2004." *Id.* at 5 (quote of expert, not Mr. Di Rita). The expert explained that after the Second Battle of Fallujah, "AQI was forced to disperse from the city into other towns along the Euphrates, to include Radwaniyah." *Id.* He further noted that the "Second Battle of Fallujah had concluded approximately three months prior to [Attack 18], but the enemy still posed a significant threat to the security environment in the towns along the Euphrates River like Radwaniyah." *Id*. at 7.

With respect to TPP pointing to AQI, the expert relied on a February 3, 2004 Combined Joint Task Force ("CJTF") report titled "Future Al-Qaida and Zarqawi Network Operations in Iraq." This report found that AQI and the Zarqawi network have "demonstrated capacities not normally associated with Former Regime Elements, to include large-scale directional charging and

7

mixing of explosive combinations to overcome force protection measures or target construction. These attacks, moreover, have been characterized by meticulous planning and pre-operational surveillance and intelligence gathering." (PX932 – CJTF7 Red Cell AQ Zarqawi Targeting Paper at 2-3). The expert concluded that the planning and explosive composition evidenced in this attack is consistent with the capacities of AQI as described by the CJTF report. (PX4816 – Attack 18 Expert Report at 12). Specifically, the expert noted that the "AQI cell that executed this attack had access to very large munitions and time to emplace the IED on a well-trafficked road without detection. This demonstrates that the AQI cell had freedom of movement and time to emplace this significant IED with impunity." *Id.* The expert further explained that "the fact that the enemy force overwatching the IED was not captured/found supports the conclusion that the perpetrators of the attack benefitted from a permissive environment for their illicit activities and operated with impunity in the immediate area of the attack." *Id.*

Attack 18 presents a close call and it is questionable whether this evidence would preponderate in a contested proceeding. However, given the sophistication of the attack and its location some 20-30 miles east of Fallujah at a time when AQI had recently been routed from Fallujah, as well as Mr. Di Rita's presentation about AQI's capacities in the region at the time of the attack, the undersigned is satisfied that there is sufficient evidence to attribute Attack 18 to AQI, which received material support from the defendants, and to hold the defendants liable for the attack. The undersigned recommends the Court hold the defendants liable for Attack 18.

**D. Wave 1, Attack 22: August 1, 2005 – SVBIED and IED Attacks in Hit, Anbar Province, Iraq**

Plaintiff Lance Corporal Daniel Foster was injured in two related attacks on August 1, 2005 in Hit, Anbar Province. (PX5300 – Declaration of Daniel Joel Foster at 1-3). LCpl. Foster was serving as an assaultman and was patrolling the city of Hit in a convoy that included four armored

8

Humvees. *Id.* at 1. LCpl Foster's team were on patrol when they learned that six U.S. Marine Snipers had been killed and their bodies were being dragged through the streets. *Id.* at 1-2. LCpl Foster's team was dispatched to locate the bodies and the terrorists involved in their deaths. *Id.* LCpl Foster's unit was performing a vehicle checkpoint when it stopped a group of four to five vehicles for inspection. *Id.* at 2. During the stop, one of the vehicles, which turned out to be a SVBIED, detonated, severely injuring and killing one of the marines in the Humvee closest to the SVBIED, and causing LCpl Foster to hit his head on the steering wheel of his Humvee, which was approximately 75 meters away from the SVBIED. *Id*. LCpl. Foster and his fellow Marines dismounted and assisted their injured colleagues, all the while fighting off the terrorists to create a perimeter sufficient for a helicopter to land to medevac the injured Marines. *Id.* The Marines were able to load their injured fellows onto the helicopter. Sgt. James Graham's dead body was among the bodies loaded onto the helicopter. *Id.*

The evacuation was successful and LCpl. Foster and the other Marines were able to get back in their Humvees and make their way toward their operating base. *Id*. Along the way, they were again ambushed by an IED and small arms fire from insurgents in trees on both sides of the road. *Id.* LCpl. Foster was able to drive through the attack while his fellow Marines returned fire. Eventually, they returned to their base. *Id.*

