UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ESTATE OF CHRISTOPHER BROOK FISHBECK, et al.**,<br><br>Plaintiffs,<br><br>v.<br><br>**THE ISLAMIC REPUBLIC OF IRAN, et al.**,<br><br>Defendant. | Case No. 18-cv-2248 (CRC) |

## MEMORANDUM OPINION

Plaintiffs in this case, numbering over 1400, seek damages resulting from the death or injury of members of the U.S. military in terrorist attacks in Iraq from 2003 to 2011. Under the Foreign Sovereign Immunities Act ("FSIA"), a foreign state that has been designated by the U.S. government as a sponsor of terrorism and that provides "material support" for extrajudicial killings is subject to the jurisdiction of the courts of the United States. See 28 U.S.C. § 1605A. Pursuant to this statute, Plaintiffs bring claims against Iran and a number of its instrumentalities, who they allege provided funding, weapons, and logistical support to the terrorist organizations and militia groups responsible for over 400 attacks. As usual in these types of cases, of which there are many, Iran and its instrumentalities have failed to appear.

Plaintiffs first selected fifteen representative "bellwether" attacks for the Court's determination of liability. Bellwether Selection Brief, ECF No. 92. Following extensive evidentiary submissions and a three-day hearing, the Court found personal and subject matter jurisdiction over all but one of the defendants, see Op. & Order, ECF No. 126; Mem. Op. & Order, ECF No. 136, and entered a default judgment holding those defendants liable for twelve of the attacks, see Mem. Op. & Order, ECF No. 137. It then appointed nine special masters to

provide reports and recommendations related to damages for the bellwether attacks and to provide both liability and damages assessments for the remaining attacks.  Order, ECF No. 145.

Now before the Court is the Plaintiffs' motion to adopt the special masters' reports and recommendations for the twelve bellwether attacks as to which the Court has found liability, as well as their liability and damages determinations for thirty-five additional attacks.  Mot. to Adopt Rs. & Rs., ECF No. 236.  For the foregoing reasons, the Court will adopt in part the special masters' findings and recommendations as to the twelve bellwether attacks and will enter final judgment as to those servicemembers and family members who are entitled to damages as a result of those attacks.  The Court will reserve judgment on the remaining attacks for which it has not yet determined liability.

## I.    Legal Standards

Plaintiffs in this case request both compensatory and punitive damages stemming from the twelve bellwether attacks.  Under the governing standards, direct victims "who survived an attack may recover damages for their pain and suffering[;]" "family members can recover solatium for their emotional injury; and all plaintiffs can recover punitive damages."  Wultz v. Islamic Republic of Iran, 864 F. Supp. 2d 24, 37 (D.D.C. 2012) (citing Valore v. Islamic Republic of Iran, 700 F. Supp. 2d 52, 82–83 (D.D.C. 2010)).  To establish damages, plaintiffs "must prove the amount of the damages by a reasonable estimate consistent with th[e] [D.C. Circuit's] application of the American rule on damages."  Hill v. Republi of Iraq, 328 F.3d 680, 681 (D.C. Cir. 2003) (internal quotation marks omitted).  "In determining the reasonable estimate, courts may look to expert testimony and prior awards for comparable injury."  Braun v. Islamic Republic of Iran, 228 F. Supp. 3d 64, 82 (D.D.C. 2017) (internal quotation marks omitted).

## II.   Analysis

The Court set out the full factual background for each of the twelve relevant bellwether attacks in its August 2023 memorandum opinion.  See Mem. Op. & Order, ECF No. 137, at 8–26.  One hundred and twelve plaintiffs claim damages stemming from those attacks, in which 28 servicemembers were killed or injured.  For each plaintiff, an appointed special master has prepared a report of relevant factual findings and recommended a damages award.  Unless otherwise indicated, the Court adopts all factual findings from the reports.

### A.  Compensatory Damages

The FSIA provides for three forms of compensatory damages: pain and suffering, solatium, and economic damages.  28 U.S.C. § 1605A(c).  In assessing claims for these damages, the Court first acknowledges what it has said in the past:  "[T]he process of assessing pain and suffering is an imperfect science, as no amount of money can properly compensate a victim and his family for their suffering during and after a terrorist attack."  Bathiard v. Islamic Republic of Iran, No. 16-cv-1549 (CRC), 2020 WL 1975672, at *3 (D.D.C. Apr. 24, 2020); see also Goldstein v. Islamic Republic of Iran, 383 F. Supp. 3d 15, 19 (D.D.C. 2019) (Cooper, J.); Cohen v. Islamic Republic of Iran, 268 F. Supp. 3d 19, 24 (D.D.C. 2017) (Cooper, J.).  "In the interest of fairness, however, courts strive to maintain consistency of awards as between the specific plaintiffs and among plaintiffs in comparable situations."  Cohen, 268 F. Supp. 3d at 24.  Because awards traditionally vary based on the death or injuries of the victim, the Court will first assess claims brought on behalf of deceased servicemembers and by their families before turning to those advanced by surviving servicemembers and their families.  As it has in the past, the Court will largely adhere to the framework established in Peterson v. Islamic Republic of

<u>Iran</u>, 515 F. Supp. 2d 25 (D.D.C. 2007), <u>abrogated on other grounds by</u> <u>Mohammadi v. Islamic</u> <u>Republic of Iran,</u> 782 F.3d 9 (D.C. Cir. 2015).

      *1. Deceased Servicemembers*

         a. <u>Pain & Suffering</u>

Ten servicemembers died as a result of the bellwether attacks:  TSgt. Anthony Capra, Cpl. Dale Burger, Cpl. Jonathan Bowling, SSG Joshua Ryan Hager, SGT Robert W. Briggs, SPC Randy Stevens, SGT Tromaine Toy Sr., 1LT Adam Malson, SGT Adam Kohlhaas, and LCpl. Taylor Prazynski.[1]  As for pain and suffering damages, plaintiffs killed in terrorist attacks cannot recover if their death was instantaneous.  <u>Roth v. Islamic Republic of Iran,</u> 78 F. Supp. 3d 379, 402 (D.D.C. 2015).  But "[w]hen the victim endured extreme pain and suffering for a period of several hours or less, courts in these cases have rather uniformly awarded $1 million," adjusting upward when the victim's pain is longer and downward when the victim survived for only a few minutes.  <u>Peterson</u>, 515 F. Supp. 2d at 53. Consistent with these principles, the Court adopts the recommendations of the special masters to award $0 in pain and suffering to the Estates of Anthony Capra, Joshua Ryan Hager, Tromaine Toy Sr., and Adam Malson, who died instantaneously; $500,000 to the Estate of Randy Stevens, who dragged himself out of a burning vehicle and survived for an indeterminate but short period of time; and $1 million to the Estates of Jonathan Bowling and Taylor Prazynski, who survived for two hours and just under an hour and a half respectively.  <u>See</u> Attack No. 3 R. & R., ECF No. 159, at 4 (Bowling); Attack No. 4 R. & R., ECF No. 158, at 53-54 (Stevens); <u>id.</u> at 62, 68 (Toy); Attack No. 5 R. & R., ECF No. 151, at 6 (Capra); Attack No. 6 R. & R., ECF No. 161, at 2, 6 (Malson); Attack No. 8 R. & R., ECF

---

[1] The Court refers to each servicemember by the higher of the servicemember's military rank at the time of the attack and his rank at the time of death, discharge, or retirement.

