**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **ESTATE OF CHRISTOPHER BROOK FISHBECK, et al.,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**THE ISLAMIC REPUBLIC OF IRAN, et al.,**<br><br>**Defendants.**<br><br>**This Document Applies to Plaintiffs:**<br><br>**GARY LYNN STRICKLAND; MARNITA L. MARLER; & RIKKI LYNNE MARLER** | ) | **Civil Action No. 1:18-cv-02248-CRC**<br><br>**Special Master John P. Kuder** |

**SPECIAL MASTER REPORT & RECOMMENDATIONS**
**WAVE NO. 3 – LIABILITY**
**NON-BELLWETHER ATTACK NO. 70**

---

## I. PREAMBLE TO REPORT AND RECOMMENDATIONS

In accordance with the Administrative Plan (Doc. No. 140, pp. 4-5), and in preparing this Report and Recommendations regarding the above-captioned matter, the undersigned Special Master has reviewed and taken into account in their entirety all items of evidence presented by Plaintiffs' counsel,[1] and has made recommended findings of fact as to: (a) the terrorist group responsible for the commission of the attack; (b) the personal injuries or deaths that occurred from the attack; and (c) the relationship of the victims of the attack to the respective plaintiffs. Additionally, the undersigned has made or recommended conclusions of law as to: (a) whether the attack involved a group that received material support from Defendants; (b) whether the attack

[1] Items reviewed include military records, medical records, the sworn declarations of plaintiffs, a sworn expert declaration and amended report, photographs, and other materials uniquely salient to the attack and/or victims.

involved an act listed in 28 U.S.C. § 1605A(a)(1); and (c) whether Defendants' provision of material support was a proximate cause of the attack. Id.

## II. INCORPORATION OF THE COURT'S PRIOR RULINGS ON LIABILITY

As directed by the Order Appointing Special Masters for determination of the issue of liability, the undersigned has considered and incorporates by reference the District Court's prior rulings relative to all essential elements in adjudicating the determination of liability.[2] After having considered the Court's prior rulings, the principal questions addressed here are: whether the April 4, 2004 VBIED attack in Kirkuk City, Iraq was committed by a terrorist group that received material support from Defendants; whether the attack involved an act within § 1605A(a)(1); and whether the injuries and deaths at issue resulted from that attack.

## III. THE ATTACK

### A. Attack No. 70 – April 4, 2004 VBIED Attack in Kirkuk City, Iraq

On April 4, 2004, United States Army Specialist (SPC) Gary Strickland was deployed in Iraq and assigned to Charlie Company, 1st Battalion, 21st Infantry Regiment, 2nd Brigade, 25th Infantry Division. (PX11514, Decl. Gary Strickland, ¶¶ 3, 6.) On that day, SPC Strickland and his company conducted house-to-house searches within Kirkuk City. Id. ¶¶ 6, 8. The operational convoy comprised six High Mobility Multipurpose Wheeled Vehicles (Humvees), with SPC

---

[2] For purposes of establishing liability for this attack, the District Court has already found that: (1) service of process upon all defendants was properly effectuated (see ECF No. 55 at 10); (2) the Islamic Republic of Iran was, at all relevant times, a designated state sponsor of terrorism (see ECF No. 126 at 3–4); (3) each plaintiff and/or victim is a U.S. national, member of the U.S. armed forces, or U.S. government contractor (id. at 6–7); (4) Defendants—the Islamic Republic of Iran, Islamic Revolutionary Guard Corps, Iranian Ministry of Intelligence & Security, Bank Markazi, and Bank Melli Iran—each provided material support (as defined by 28 U.S.C. § 1605A(a)(1)) to the Sunni terrorist groups al Qaeda, al Qaeda in Iraq, and **Ansar al-Islam** (AAS by subsequent iteration) during the relevant time period of 2003–2011; and (5) the provision of this material support by the defendants to these specific Sunni terrorist groups "was essential to the groups' operating capacity, and in order for them to commit terrorist attacks in Iraq during the relevant time period of 2003–2011; moreover, these attacks were reasonably foreseeable and a natural consequence of that material support." See ECF Nos. 127 at 2 and 136 at 7. (Emphasis added).