Plaintiff's expert Daveed Gartenstein-Ross attributed the attack to either AQI or Ansar al-Sunna ("AAS")[7] based on the timing and location of the attacks and the tactics, techniques, and procedures involved. (PX5304 – Expert Report of Daveed Gartenstein-Ross at 3 ("Attack 22

---

[7] The expert explained that Ansar al-Sunna is the same terrorist organization as Ansar al-Islam ("AAI"), which adopted the name Ansar al-Sunna on September 20, 2003. The expert uses the name AAS, but notes that some of his sources use AAI. (PX5304 – Expert Report of Daveed Gartenstein-Ross at 3).

Expert Report")). According to a report by the U.S. Army War College, by April 2005 Hit had fallen under the control of AQI.[8] Plaintiff's expert explained that by April 2005, AAS and AQI were in close collaboration in the area. *Id*. at 4. According to a CENTCOM report:

> In western Anbar, AQI and Ansar al-Sunna showed a level of cooperation not seen elsewhere in Iraq extending down to street level joint operations in the Hit-Haditha corridor. Together, the two groups provided one another with enhanced early warning against coalition raids, assisted in the movement of fighters and contributed to the other's ability to mass.

(PX900 – CENTCOM Study of the Insurgency in Anbar Province – Chapter 5 at 46).

The expert also explained that both AQI and AAS used SVBIEDs and small arms to carry out attacks. (PX5304 – Attack 22 Expert Report at 6). The CENTCOM report detailed the division of territory between AQI and AAS in the Hit-Haditha area: "Each group controlled 'turf' by assigning cells to specific areas to carry out surveillance and small arms, IED, or mortar attacks." (PX900 – CENTCOM Study of the Insurgency in Anbar Province – Chapter 5 at 92). Finally, both AAS and AQI claimed responsibility for aspects of the attack, with AAS claiming to have killed the six Marines LCpl. Foster's unit went out to locate,[9] and AQI claiming responsibility for the SVBIED attack.[10]

The undersigned finds this evidence credible and is satisfied that either AQI or AAS, or both, are responsible for Attack 22 based on the time and place of the attack and the TPP. As both AQI and AAS received material support from the defendants, the undersigned recommends that the Court hold the defendants liable for Attack 22.

---

[8] PX241 – Joel D. Rayburn & Frank K. Sobchak, *The U.S. Army in the Iraq War Volume 1: Invasion – Insurgency – Civil War, 2003-2006*, (Carlisle Barracks, PA: US Army War College, January 17, 2019) at 419.
[9] PX5316 – Dexter Filkins, "6 Marine Snipers Are Slain in Ambush in Western Iraq; Another Dies in Suicide Attack," *New York Times*, August 3, 2005.
[10] *Id*. The Filkins article reports that "Al Qaeda of Mesopotamia" claimed responsibility for the attack, but the expert appeared to treat that name as an equivalent of AQI. The undersigned is not disturbed by the variation in the name.

### III.     Conclusion

Based on the foregoing analysis, the undersigned recommends that the Court enter an order holding defendants liable for Wave 1 Attacks 3, 11, 18, and 22.

### REVIEW BY DISTRICT COURT

Pursuant to this Court's orders governing special masters and implementing the administrative plan for this case (Doc. Nos. 139, 140, and 145), plaintiffs may file an objection to, or motion to modify/adopt, a finding, report, or recommendation by a Special Master within twenty-one (21) calendar days of the date it was electronically filed. The Court shall decide *de novo* all objections to findings of fact or conclusions of law made or recommended by the Special Master. The Court shall set aside a ruling by the Special master on a procedural matter only for an abuse of discretion. *See* Fed. R. Civ. P. Rule 53(f)(3), (4), and (5).

Dated: February 23, 2024                                    Respectfully Submitted,

*/s/ Michael J. Borden*
Michael J. Borden
Special Master