No. 153, at 6, 10 (Hager); Attack No. 12 R. & R., ECF No. 155, at 3 (Prazynski).  The Court respectfully declines to adopt the recommendations of the special masters as to the remaining three plaintiffs, for the following reasons.

i.   Dale Burger

As Special Master Michael Borden reports, Cpl. Burger was shot directly in the middle of his forehead while attempting to clear a building.  Attack No. 2 R. & R., ECF No. 169, at 4–5.  He "went down" and another servicemember pulled him out of the house.  Id.  Though Burger's autopsy report concluded that his death "was most likely instantaneous" and his Certificate of Death indicates that the interval between injury and death was "immediate," servicemembers present at the attack reported that Burger was still breathing after being shot. Id. at 5, 10–11.  Crediting the on-scene reports, Special Master Borden recommends an award of $500,000, commensurate with experiencing several minutes of conscious pain.  Id. at 11.

While the Court similarly credits the on-scene reports that Burger was still alive immediately after being shot, the Court must deny pain and suffering damages where "the plaintiff is unable to prove that the decedent *consciously* experienced the time between an attack and his or her death."  Roth, 78 F. Supp. 3d at 402 (emphasis added) (citing Estate of Botvin v. Islamic Republic of Iran, 873 F. Supp. 2d 232, 244 (D.D.C. 2012)); see also Worley v. Islamic Republic of Iran, 177 F. Supp. 3d 283, 286 (D.D.C. 2016) (noting that the plaintiff must provide evidence "tending to show an attack resulted in the fatal but noninstantaneous injury of a victim *and* that the victim was conscious thereafter") (emphasis added).  Even if the injury did not cause instantaneous death, the report presents no evidence showing, or tending to show, that Burger was conscious after being shot.  Therefore, the Court finds an award of pain and suffering damages unsupported by the record.

### ii.    Adam Kohlhaas

The Court is similarly constrained as to the Kohlhaas Estate's claim for pain and suffering damages.  As Special Master David Herndon reports, SGT Kohlhaas was killed in an improvised explosive device ("IED") blast that flipped over his vehicle.  Attack No. 10 R. & R., ECF No. 154, at 2–3.  Kohlhaas's platoon leader stated that he was "unconscious with no signs of external bleeding" after the blast.  Id. at 3–4.  Two servicemembers attempted CPR, but they determined Kohlhaas was dead after he remained unresponsive for five minutes.  Id. at 4.  Kohlhaas's autopsy report lists the interval between injury and death as "minutes to hours." Id.  Special Master Herndon therefore recommends a $500,000 award commensurate with the "few moments" that may have occurred between his injury and death.  Id.  But the report does not consider consciousness.  And because the evidence presented tends to show that Kohlhaas was unconscious during any intervening minutes between his injury and death, the Court must deny pain and suffering damages.

### iii.    Robert W. Briggs

SGT Briggs, who survived for six years following an artillery fire attack in 2005, presents an unusual case.  As a result of a 120-mm mortar explosion, Briggs suffered "a gruesome open head injury, a significant amount of blood loss, and the agony of having one eye hanging from its socket" as well as "multiple shrapnel wounds that peppered his body."  Attack No. 4 R. & R. at 3 (internal quotation marks omitted).  He was "conscious and in excruciating pain."  Id. at 4.  After multiple surgeries in the immediate aftermath of the attack, eight weeks of extensive treatments and accompanying complications, seven months of traumatic brain injury rehabilitation, and five weeks at a medical facility for a final cranioplasty, Briggs returned home. Id. at 4–7.  But he was not the same man when he returned.  He suffered from PTSD, seizures, and panic attacks while also requiring around-the-clock medical care.  Id. at 7–8.  Briggs

ultimately succumbed to his injuries.  His official cause of death was "complications from blast injuries."  Id. at 8.

Based on this painful six-year ordeal, Special Master John Kuder has recommended $12 million in pain and suffering damages.  Id. at 9.  Given the circumstances, the Court finds that an award of $6 million is appropriate.  Under the Peterson framework, a servicemember who suffered "substantial injuries" would receive $5 million in compensatory damages.  Wultz, 864 F. Supp. 2d at 37–38 (citing Peterson, 515 F. Supp. 2d at 54).  However, that baseline "typically includes a component for pain and suffering or impairment that will remain with the victim for the rest of his or her life."  Hamen v. Islamic Republic of Iran, 407 F. Supp. 3d 1, 7 (D.D.C. 2019) (internal quotation marks omitted) (quoting Wultz 864 F. Supp. 2d at 37).  Briggs suffered tremendously from his severe injuries and was hospitalized for approximately one year.  Attack No. 4 R. & R. at 10.  But, shortly before Briggs died, "his condition had improved," he " was able to drive himself," and he "had not experienced a seizure within six months."  Id. at 8.  $6 million is equivalent to a 20% upward departure from the substantial baseline injury award but is less than the amount awarded to servicemembers who live with their injuries for decades more.  Compare Peterson, 515 F. Supp. 2d at 53–54 (awarding $5 million to a servicemember who "was alive for nine years after the attack, living with severe injuries throughout that time" but "appear[ed] to have led a somewhat functional life after the attack"), with Cabrera v Islamic Republic of Iran, No. 18-cv-2065, 2022 WL 2817730, at *44-45 (D.D.C. July 19, 2022) (awarding $9 million to a servicemember-victim who spent 10 months in the hospital and "endured the excruciating amputation of his lower left leg[,] multiple internal injuries from shrapnel, including damage to his optic nerve and his brain," and was still "under constant threat of seizures" over ten years later).  The Court therefore finds it appropriate in this circumstance.

b.  Solatium

Distinct from pain and suffering damages, solatium awards are intended to compensate family members of the victim for "the mental anguish, bereavement and grief that those with a close personal relationship to a [victim] experience[.]"  Belkin v. Islamic Republic of Iran, 667 F. Supp. 2d 8, 22 (D.D.C. 2009).  "Courts may presume that those in direct lineal relationships with victims of terrorism suffer compensable mental anguish."  Roth, 78 F. Supp. 3d at 403. "For relatives of victims killed by terrorist attacks, courts begin with 'a framework in which spouses of deceased victims were awarded approximately $8 million, while parents received $5 million and siblings received $2.5 million.'"  Bathiard, 2020 WL 1975672, at *5 (quoting Anderson v. Islamic Republic of Iran, 839 F. Supp. 2d 263, 266 (D.D.C. 2012)).  "Courts in this district have differed somewhat on the proper amount awarded to children of victims."  Wamai v. Republic of Sudan, 60 F. Supp. 3d 84, 94 (D.D.C. 2014) (comparing cases), aff'd in part, vacated in part on other grounds sub nom. Owens v. Republic of Sudan, 864 F.3d 751 (D.C. Cir. 2017), vacated & remanded on other grounds sub nom. Opati v. Republic of Sudan, 590 U.S. 418 (2020).  However, as it has in the past, the Court adopts the same baseline for children and parents.  See Bathiard 2020 WL 1975672, at *5; see also Mwila v. Islamic Republic of Iran, 33 F. Supp. 3d 36, 45 (D.D.C. 2014) ("[C]hildren who lose parents are likely to suffer as much as parents who lose children.").  "[T]estimony proving a close emotional relationship will usually be sufficient to sustain an award of solatium damages."  Roth, 78 F. Supp. 3d at 403.