Strickland assigned as the Team Chief of his designated vehicle and commanding a tactical crew that included a driver and a gunner. Id. The mission's primary objectives were to establish a visible presence for United States Coalition Forces, introduce the unit to the community, and locate contraband weapons and caches. Id. After these operations, the unit received further orders to support local security efforts in Kirkuk City by managing and directing traffic during an ongoing demonstration in the city's "Celebration Square." PX11501, CENTCOM Ops Report at 1.

At approximately 16:00 hours, a VBIED, consisting of a four-door sedan, accelerated rapidly toward the Humvee near Private First Class (PFC) John Amos and Sergeant (SGT) Giovanni Bennett, two members of SPC Strickland's unit, and exploded. PX11514, Decl. Gary Strickland, ¶¶ 12, 14. At the time of the detonation, SPC Strickland was positioned nearby. Id. The concussive force of the blast knocked SPC Strickland to the ground, causing him to become dizzy and disoriented. Id. Despite his disorientation, SPC Strickland rendered assistance and emergency medical aid to service members who had also been knocked down or wounded by the explosion. Id. ¶¶ 12–14. He and other members of his unit loaded the severely injured personnel into Humvees for immediate evacuation from the attack site to nearby Forward Operating Base (FOB) Warrior for emergency medical intervention. Id. ¶ 13.

In the aftermath of the attack, SPC Strickland underwent an initial medical evaluation at the Charlie Med facility. Id. ¶ 15. He initially experienced acute physical manifestations of blast-related trauma, specifically dizziness, tinnitus in his left ear, and localized hearing loss. Shortly thereafter, he also "[began] suffering headaches," and experienced sleep disturbance, depression, and anger, none of which resolved. Id. SPC Strickland was later diagnosed with post-traumatic stress disorder (PTSD) and traumatic brain injury (TBI). Id. The undersigned will discuss Mr.

Strickland's injuries in detail and provide recommendations in a forthcoming damages report for the Court.

### B. Extrajudicial Killing and Personal Injuries

PFC John Amos, who sustained bilateral lower-extremity traumatic amputations as a result of the blast, subsequently succumbed to his injuries during emergency medical evacuation to Balad, Iraq. PX11514 ¶ 13; PX11510, U.S. Department of Defense Immediate Release No. 261-04 (identifying U.S. casualty PFC John Amos).

In total, the official CENTCOM report records the death of PFC Amos and injuries to six additional Coalition service members. PX11501, CENTCOM Ops Report at 1. Subsequent reports confirmed that at least one local Iraqi civilian, and potentially one Iraqi child, were also killed as a result of the detonation. Id. ¶ 14. The killing of PFS Amos constitutes an "extrajudicial killing" within the meaning of 28 U.S.C. § 1605A(a)(1). See ECF No. 137 at 3 n.2; ECF No. 387 at 12; Borochov v. Islamic Republic of Iran, 94 F.4th 1053, 1061 (D.C. Cir. 2024)

### C. Direct Victim and Solatium Claimants

Plaintiff Gary Lynn Strickland is a United States citizen and held the rank of Specialist (SPC E4) in the United States Army at the time he was injured in the terrorist attack on April 4, 2004. PX11514, Decl. Gary Strickland, ¶¶ 2, 6, 8; PX11501, Ops Rpt. Thereafter, SPC Strickland was promoted to Staff Sergeant (SSG E6) before his honorable discharge from the Army in July 2009. PX11514 ¶ 4.