The Court concurs with the special masters that each plaintiff who is an immediate family member of one of the deceased servicemembers has established their entitlement to solatium damages.  Additionally, the Court adopts Special Master Jaime Dodge's finding that LCpl. Prazynski's stepmother and stepbrother are the functional equivalents of immediate family

members and can therefore recover.  See Attack No. 12 R. & R. at 10–12; see also Force v. Islamic Republic of Iran, 617 F. Supp. 3d 20, 38 (D.D.C. 2022) ("[T]he D.C. Circuit has recognized that 'immediate family members' can include 'members of the victim's household' who are 'viewed as the functional equivalents of immediate family members[.]'" (quoting Bettis v. Islamic Republic of Iran, 315 F.3d 325, 337 (D.C. Cir. 2003))).  The Court further concurs with Special Master Herndon that one plaintiff, Paula Kohlhaas Miller, "does not qualify for solatium damages" since she is the aunt of a victim and "did not share the same financial, emotional, and social relationship as a mother or even sibling of Adam Kohlhaas."  Attack No. 10 R. & R. at 14; see also Davis v. Islamic Republic of Iran, 882 F. Supp. 2d 7, 15 (D.D.C. 2012) ("[N]ieces, nephews, uncles, aunts . . . generally may not collect solatium damages under FSIA[.]").  Ms. Miller therefore may not recover in this action and her claims will be dismissed.

As to the amount of damages, the Court adopts the recommended awards for the following plaintiffs:

- **Spouse**: Angie Capra ($8 million)

- **Parents**: Claudia Pierce, Martina Burger, Darrell Bowling, Robin Feron, Kris Lyle Silas Hager, David Stevens, Ben Malson, John Prazynski, Carol Prazynski ($5 million)

- **Children**: Mark Capra, Shawn Capra ($5 million)

- **Siblings**: Danielle Capra, Emily Capra, Joanna Capra, Julia-Anne Capra, Jennifer Burger, Rachel Burger, Ashley Nogueira, Brooke Wexler, Jacob Maxwell, Connie West, Gina Stevens, Tyrell Toy, Amy Malson, David Malson, Ryan Blomer ($2.5 million)

The Court will address the remaining plaintiffs individually as it will depart from the recommendations of the special masters.

i.    Capra Plaintiffs

For eight family members of TSgt. Capra, Special Master J. Daniel McCarthy recommends the following upward adjustments:  10% for four of his siblings and one of his children; 20% for both of his parents; and 25% for another of his children.  The Court will award baseline damages to all eight.

As to the siblings, Special Master McCarthy bases his upward departure recommendations on the fact that ██████████████████████████████████████████████████ ██████  See Attack No. 5 R. & R. at 27–28 (Jacob Capra), 30–32 (Joseph Capra), 33–37 (Rachel Capra Lee and Sarah Capra Johnson).  But the baseline compensatory damages are meant to compensate for exactly these experiences of "mental anguish, bereavement and grief." Belkin, 667 F. Supp. 2d at 22.  And while the Court recognizes that each of these plaintiffs "suffered great personal loss at the death of family members dearly loved," it finds, as other courts have in these circumstances, that "none suffered the particularly devastating and uniquely acute suffering warranting an upward departure, such as nervous breakdowns or self-destructive behavior." Murphy. v. Islamic Republic of Iran, 740 F. Supp. 2d 51, 79 (D.D.C. 2010); cf. Valore, 700 F. Supp. 2d at 86 (awarding an upward departure of 25% for a solatium sibling whose suffered several nervous breakdowns and had to be hospitalized).  Therefore, the Court will award Jacob Capra, Joseph Capra, Rachel Capra Lee, and Sarah Capra Johnson the baseline sibling award of $2.5 million.

TSgt. Capra's parents, Sharon and Anthony Capra, have no doubt suffered an immense loss in the death of their son.  The two took in their daughter-in-law and grandchildren after TSgt. Capra's death, ████████████████████████████████████████████████████ ███████████████████.  Attack No. 5 R. & R. at 21–23.  Still, there is no evidence in the

record of the kind of egregious circumstances warranting an upward departure.  Cf. Braun, 228 F. Supp. 3d at 86 (departing upward where the solatium plaintiffs were present at the scene of the attack and had "first-hand observations and acute memories of the child's death").  Therefore, the Court will award Anthony and Sharon Capra $5 million each, the baseline award for parents of a deceased victim.

The Court will also award the baseline damages to Jared and Victoria Capra, two of TSgt. Capra's children.  Jared was only six when his father died and has struggled in social situations ever since.  Attack No. 5 R. & R. at 13–14.  ███████████████████████

███████████████████████████████████████████████████

███████████████   For Jared, Special Master McCarthy recommends a 25% upward departure given the "behavioral and communication difficulties" Jared Capra will likely struggle with for the rest of his life.  Id.  Victoria was nine when her father died and has struggled with emotional issues stemming from her grief.  Id. at 17.  ████████████████████

████████████████████████████████████████████████████

For Victoria, Special Master McCarthy recommends a 10% enhancement.  Id.  But anxiety, depression, and PTSD "[w]hile serious . . . are less severe than those [conditions] found to warrant a significant damages enhancement on their own."  Braun, 228 F. Supp. 3d at 86; cf. Baker v. Socialist People's Libyan Arab Jamahirya, 775 F. Supp. 2d 48, 68, 83 (D.D.C. 2011) (awarding an upward departure where a solatium plaintiff was hospitalized for three days due to asthma, shock, and emotional distress).  The Court will therefore award Jared and Victoria Capra the $5 million baseline award.