Plaintiff Gary Lynn Strickland brings claims for personal injuries he suffered as a result of the VBIED attack on April 4, 2004. ECF No. 100 ¶¶ 4975–4984. Plaintiff Marnita L. Marler is Gary Strickland's mother, and Plaintiff Rikki Lynne Marler is his maternal half-sister; both assert claims for solatium, mental anguish, and emotional pain and suffering related to the

attack and to SPC Strickland's injuries. Id.; PX11525, Decl. of Marnita Marler, ¶¶ 2–3, 7–8. Both family-member Plaintiffs are U.S. nationals. See ECF No. 81-2 at 45 (summarizing Ex. 428, military and birth records of the Strickland family); see also 28 U.S.C. §§ 1605A(a)(2)(A)(ii), 1605A(c).

**D. Attribution**

Plaintiffs' evidence of attribution includes declassified government reports, military records, news reports, the sworn declaration and photographs of the direct victim, and a declaration proffered by one family-member claimant.

In addition to this independent compendium of evidence, Plaintiffs' counsel also tenders the revised Expert Witness Report and Declaration of Daveed Gartenstein-Ross, Ph.D., cited as PX11550. Dr. Gartenstein-Ross has previously been admitted in this case as an expert in terrorist-attack attribution. See ECF No. 137, Memorandum and Order at 8 n.3 (identifying bellwether attack-attribution experts). The undersigned therefore finds that, as to Attack No. 70, Dr. Gartenstein-Ross qualifies as an expert in terrorist-attack attribution.

Within a reasonable degree of professional certainty, Dr. Gartenstein-Ross attributes the April 4, 2004 VBIED attack that injured SPC Gary Strickland to Ansar al-Sunna (AAS). PX11550, Expert Report of Daveed Gartenstein-Ross, Ph.D., at 2–6. The Ansar al-Sunna organization has undergone several name changes since the group's founding in 2001. Id. at 3. Originally established as Jund al-Islam, the group later adopted the name Ansar al-Islam (AAI). Id. On September 20, 2003, the group changed its name to Ansar al-Sunna. Id. Given that this attack occurred after the group's 2003 name change, Dr. Gartenstein-Ross's conclusion and this Report and Recommendations refer to the group as Ansar al-Sunna (AAS). Id. Some sources cited herein may, nonetheless, refer to the group as Ansar al-Islam. Id.

This Court has already found that Defendants provided material support, as defined by 28 U.S.C. § 1605A(a)(1), to the Sunni terrorist group Ansar al-Islam (AAI), referred to herein by its later name, Ansar al-Sunna (AAS). From 2003 through 2011, that material support was essential to the group's operating capacity, and terrorist attacks involving the group in Iraq during that period were reasonably foreseeable and a natural consequence of that material support. See ECF Nos. 127 at 2 and 136 at 7.

Dr. Gartenstein-Ross's conclusion is based on an assessment of (1) the geographic location and time period of the attack; (2) the tactics, techniques, and procedures (TTPs) employed by AAS; and (3) AAS's claims of responsibility for collateral attacks. PX11550, Expert Report of Daveed Gartenstein-Ross, Ph.D., at 3.

**1. Location and Time Period of the Attack**

As a threshold matter, the attack's geographic location and time period are primary indicators of AAS's culpability for the subject attack. Id. The attack occurred on April 4, 2004, in Kirkuk, historically designated as the capital of Iraq's Tamim Province. With respect to its organizational history, AAS originated within the Kurdish sectors of northern Iraq and developed from the consolidation of two autonomous Kurdish terrorist factions. Both factions traced their roots to the Islamic Movement of Kurdistan, with AAS surviving the consolidation as a designated foreign terrorist organization. PX210, U.S. Dep't of State, Country Reports on Terrorism 2017, Foreign Terrorist Organizations: Ansar al-Islam (2018); see PX11550 at 3; see also PX11504, Middle East Intelligence Bulletin, Ansar al-Sunna: Iraq's New Terrorist Threat (May 2004) (providing a more detailed history).[3]

[3] Ansar al-Sunna is an outgrowth of Ansar al-Islam (Defenders of Islam), a group with ties to Iran and which administration officials have linked to al-Qaeda. Initially operating under the moniker Jund al-Islam (Soldiers of Islam), Ansar al-Islam grew out of the September 2001 unification of several militant Islamist groups which had taken root in the mountains of northern Iraq along the Iranian border.