Finally, the Court will depart below the baseline for A.C., a child of TSgt. Capra who was not yet two when he was killed.  As Special Master McCarthy notes, "[c]hildren who are

toddlers at the time of their parent's death may still recover the full $5 million baseline solatium award." Bathiard, 2020 WL 1975672, at *6.  But courts generally distinguish between children with "compelling testimony about [their] fond memories" of the deceased and children "who ha[ve] no memories" of them. Id. (awarding the child of a deceased servicemember $3.5 million because she "has no memories of her biological father and spent the first two decades of her life not knowing that he existed").  Though A.C. attests to the impact of the loss of her father on her life, she "does not have direct memories of her father," which "has required her to learn about her father through her siblings and grandmother."  Attack No. 5 R. & R. at 18.  While there is no doubt that having a deceased parent can take a heavy emotional toll, a downward departure is appropriate in this scenario given the more attenuated nature of the relationship between the family member and the direct victim.  See Bathiard, 2020 WL 1975672, at *6 (citing Estate of Heiser v. Islamic Republic of Iran, 466 F. Supp. 2d 229, 269 (D.D.C. 2006)).  The Court will therefore award A.C. $4 million, a 20% downward departure.

ii.  Henry Kohlhass

Plaintiff Henry Kohlhaas is the father of deceased servicemember SGT Kohlhaas.  Henry lived alone at the time of his son's death as his wife had recently passed away and all of SGT Kohlhaas's siblings were no longer living at home.  Attack No. 10 R. & R. at 11.  Special Master Herndon has recommended a 25% upward departure because Henry developed "broken heart syndrome, including murmurs and congestive heart failure," as a result of his son's death.  Id. at 12. ████████████████████████████████████████████

████████████████████████████████ Accepting the special master's finding that Henry's cardiac issues stemmed from SGT Kohlhaas's death, the Court will award Henry Kohlhaas a 10% upward departure for an award of $5.5 million.  The Court respectfully declines to award

the recommended 25% upward departure, recognizing that departures from the baseline "are usually relatively small, absent 'circumstances that appreciably worsen' a claimant's 'pain and suffering, such as cases involving torture or kidnapping' of the party to whom extreme and outrageous conduct was directed." Murphy, 740 F. Supp. 2d at 79 (citing Greenbaum v. Islamic Republic of Iran, 451 F. Supp. 2d 90, 108 (D.D.C. 2006) (departing upward by 12.5% for a solatium plaintiff whose wife was killed while pregnant with their first child)).

### iii.   Briggs Plaintiffs

As discussed above, SGT Briggs survived his attack injuries for six years and his estate will be awarded $6 million in pain and suffering damages. As for his wife, Michelle Briggs, Special Master Kuder recommends a 25% upward departure from the $8 million baseline award for the spouse of a deceased victim based on the six years Michelle spent caring for her husband and her psychological injuries upon his eventual death. Attack No. 4 R. & R. at 18. As an initial matter, the Court finds that the proper baseline to assess Ms. Briggs's solatium award is somewhere between that of a plaintiff whose spouse died immediately from an attack ($8 million) and a plaintiff whose spouse lives long after the attack, albeit with substantial injuries ($4 million). From an adjusted baseline of $6 million, the Court concurs with Special Master Kuder that a moderate upward departure is appropriate. Ms. Briggs developed severe acid reflux from the stress of losing her husband, damaging her teeth, ███████████████████████ ███████████████████████ Id. Given these factors, the Court finds an award of $7 million appropriate for Michelle Briggs.[2]

---

[2] Although courts generally try to ensure that solatium plaintiffs do not recover more than the direct victim, this general rule is not implicated where the servicemember is deceased.

As to SGT Briggs' children, Cody and Ashlea, the Court will similarly adjust the baseline to the middle point between the child of a parent who survives with substantial injuries and a parent who dies immediately, for a baseline award of $3.75 million.  For Cody, Special Master Kuder has not recommended any variance from the baseline.  Id. at 24.  But for Ashlea, he recommends a 20% upward departure because she was particularly close to her father and her preexisting cognitive and developmental problems were exacerbated by the psychological trauma from her father's injuries and eventual death.  Id. at 19–21.  ██████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████

The Court will award Cody Briggs $3.75 million.  Starting from this adjusted baseline, the Court will adopt the proposed 20% upward departure for Ashlea (Briggs) Tadlock to account for the disabling effect SGT Briggs' injuries and death had on a child with preexisting special needs, bringing the award to $4.25 million.

> iv.    Debra Malson

The last recommended upward adjustment is for Debra Malson, mother of deceased servicemember 1LT Adam Malson.  After her son's death, Ms. Malson missed at least three months of work, spent 10 days in bed, lost ten pounds per week, ████████████████████████ ████████████████████████████████    Attack No. 6 R. & R. at 15.  In light of these facts, Special Master Angela Gupta has recommended an upward departure of 15%, for an award of $5.75 million.

Given the lack of medical documentation in the record, as noted by Special Master Gupta, id. at 16, the Court finds insufficient evidence for an upward departure from the baseline solatium award for the parent of a deceased victim.  It will therefore award Debra Malson $5 million.

c.  <u>Economic Damages</u>

"Section 1605A explicitly provides that foreign state-sponsors of terrorism are liable to victims for economic losses stemming from injuries or death sustained as a result of the foreign state's conduct."  <u>Thuneibat v. Syrian Arab Republic</u>, 167 F. Supp. 3d 22, 48 (D.D.C. 2016). "Such damages may be proven by the submission of a forensic economist's expert report."  <u>Roth</u>, 78 F. Supp. 3d at 402 (citing <u>Belkin</u>, 667 F. Supp. 2d at 24).  "In considering an award for lost future earnings, the Court shall take account of the reasonableness and foundation of the assumptions relied upon by the expert."  <u>Id.</u> (citing <u>Reed v. Islamic Republic of Iran</u>, 845 F. Supp. 2d 204, 214 (D.D.C. 2012)).

In this case, the special masters have recommended an award of economic damages for each of the ten deceased servicemembers based on expert reports of their lost future earnings. The Court adopts their findings and recommendations in full, with the exceptions of 1LT Malson and SGTs Toy, Kohlhaas, and Briggs.  For those estate-plaintiffs, the Court declines to adopt the proposed award in light of the addition of "household services."

In <u>Fritz v. Islamic Republic of Iran</u>, a fellow court in this district adopted a report including household services over the statistical lifespan of the decedent's mother "[b]ecause the victim was helping with his parents' needs at the time of death."  <u>See</u> No. 15-cv-456 (RDM), 2018 WL 5046229, at (D.D.C. Aug. 13, 2018), <u>report and recommendation adopted as modified</u>, 324 F. Supp. 3d 54, 60 (D.D.C. 2018).  In line with that conclusion, TSgt. Capra's calculation of

economic loss damages includes household services that he would have otherwise provided to his wife and children for the amount of time he would have been physically capable of doing so. Attack No. 5 R. & R. at 8.  While the Court will adopt TSgt. Capra's proposed award including household services, it must reject the other proposed additions of "household services," as it finds those calculations deficient for the following reasons.

For Toy and Kohlhaas, the inclusion of household services is justified by the fact that they were married with children.  See Attack No. 4 R. & R. at 64; Attack No. 10 R. & R. at 8. However, the expert reports assume the deceased would have provided household services throughout the statistical lifespan of their family members, including their children.  Id.  While it may be a reasonable assumption that a deceased victim would have otherwise outlived his *parents* and continued providing care, it strikes the Court as an unreasonable assumption that a victim would have otherwise outlived his *children* or provided them household services throughout their statistical lifespans.