Although this historical evolution is instructive, it is also significant to understanding the motivation for control of the region. Kirkuk ultimately evolved as a critical theater of ethno-political friction between Arab and Kurdish factions. Kirkuk subsequently became a primary location of geopolitical confrontation between the Kurdistan Regional Government (KRG) and the Central Iraqi Government. PX11550, at 3; see PX241, Joel D. Rayburn et al., eds., The U.S. Army in the Iraq War, Volume I, at 149. The geopolitical friction in the Kirkuk region is fundamentally predicated on its proximity to adjacent oil fields, which were "[c]ritical to Iraq's oil production, a source of contention between the KRG and the Iraqi Government." PX11550, at 4. The record evidence establishes that these assets have constituted "[a] defining factor driving the contest for the city." PX11550, at 4; see also PX858, The Washington Institute for Near East Policy: *The Battle for Kirkuk: How to Prevent a New Front in Ira*n (Jan. 16, 2007).

In addition to AAS's geopolitical motivation for dominance within Kirkuk, the location and time period of the attack are further corroborated by the following record evidence:

**a. Analytical Study Regarding the U.S. Army's Deployment in Kirkuk**

This analytical study, published by the Combat Studies Institute Press of the U.S. Army Combined Arms Center, notes that AAS maintained an operational posture contiguous to Kirkuk. PX864, Peter W. Connors, *The U.S. Army in Kirkuk: Governance Operations on the Fault Lines of Iraqi Society*, 2003–2009, Combat Studies Institute Press: Fort Leavenworth, Kansas, U.S. (November 2011), at 23; see PX11550, at 3. The study further states that by March 2003, Task Force Viking, formally designated as the Combined Joint Special Operations Task Force North, "[u]ndertook three missions, with an explicit objective to eliminate the local Ansar al-Islam extremist group that threatens Kurds in the region." Id. As a result of the execution of Operation Viking Hammer in March 2003, approximately one year before the April 4, 2004, subject attack,

"[a]ll the Ansar al-Islam fighters had either been killed or fled across the border to Iran." PX241, U.S. Army in the Iraq War, Vol. I 2003–2006, at 95.

**b. AAS's Operational Resurgence**

By the summer of 2003, AAS fighters had begun returning to northern Iraq, and the group developed a preference for suicide bombings. PX11504 at 1–3; PX241 at 175. The geographic theater of AAS's principal operations subsequently expanded to encompass Mosul, Baghdad, al-Anbar, Diyala, Kirkuk, and Salah Al-Din. See PX492, Iraq's Sunni Insurgents: Looking Beyond Al Qa'ida, Center for Strategic and International Studies, at 4.

**c. Targeted Interdiction Against AAS in Kirkuk**

In addition to AAS's explicit claims of responsibility for collateral VBIED attacks in both Kirkuk and Erbil, the record establishes that Coalition forces were concurrently engaged in targeted interdiction operations against AAS within the Kirkuk sector. PX11550, at 4.

On February 16, 2004, the Iraqi Civil Defense Corps (ICDC) "[d]eployed 800 men along the 100 kilometers (60 miles) of highway linking the northern cities of Kirkuk and Suleimaniyah." PX11552, *Iraqi Civil Defense Deploys 800 In North To Prevent Infiltrations*, Agence France-Presse (February 16, 2004); see PX11550 at 4.

Agence France-Presse incorporated an official statement from General Anwar Hamad Amin, the Kirkuk ICDC chief, confirming that defensive operations were targeting the AAS threat at that time: "ICDC's fourth regiment in Kirkuk, which comprises 892 troops, has deployed along the highway between Kirkuk and Suleimaniyah to prevent the entry of Al-Qaeda and Ansar al-Islam members coming from northern Iraq." PX11552, *Iraqi Civil Defense Deploys 800 in North to Prevent Infiltrations*, Agence France-Presse (Feb. 16, 2004); see PX11550 at 4.