1LT Malson's economic damages report includes household services over the course of his life expectancy when there is no evidence in the record that Malson had children or was supporting his parents at the time of his death.  Attack No. 6 R. & R. at 10.  For Briggs, who was married with children, the expert report calculates household services through the victim's life expectancy at approximately 71 years old.  Attack No. 4 R. & R. at 8.  As neither report specifies what household services were provided or could have reasonably been expected, the Court cannot assess the reasonableness of their lifetime household services calculations.  It notes, however, that for TSgt. Capra, the household services estimate runs only as long as he "would, statistically, be physically capable of providing such services to his household."  Attack No. 5 R. & R. at 8.

The Court is unable to accept calculations based on unfounded or unreasonable assumptions.  Moreover, none of the reports include information about how or how much the deceased servicemember was contributing household services over and above their compensable lost wages at the time of death.  Cf. M.M. v. Islamic Republic of Iran, No. 21-cv-2783, 2023 WL 8867943, at *11 (D.D.C. Dec. 22, 2023) (determining household services awards by "multiplying [the decedent's] hourly compensation by the number of hours they spent performing household services, such as providing educational assistance to family members, keeping the house in order, and caring for children" (internal citations omitted)).  For the estates of Malson, Toy, and Kohlhaas, which will not receive pain and suffering damages, the Court will await a revised calculation before awarding a final judgment of economic damages.  As for SGT Briggs, the Court will enter a final judgment as to pain and suffering damages but would consider a motion to amend that judgment pursuant to Rule 59(e) to include economic damages.

### 2.   Surviving Servicemembers

#### a.   Pain & Suffering

The remaining plaintiffs at issue are eighteen servicemembers who survived the attacks with injuries as well as their families.  These servicemembers' injuries span a broad range—from no physical injuries at all to severe and debilitating conditions.  For servicemembers who survive an attack with "substantial injuries," the baseline award is $5 million.  Bathiard, 2020 WL 1975672, at *3 (quoting Valore, 700 F. Supp. 2d at 84).  That baseline includes injuries such as "vision impairment, many broken bones, severe shrapnel wounds or burns, lengthy hospital stays . . . and permanent injuries."  Schertzman Cohen v. Islamic Republic of Iran, No. 17-cv-1214 (JEB), 2019 WL 3037868, at *6 (D.D.C. July 1 1, 2019) (quoting Wamai, 60 F. Supp. 3d at 9293).  "The $5 million award baseline may be adjusted up or down 'based on the nature of the

injury, the pain associated with it, the duration of the hospitalization, and the degree and length of impairment.'" <u>Bathiard</u>, 2020 WL 1975672, at *3 (quoting <u>Goldstein</u>, 383 F. Supp. 3d at 19). For "plaintiffs who did not suffer severe physical injuries . . . downward departures to a range of $1.5 million to $3 million are appropriate." <u>Wamai,</u> 60 F. Supp. 3d at 92.  "A more permanent injury or impairment, by contrast, might warrant a larger award of $7–12 million." <u>Cohen</u>, 268 F. Supp. 3d at 24 (citing <u>Wultz</u>, 864 F. Supp. 2d at 38); <u>see also</u> <u>Schertzman Cohen,</u> 2019 WL 3037868, at *6.

In evaluating these claims, the Court will depart from the special masters' recommendations, many of which adopted the $5 million <u>Peterson</u> baseline for all manner of injuries or else applied the alternative framework of <u>Schooley v. Islamic Republic of Iran</u>, No. 17-cv-1376 (BAH), 2019 WL 2717888 (D.D.C. 2019).  The Court will apply the <u>Peterson</u> framework, as it has in the past, which distinguishes between severe and relatively minor physical injuries.  <u>Compare</u> 515 F. Supp. 2d at 54 (awarding $5 million to a plaintiff who "suffered a broken jaw, severe flesh wounds and scars on his arms, legs and face, a loss of teeth, and lasting and severe psychological harm as a result of the attack") with <u>id.</u> (awarding $3 million to a plaintiff who "suffered injuries in the back, arm and head from being hit with shrapnel from the attack" in addition to "lasting and severe psychological problems").  Similarly animated by the "need to maintain uniformity" across injuries that "span a broad range," the Court will further rely on the <u>Wamai</u> framework, which identified six general categories of physical injuries across a range of severity, while reserving the $5 million <u>Peterson</u> baseline for those individuals with "severe physical injuries."  <u>See</u> 60 F. Supp. 3d at 91–93; <u>see also</u> <u>Schertzman Cohen</u>, 2019 WL 3037868, at *6 (adopting this framework).  Each category "assume[s] severe psychological injuries."  <u>Schertzman Cohen</u>, 2019 WL 3037868, at *6.

i.    Category I

The first category applies to four plaintiffs in this case:  SGT Alexander Bryant, SGT

Richard Foster, HM2 Samuel Williams, and LTC Robert Lee McCormick all suffered little to no

physical injuries in the attacks, but have suffered severe psychological injuries, ███████████

███████████████████.  See Attack No. 1 R. & R., ECF No. 196, at 41 ("[T]he

evidence proves that although [SGT Foster] did not suffer physical injury in the Black Sunday

attack, he suffered—and continues to suffer devastating psychological harm."); see also id. at 25

(explaining that SGT Bryant suffered PTSD from the attack and though he also has disability

ratings for migraines and minor tinnitus "the record does not reflect that he suffered a physical

head injury during the attack"); Attack No. 2 R. & R. at 7, 23 (noting the HM2 Williams was

knocked out by the blast, and though he suffered no physical injuries, he immediately noticed

symptoms of PTSD); Attack No. 14 R. & R., ECF No. 156, at 9 ("The evidence submitted by

Maj. McCormick . . . establishes that he has suffered prolonged and severe psychological injuries

(without physical injury)[.]").  For plaintiffs such as these who "suffered little physical injury or

none at all—but have claims based on severe emotional injuries because they were at the scene

[of the attacks] or because they were involved in the extensive recovery efforts immediately

thereafter," the baseline award is adjusted to $1.5 million.  Wamai, 60 F. Supp. 3d  at 92; accord

Schertzman Cohen, 2019 WL 3037868, at *6.  As the special masters have not presented

substantially aggravating factors, the Court finds an award of $1.5 million appropriate for each of

these plaintiffs.

ii.    Category 2

The second category, with an adjusted baseline award of $2 million, is for those victims

who suffered relatively modest physical injuries, "such as lacerations and contusions caused by

shrapnel[,] accompanied by severe emotional injuries." Wamai, 60 F. Supp. 3d at 92.  SFC

Franklyn Lee Doss's injuries fall into this category.  See Attack No. 1 R. & R. at 3, 13

(explaining that SFC Doss "suffered multiple shrapnel wounds to his face and arms during the

attack" as well as "minor burns to his hands while trying to get his fellow soldiers out of the

vehicles they were in").  The Court finds this award all the more appropriate given that Doss

attributes only 60% of his resulting PTSD to this attack.  Id. at 12.

iii.    Category 3

The next group "suffered more serious physical injuries, such as broken bones, head

trauma, some hearing or vision impairment, or impotence," along with their psychological

injuries.  Wamai, 60 F. Supp. 3d at 92.  An appropriate award for this category is $2.5 million.