Agence France-Presse further reported that, "[a]ccording to Kurdish parties, several members of Osama bin Laden's Al-Qaeda network and the Ansar al-Islam organisation [sic] have infiltrated northern Iraq from Iran," corroborating contemporaneous concern about AAS activity in and around Kirkuk. PX11552; see PX11550 at 4.

**d. Counterinsurgency Operations Within Kirkuk**

The record demonstrates that, after the subject attack, United States and Iraqi security forces maintained continuous counterinsurgency operations, resulting in the ongoing detention of suspected AAS combatants within Kirkuk. Journalistic accounts substantiate this ongoing enforcement posture from July 2004. The Canadian Press documented that multiple AAS operatives had been successfully apprehended and detained within Kirkuk:

> In Kirkuk, U.S. and Iraqi forces detained six members of a militant group suspected of a string of assassinations in the north. The men were believed to be members of Ansar al-Islam, a Kurdish group believed linked to al-Qaida, said Iraqi police Col. Sarhat Qader. The Canadian Press (July 4, 2004).

High-value interdiction operations continued into the autumn of 2004. In September 2004, The Associated Press documented that "[t]he U.S. military announced the detention of a suspected leader of an insurgent cell during a raid in the northern city of Kirkuk," with subsequent intelligence identifying the detainee as an active member of AAS. A communique issued by the United States military documented the apprehension:

> The detention of a suspected leader of an insurgent cell during a raid in the northern city of Kirkuk. The detained individual, identified as Hussein Salman Mohammed al-Jbouri, is suspected of exercising command authority over an insurgent cell operating out of Kirkuk and the contiguous municipality of Hawijah. Military intelligence further indicates that this operational cell aligns itself with Ansar al-Sunna, a Sunni Muslim extremist organization that has previously asserted responsibility for the execution of 12 Nepalese hostages.

PX11554**,** Kim Housego, *U.S. Forces Bomb Fallujah, Battle Militants in Baghdad*; see also PX11550, Two Italian Hostages Released, Associated Press International (Sept. 28, 2004), at 4.

Having considered Plaintiffs' evidence concerning the location and time period of the attack, the undersigned Special Master finds that concurrent intelligence disclosures, targeted apprehensions, and insurgent activity demonstrate that AAS maintained an active, structured, and lethal operational presence in and around Kirkuk. This operational footprint encompassed the immediate geographic area surrounding the precise location and time of the April 4, 2004 subject attack.

**2. Tactics, Techniques, and Procedures**

Regarding the tactics, techniques, and procedures (TTPs) used by the insurgent network, the record reflects that AAS maintained a documented history of orchestrating VBIED attacks to achieve offensive strikes within Kirkuk and, more broadly, throughout northern Iraq at the time of the subject attack. PX11550, Declaration and Expert Report of Dr. Daveed Gartenstein-Ross at 4–5.

A study of suicide bombings in Iraq by The Institute of Land Warfare also identified AAS as responsible for the proliferation of VBIED operations in northern Iraq. The[4] operational pattern included: (1) a VBIED attack on March 22, 2003, in Khurmal, Halabja Province; (2) a VBIED attack on November 20, 2003, in Kirkuk, Kirkuk Province; and (3) a VBIED attack on January 31, 2004, in Mosul, Nineveh Province. PX847 at 15–18; see PX11550 at 4–5. The record also documents a February 23, 2004, suicide car bombing at a Kirkuk police station for which AAS claimed responsibility. PX11515; PX11555; PX11556; see PX11550 at 5.

[4] PX847; Dr. Robert J. Bunker and John P. Sullivan, *Suicide Bombings in Operation Iraqi Freedom*, The Institute of Land Warfare, Association of the United States Army, Arlington, Va., USA (September 2004), at 15–18.