Id.  It includes GySgt. Shane Housmans, Cpl. Joe Sanchez Jr., HM2 Juan Rubio, and SPC Phillip

Trimble, who sustained comparatively minor shrapnel injuries but suffer from varying levels of

lasting head trauma.  The Court will address each in turn.

In the second bellwether attack, GySgt. Housmans was pinned under a door and sustained

a concussion.  Attack No. 2 R. & R. at 6.  He was later diagnosed with traumatic brain injury

("TBI"), PTSD, and tinnitus.  Id. at 17.  The Court will award $2.5 million.

Cpl. Sanchez was injured in the same attack and sustained hearing loss, tinnitus, TBI, and

PTSD.  Id. at 30–31.  Due to the severity of his PTSD from this attack, and "many more just like

[it]," ███████████████████████████████████  Though this fact might otherwise

warrant an upward adjustment, Special Master Borden has recommended a downward variance,

given the difficulty attributing the full extent of Sanchez's injuries to this specific attack.  Id. at

32.  Given these competing factors, the Court will adopt the adjusted baseline award of $2.5

million.

In the third bellwether attack, HM2 Rubio suffered a concussion with TBI and sustained several shrapnel wounds to his right hip that he self-treated.  Attack No. 3 R. & R. at 12–14.  The Court will award $2.5 million.

SPC Trimble was injured in the ninth bellwether attack.  He "was render[ed] unconscious for an unknown amount of time" from the blast, "had taken shrapnel in the leg," and was later diagnosed with TBI.  Attack No. 9 R. & R., ECF No. 150, at 3–4.  The Court adopts a 10% upward departure, ████████████████████████████████████████████

████████████████████████████████████.  See id. at 5.

### iv.    Category 4

"Moving upward, those 'with even more serious injuries,' such as 'spinal injuries not resulting in paralysis, more serious shrapnel injuries, head trauma, or serious hearing impairment,'" receive $3 million.  Schertzman Cohen, 2019 WL 3037868, at *6 (quoting Wamai, 60 F. Supp. 3d at 92).  Four servicemembers fall into this category:  SGT Salvador Beltran-Soto, SPC Anthony Ferris, HN Andrew Rothman, and LCpl. Curtis Mighaccio.

In the first bellwether attack, SGT Beltran-Soto received "treatment for a superficial laceration on his left leg," "stitches in his face[,] and [had] fragments [of shrapnel] removed from his gum line and back of his mouth."  See Attack No. 1 R. & R. at 26.  He was later diagnosed with TBI, tinnitus, hearing loss, and PTSD.  Id. at 28.  ████████████████████████

████████████████████████████████████  The Court will therefore award him $3 million.

In the same attack, SPC Ferris sustained both a traumatic brain injury and a shrapnel wound to his shoulder.  Id. at 16.  He was unable to remove the shrapnel from his body and it still causes periodic infections.  Id. at 17.  Given the severity of SPC Ferris's emotional injuries,

████████████████████████████████████████████████████

████████████████████████, the Court will adopt a 10% upward departure from the

adjusted $3 million baseline for an award of $3.3 million.  Id. at 18.

In the third bellwether attack, HN Rothman suffered TBI, shrapnel wounds to his thighs

and legs, a back injury that still causes him severe pain and prevents him from standing up for

more than 15–20 minutes without pain, and severe lasting psychological injuries.  Attack No. 3

R. & R. at 17–20.  The Court will award $3 million.

LCpl. Mighaccio was also injured in the third bellwether attack and now suffers from

TBI with loss of consciousness and has a 70% disability rating for TBI.  Attack No. 2 R. & R. at

24.  As for the appropriate award, the evidence pulls in opposite directions.  On the one hand,

Mighaccio's head trauma appears to be particularly severe.  But on the other, Mighaccio

experienced "different explosions over 40 times," and without the benefit of a declaration from

him, the Court cannot fully attribute his injuries to this attack.  Id. at 25.  The Court therefore

finds the adjusted baseline of $3 million appropriate, which is equivalent to 60% of the Peterson

baseline.  See also id. at 26 (recommending an award consistent with a 40–60% disability rating

rather than Mighaccio's rating of 90% due to the attribution issues).

v.      Category 5

The baseline award of $5 million applies to those servicemembers whose injuries

"involve some mix of serious hearing or vision impairment, many broken bones, severe shrapnel

wounds or burns, lengthy hospital stays, serious spinal or head trauma, and permanent injuries."

Wamai, 60 F. Supp. 3d at 92–93.  Four servicemembers fall into this category:  SGT Endi

Herrera, SFC Larry Cabral, SGT Joshua Coy, and SFC Raleigh Heekin III.  SGT Herrera was

injured in an Explosively Formed Penetrator ("EFP") blast that caused him TBI and tinnitus and

sent shrapnel to his right knee and back, necessitating four back surgeries and one surgery on his left arm.  Attack No. 7 R. & R., ECF No. 152, at 5.  SFC Cabral was also injured in an EFP blast and sustained mild TBI; shrapnel wounds to his arms, legs, and face, causing nerve damage to his arms that required surgery and significantly worsened pain in his back and legs; as well as injuries to his cervical spine.  Attack No. 14 R. & R. at 4–5.  SGT Coy was injured when a suicide bomber detonated himself fifteen feet away from him, causing TBI, hearing loss, and shrapnel injuries to Coy's right hand and right leg.  Attack No. 6 R. & R. at 20–21.  He underwent two surgeries as well as a graft reconstruction of his right index finger but has permanent nerve damage to his right hand, arm, and wrist, as well as numbness and scarring in those areas.  Id. at 21–22.  SFC Heekin was knocked unconscious by an IED blast while driving a vehicle and sustained a middle ear injury, shrapnel injuries to his leg and lungs, and TBI.  Attack No. 8 R. & R. at 2.  He underwent more than 20 surgeries and other treatments, and now uses a cane to walk.  Id.  The Court will adopt the baseline award of $5 million for each of these plaintiffs.

### vi.    Category 6

The final category is reserved for those servicemembers "who suffered even more grievous wounds such as lost eyes, extreme burns, severe skull fractures, brain damage, ruptured lungs, or endured months of recovery in hospitals."  Wamai, 60 F. Supp. 3d at 93.  For those plaintiffs, "upward departures to $7.5 million are in order."  Id.; see also Cohen, 268 F. Supp. 3d at 24 ("A more permanent injury or impairment, by contrast, might warrant a larger award of $7–2 million." (citing Wultz, 864 F. Supp. 2d at 38)).  Only SPC Jose Jauregui Jr. fits this category.  SPC Jauregui was struck by a rocket while inside a vehicle and consciously suffered third-degree burns over 75% of his body at the age of 19.  Attack No. 4 R. & R. at 25–26.  He lost both of his

ears and had all but one of his fingers amputated.  Id.  He endured several surgeries over a

yearslong period, had 55 blood and blood product transfusions, and was placed in a medically

induced coma for over two months from which he had a 3% chance of survival.  Id. at 26–27.