Based upon the extensive tactical consistency of the attacks, Dr. Gartenstein-Ross concludes that AAS was likely responsible for the April 4, 2004 attack. PX11550, Expert Report of Daveed Gartenstein-Ross, Ph.D., p. 6. The undersigned Special Master also finds from AAS's systematic, continuous execution of VBIED attacks throughout northern Iraq and specifically in and around the city of Kirkuk that it is more likely than not that AAS planned and executed the April 4, 2004 subject attack.

**3. AAS's Claim of Responsibility for Collateral VBIED Attacks in Kirkuk and Erbil**

AAS's reliance on VBIED architecture continued into February 2004—two months before the subject April 4, 2004 attack.

**a.** AAS claimed responsibility for a February 1, 2004 coordinated suicide bombing in the Iraqi city of Erbil, located approximately sixty (60) miles north of Kirkuk. The New York Times reported that "[t]wo suicide bombers wearing explosives killed at least 56 people and wounded at least 200 in Erbil on Sunday during Muslim holiday celebrations inside the separate headquarters of Iraq's two leading Kurdish political parties…" PX11551, Jeffrey Gettleman and Edward Wong, *Twin Bombings in Northern Iraq Kill at Least 56*, The New York Times (Feb. 1, 2004); see PX11550 at 3.

Intelligence and municipal officials, suspecting AAS of executing the attacks, noted that the operation bore the distinct tactical signatures of foreign fighters or Ansar al-Islam—the prior iteration of AAS. PX11550 at 3.

Contemporaneous reporting by The New York Times similarly indicated that "[s]ome officials said the attacks bore the signatures of foreign fighters or Ansar al-Islam, a mostly Kurdish terrorist group that American officials suspect[ed] ha[d] ties to Al Qaeda." Id. Before the April 4,

2004 attack, AAS had maintained an operational base near the mountainous Iranian border until Coalition forces, together with Kurdish fighters, routed the AAS cell in March 2003. Id.

An article published by Agence France-Presse refers to AAS's statement of responsibility:

> An Islamist group, Ansar al-Sunna, with alleged links to Al-Qaeda, claimed responsibility Wednesday for the deadly twin suicide attacks in the northern Iraqi Kurdish city of Erbil. According to an Islamist internet site… It was not possible to independently verify the statement posted on the website. The statement expressed sympathies with the "brothers" of the militant group Ansar al-Islam, which Kurdish political groups have fingered in the attack, which is suspected of links to Osama bin Laden's Al-Qaeda network… The statement was dated February 4 and bore the signature of Abdullah al-Hassan bin Massud, head of the Ansar Al-Sunna army.

PX11557**;** Habib Trabelsi, *Al-Qaeda Linked Islamist Group Claims Deadly Erbil Attacks In Iraq*, Agence France-Presse (Feb. 4, 2004); see also PX11550 at 3.

The statement released by AAS is as follows:

> The Sunnis in Iraq and everywhere in the world have understood that the Crusaders cannot enter the provinces of Kirkuk and Nineveh without the help of the PUK (Patriotic Union of Kurdistan) and the KDP (Kurdistan Democratic Party), run by their agents Jalal Talabani and Massoud Barzani, respectively… The two agents (Talabani and Barzani) have prepared the way for the American army to occupy the two provinces, despite the fall of the atheist Baath regime … before handing the two provinces to the Crusaders. That is why we watched for the occasion to avenge the two tyrants, whose hands are stained with the blood of Muslims … and who coordinated with the Crusaders to strike our Mujahedeen brother group Ansar al-Islam, their women and their children… so we have hit their main offices. Id.

**b.** In a separate incident occurring on February 23, 2004, there was a "[s]uicide car bombing at a police station" in Kirkuk, resulting in "at least seven people killed and wounding

dozens of others." See PX11515, Iraq Suicide Bomber Kills 7 in Kirkuk (2004-02-23); see also PX11550, Expert Report of Daveed Gartenstein-Ross, Ph.D., at 5.