Though he survived, he is still unable to blink, has trouble eating due to limited motion in his

jaw, cannot use his left hand, has limited use of his right hand, is permanently disfigured, cannot

regulate his body temperature, and will need continued medical care for the rest of his life that is

expected to cost upwards of $6 million.  Id. at 27–28, 34. ██████████████████

████████████████████████████████ Though Special

Master Kuder has recommended an award of $25 million, the Court finds an upward departure to

$12 million appropriate.  This award is typical of servicemembers who experienced permanent

and debilitating injuries like SPC Jauregui.  See Mousa v. Islamic Republic of Iran, 238 F. Supp.

2d 1 , 13 (D.D.C. 2001) (awarding $12 million to a servicemember who suffered permanent

blindness in one eye, deafness in one ear, substantial loss of her right hand, extensive burns,

permanent nerve damage, lung blast injury and PTSD, among other injuries); see also Peterson,

515 F. Supp. 2d at 55 (awarding $12 million to a servicemember rendered quadriplegic with

"lasting and severe psychological problems").

b. Solatium

The Court adopts the recommendations of the special masters to award solatium damages

to the immediate family members of each injured servicemember, as well as the stepmother of

LCpl. Mighaccio and stepchild of SGT Beltran-Soto as functional equivalents.  "For relatives of

victims physically injured by terrorist attacks, courts have applied a framework whereby awards

are valued at half of the awards to family members of the deceased—$4 million, $2.5 million

and $1.25 million to spouses, parents, and siblings, respectively."  Goldstein, 383 F. Supp. 3d at

21–22 (quoting <u>Kaplan</u>, 213 F. Supp. 3d at 38); <u>see also</u> <u>Wamai</u>, 60 F. Supp. 3d at 95 (adopting a $2.5 million award for children of injured victims). While solatium awards may be adjusted up or down based on the circumstances, "solatium awards for relatives of victims should be proportionate to the pain-and-suffering awards to the victims themselves." <u>Goldstein</u>, 383 F. Supp. 3d at 22 (citing <u>Cohen</u>, 268 F. Supp. 3d at 26). Where courts depart from the baseline pain and suffering award for direct victims, a proportionate adjustment to their relatives' solatium damages is generally appropriate. <u>See, e.g.</u>, <u>Davis</u> 882 F. Supp. 2d at 16; <u>Bathiard</u> 2020 WL 1975672, at *5. Therefore, where the special masters did not highlight aggravating factors warranting a departure, the Court will scale family member awards based on the servicemember's award: 30% of the baseline awards for plaintiffs whose relatives suffered Category I injuries; 40% for Category 2; 50% for Category 3; 60% for Category 4; and the baseline awards for Category 5. For the Jauregui family, the Court will adopt Special Master Kuder's proposed awards, including a 25% upward departure for four of the five family members, given the severity of SPC Jauregui's injuries and the extent to which his family members assisted in his long and ongoing recovery process.[3] The Court writes individually only to address the family-member plaintiffs for whom a departure has been recommended.

---

[3] For both SPC Jauregui's parents and LCpl. Mighaccio's stepmother, the Court finds as it did in <u>Cohen</u> that D.C. tort law applies and allows recovery even though these plaintiffs were not U.S. citizens at the time of the attack and cannot recover under the FSIA. <u>See</u> 238 F. Supp. 3d at 80; Attack No. 4 R. & R. at 36–39 (citing <u>Cohen</u>); <u>see also</u> Attack No. 2 R. & R. at 27 n.5. The tort of intentional infliction of emotional distress requires extreme and outrageous conduct that intentionally or recklessly causes severe emotional distress. <u>Ben—Rafael v. Islamic Republic of Iran</u>, 540 F. Supp. 2d 39, 56 (D.D.C. 2008). "Acts of terrorism are by their very definition extreme and outrageous and intended to cause the highest degree of emotional distress." <u>Belkin</u>, 667 F. Supp. 2d at 8. And because the plaintiffs here have presented evidence of their severe emotional distress, the Court will award damages. <u>See also</u> <u>Valore</u>, 700 F. Supp. 2d at 85 ("Under the FSIA, a solatium claim is indistinguishable from an IIED claim.").

Generally, courts consider the "'nature of the relationship' between the claimant and the victim" as well as the "severity and duration of the pain suffered by the family member" in calculating solatium awards.  Oveissi v. Islamic Republic of Iran, 768 F. Supp. 2d 16, 26 (D.D.C. 2011) (quoting Haim v. Islamic Republic of Iran, 425 F. Supp. 2d 56, 75 (D.D.C. 2006)).  Weighing these factors, the special masters have recommended upward departures for Thomas A. McCormick, Ramona Beltran, and Nicole Housmans.  Special Master Besser recommends a downward departure for Maria Beltran.  The Court adopts the following awards:

As to Thomas McCormick, the Court agrees that an upward departure is warranted given Special Master Swanson's finding that he was particularly close to LTC McCormick as his twin brother and that their relationship has been severely damaged by LTC McCormick's psychological injuries.  See Attack No. 14 R. & R. at 16–17 (recommending a 70% upward departure); see also Cabrera v. Islamic Republic of Iran. No. 19-cv-3835, 2024 WL 864092, at *5 (D.D.C. Feb. 29, 2024) (awarding a 10% upward variance for the twin of a deceased victim); Mwila, 33 F. Supp. 3d at 45 (awarding a 60% upward variance).  The Court will award a more modest enhancement of 20% for an award of $450,000.

As to Ramona Beltran, Special Master Besser has recommended an upward departure of 20% given that she suffered a heart attack and was hospitalized upon hearing the news that her son had been injured.  Attack No. 1 R. & R. at 31–32.  Though it will assess the departure from the adjusted baseline of $ 1.5 million given SGT Beltran-Soto's relatively less serious injuries, the Court agrees that an upward departure is warranted and will award Ramona Beltran $1.8 million in solatium damages.

Next, as to Nicole Housmans, Special Master Borden has recommended an upward departure of 12.5% given the effect of GySgt. Housmans's injury on their marriage.  Attack No. 2 R. & R. at 21. ███████████████████████████

████████████████████████████████████████████

████████████████████████████████  While the impact of GySgt. Housmans's

injuries on his marital relationship was no doubt serious, the Court finds that an award of $2

million is still appropriate in absence of the more severe aggravating factors discussed in relation

to other solatium plaintiffs.