Parallel reporting from Radio Free Europe corroborated the severity of the offensive, stating that "[a]t least 10 people were reported killed and about 40 wounded in an apparent suicide car bomb" and noting that "Iraqi officials say that most of the victims were policemen." PX11555, "Ten Reported Dead in Kirkuk Car Bombing," Radio Free Europe (February 23, 2004). Agence France-Presse (AFP) provided additional documentation that AAS formally asserted responsibility for the February 23, 2004 attack, republishing portions of an official communique bearing the signature of the "[m]ilitary command of the Ansar al-Sunna army." The following statement was sent to the London-based Islamic Observatory Centre for Human Rights, a copy of which was received by AFP.

> We herald you with another victory over the apostates and agents in one of their dens of evil and corruption in the city of Kirkuk.
>
> One of our martyr brothers has detonated a car bomb at the Rahimawa police station, inflicting, with God's aid, the enemy with the following casualties: more than 30 policemen killed and 55 injured.
>
> We have more, so isn't it high time for you, those who have sold themselves to the descendants of monkeys and pigs, to wake up and spare your lives?

Police and hospital officials say 11 civilians were among the wounded in the Monday car bombing, which authorities say was carried out by two suicide bombers, in contradiction to the above statement by AAS, which referred to "one … martyr[ed] brother." PX11556, *Al-Qaeda-Linked Islamist Group Says It Bombed Iraqi Police Station*, Agence France-Presse, February 24, 2004; see also PX11550 at 5.

Dr. Daveed Gartenstein-Ross concludes that the above formal declaration from AAS claiming direct responsibility for the February 23, 2004 attack within the municipality of Kirkuk reflects an operation that was executed in a manner identical to the subject attack on April 4, 2004, which occurred less than two months later. AAS's tactical deployment of a VBIED within the same city of Kirkuk, also proximate to the city of Erbil, establishes a continuous operational pattern, demonstrating that the insurgent group was actively conducting operations within the city of Kirkuk and its surrounding regions. PX11550 at 3.

## IV. CONCLUSION AND RECOMMENDATIONS

The Court has previously determined that Defendants' material support to AAS "was essential to the group's operating capacity" and that terrorist attacks involving AAS in Iraq during the relevant period were a "reasonably foreseeable and a natural consequence of that material support." See ECF Nos. 127 at 2 and 136 at 7. Therefore, all that remains is for Plaintiffs to show whether the April 4, 2004 VBIED attack in Kirkuk City, Iraq was committed by Ansar al-Sunna (AAS). See ECF No. 137 at 3 (BW Liability Order).

Consistent with evidentiary standards in FSIA default proceedings, as well as this Court's "General Approach to Liability Determinations," the undersigned Special Master concludes that Plaintiffs' evidence establishes that AAS committed the April 4, 2004 VBIED attack in Kirkuk City, Iraq; Defendants' provision of material support was a proximate cause of the attack; the attack involved an extrajudicial killing and resulted in personal injuries to Plaintiff Gary Strickland; and the attack and resulting injuries fall within the scope of the FSIA's terrorism exception to sovereign immunity. 28 U.S.C. § 1605A(a)(1); see ECF No. 137 at 3.

The undersigned Special Master therefore concludes that Defendants other than the National Iranian Oil Company are liable for this attack and recommends that the Court enter judgment accordingly. See ECF No. 136 at 7.

## V. REVIEW BY THE DISTRICT COURT

Pursuant to this Court's orders governing Special Masters and implementing the Administrative Plan (see ECF Nos. 139, 140, and 145), Plaintiffs may file an objection to, or motion to modify or adopt, a finding, report, or recommendation by a Special Master within twenty-one (21) calendar days after it is electronically filed. The Court shall decide de novo all objections to findings of fact or conclusions of law made or recommended by the Special Master. The Court shall set aside a ruling by the Special Master on a procedural matter only for an abuse of discretion. See Fed. R. Civ. P. 53(f)(3), (4), and (5).

Dated: September 15, 2026.

Respectfully submitted,

*/s/ John P. Kuder*__
**HON. JOHN P. KUDER (RET.)**
**SPECIAL MASTER**