And finally, as to Maria Beltran, ex-wife of SGT Beltran-Soto, the Court agrees with

Special Master Besser that a downward departure of 50% is appropriate given that the two

separated less than a year after SGT Beltran-Soto came home.  Attack No. 1 R. & R. at 37–38

(comparing cases).  Based on the $2.4 million award appropriate for the spouse of a victim with

Category 3 injuries, the Court will depart downward by 50% for an award of $ 1.2 million.

c.   Economic Damages

The special masters have also recommended an award of economic loss damages to five

surviving servicemembers.  The Court adopts their findings and recommendations as to HM2

Juan Rubio, SPC Anthony Ferris, and SGT Joshua Coy.  The Court will depart from the

recommended damages for SPC Jauregui and LTC McCormick.

As to SPC Jauregui, Special Master Kuder recommends an award of $11,266,057.10 in

economic loss damages, including $4,826,516.91 in lost wages and $6,439,540.19 in medical

costs pursuant to Jauregui's life-care plan.  Attack No. 4 R. & R. at 31–35.  The Court will

deviate from this recommendation in two respects.  First, the Court rejects the addition of

medical costs over and above pain and suffering damages, as other courts in this district have

done.  See, e.g., Roth v. Islamic Republic of Iran, No. 19-cv-02179, 2023 WL 3203032, at *3

(D.D.C. May 2, 2023) (rejecting the addition of medical costs to the baseline compensatory

damages because "the Court intends its awards to be fully compensatory—they reflect both the

injuries suffered and medical costs").  Second, as to Jauregui's lost wages, the expert report

27

adopted by Special Master Kuder appears to project wages until the end of Jauregui's life expectancy at 77.49 years.  Attack No. 4 R. & R. at 32.  While the Court agrees that "[c]urrent trends indicate that individuals are more likely to work beyond the average work life and therefore . . . future income stream based on [the social security] retirement age" is appropriate, Fritz, 2018 WL 5046229, at *17, the Court cannot adopt, without particular justification, an assumption that Jauregui would continue working until the end of his life.  The Court will therefore enter a final judgment awarding Jauregui only pain and suffering damages, but it is prepared to consider issuing an amended judgment inclusive of a revised economic damages calculation.

As to LTC McCormick, Special Master Swanson recommends economic damages in the amount of $4,202,483 due to McCormick's 100% disability rating for PTSD and PTSD-related sleep apnea.  Attack No. 14 Supplemental R. & R., ECF No. 183, at 3.  The underlying expert report has two flaws.  First, it includes household services when Special Master Swanson's report includes no information as to what household services were lost due to McCormick's emotional injuries and in fact reports that McCormick's only plans for the future are "caring for his young child and special needs child and seeing to the needs of his immediate family to the best of his ability with his condition."  Attack No. 14 R. & R. at 7; see also Attack No. 14 Supplemental R. & R. at 5.  Second, Special Master Swanson states that McCormick has only been unable to maintain employment for the last three years (approximately 2021), but the expert report starts its calculation of military base pay and allowances lost in 2016.  Attack No. 14 Supplemental R. & R. at 3–4.  Though McCormick retired from the military in 2016, ten years after the attack, it is inappropriate to award him loss of full military pay while he was also earning civilian pay.  See, e.g., Coombs v. Islamic Republic of Iran, No. 19-cv-03363, 2023 WL 4894939, at *13 (D.D.C. July 5, 2023) (subtracting wages actually earned from projected

earnings if the victim had not been injured).  Similar to SPC Jauregui, the Court will enter a final judgment as to LTC McCormick's pain and suffering damages and await a revised calculation before awarding economic damages.

### B.  Punitive Damages

Section 1605A of the FSIA authorizes punitive damages to be assessed against foreign state sponsors of terrorism.  28 U.S.C. § 1605A(c).  "Courts calculate punitive damages by considering the following four factors: '(l) the character of the defendants' act, (2) the nature and extent of harm to the plaintiffs that the defendants caused or intended to cause, (3) the need for deterrence, and (4) the wealth of the defendants.'"  Cohen, 268 F. Supp. 3d at 27 (quoting Wamai, 60 F. Supp. 3d at 96–97).  The special masters found all four punitive damages factors satisfied for each of the plaintiffs and have recommended a punitive damages award of double the compensatory damages.  This Court has previously "conclude[d] that a multiplier of two is appropriate" where the defendants, as here, "did not directly carry out the attack, but funded" the organization that did.  Id. at 28.[4]  Consistent with this prior approach, the Court adopts the special masters' punitive damages findings and recommendations in full.

### C.  Interest

As recognized by the special masters, the Court "continues to believe that prejudgment interest is not appropriate for nonpecuniary damages already designed to provide complete compensation."  Goldstein 383 F. Supp. 3d at 24.  While it will not award prejudgment interest,

---

[4] This Court declined to award punitive damages in Bathiard and Goldstein given the then-governing law that punitive damages were unavailable for conduct occurring before the 2008 passage of § 1605A.  See Goldstein 383 F. Supp. 3d at 24 (citing Owens, 864 F.3d at 812); see also Bathiard, 2020 WL 1975672, at *7 (citing same).  In Opati v. Republic of Sudan, the Supreme Court overturned Owens and held that the provision applies retroactively to allow recovery of punitive damages for acts committed prior to 2008.  590 U.S. 418 (2020).

the Court will award post-judgment interest as required by the federal post-judgment interest statute.  <u>See</u> 28 U.S.C. § 1961(a) ("Interest shall be allowed on any money judgment in a civil case recovered in a district court.").

### III. Conclusion

For these reasons, the Court will, in a separate Order that accompanies this Memorandum Opinion, enter final judgment for the Plaintiffs claiming damages stemming from the twelve bellwether attacks as to which the Court has found liability.  The Court will defer judgment on the remaining plaintiffs that are subject to the present motion until it has assessed Defendants' liability.

Finally, the Court appreciates counsel's desire to expedite entry of final judgment for as many Plaintiffs as possible, particularly given the recently announced deadline to submit this year's round of applications to the U.S. Victims of State Sponsored Terrorism Fund.  <u>See</u> Mot. to Adopt Rs. & Rs. at l.  Yet, as this and other of the Court's rulings have shown, assessing liability for the relevant attacks and calculating damages for the victims are not routine tasks, even in the context of default proceedings.  And the work required in this case is made all the more timeconsuming by the overwhelming number of attacks and plaintiffs involved.  Congress perhaps could have streamlined the process of compensating victims of Iranian-backed terrorism by creating a purely administrative compensation regime, as it has done for the victims of the 9/1 1 terrorist attacks and other mass torts.  But it did not go that route.  As a result, Plaintiffs (and their lawyers) are left to litigate their cases in federal court alongside the many other civil actions, criminal prosecutions, and administrative matters that consume judges' daily attention.

The Court has strived to issue rulings in this sprawling case as efficiently as possible given its competing responsibilities and will continue to do so going forward.  To that end, the

Court would welcome revised damages recommendations consistent with this ruling for the thirty-five Wave 1 attacks and it requests that all future reports and recommendations adhere to the Court's approach to damages as reflected herein.

      **SO ORDERED**.

<br>

                                            _____
                                            CHRISTOPHER R. COOPER
                                            United States District Judge

Date: June 5, 2024